Elaine A. Ryan, Esq. (AZ Bar #012870)
Colleen M. Auer, Esq. (AZ Bar #014637)
**AUER RYAN PC**
20987 N. John Wayne Parkway, #B104-374
Maricopa, AZ 85139
Telephone:  520.705.7332
Facsimile:  602.560.0856
E-Mail:  eryan@auer-ryan.com
E-Mail:  cauer@auer-ryan.com
*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PracticeMax, Inc., a Delaware corporation,<br><br>Defendant. | Case No.: 2:22-cv-01261-PHX-DLR<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN**<br><br>Assigned to the Hon. Douglas L. Rayes |

## I.    INTRODUCTION

Plaintiffs Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowsky (collectively, "Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant PracticeMax, Inc. ("PracticeMax" or "Defendant" and together with Plaintiffs, the "Parties") does not oppose certification for Settlement purpose only and does not oppose Plaintiffs' request for preliminary approval of class action settlement. Plaintiffs strongly

believe the Settlement is fair, reasonable and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

## II.    STATEMENT OF FACTS

On or about May 2021, PracticeMax became aware that from April 17, 2021, until May 5, 2021, an unauthorized actor potentially gained access to certain systems and potentially accessed and/or removed certain information stored within those systems (the "Data Security Incident"). PracticeMax began notifying Plaintiffs and the Settlement Class about the Data Security Incident in October 2021, though some Settlement Class Members did not receive notice until as late as June 2022.

In response, Plaintiffs allege they spent hours responding to the Data Breach, including by monitoring their accounts, reviewing their credit reports, and researching credit monitoring options. Additionally, Plaintiffs allege they have experienced an increase in fraudulent and spam calls, evidencing that their Private Information has been made publicly available by the Data Breach's perpetrators. As a result of these losses, Plaintiffs filed various actions which have been consolidated into the above captioned matter.

On November 30, 2022, Defendant filed a motion to dismiss Plaintiffs' claims. After the motion was fully briefed, the Parties agreed that early resolution discussions could be beneficial. On June 19, 2023, the Parties engaged in mediation with Bruce Friedman. The Parties were able to reach an agreement on all the principal terms of settlement for this matter, subject to final mutual agreement on all necessary documentation.

## III.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All persons residing in the United States to whom PracticeMax sent its notice of a Data Security Incident that PracticeMax discovered on or about May 1, 2021." *See* Class Action

Settlement Agreement attached hereto as **Exhibit 1** ("S.A.") ¶ 1.36.

The Settlement Class contains approximately 154, 929 individuals.

**B.    Settlement Benefits**

Settlement Class Members shall have the opportunity to submit a Claim for Settlement benefits on or before the Claims Deadline. The benefits available to Settlement Class Members, as described below, shall include (1) compensation for ordinary losses, including lost time; (2) compensation for extraordinary losses; and (3) credit monitoring services.

Ordinary Loss Claims: Settlement Class Members may submit a Claim for reimbursement of documented out-of-pocket losses incurred as a result of the Data Security Incident, up to a maximum of $500 per person. Ordinary Loss Claims will include;

i)    Bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

ii)    Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 1, 2021, and the date of the Settlement Agreement;

iii)    Compensation for lost time of up to three (3) hours at $25 per hour for a maximum of up to $ 75 per person. Class members may submit claims for up to three (3) hours of lost time with an attestation that they spent the claimed time responding to issues raised by the Data Security Incident. This payment shall be included in the per person cap for Compensation for Ordinary Losses.

S.A.  ¶ 3.1(a)

Extraordinary Loss Claims: Settlement Class Members who were the actual victim of identity theft may also make a claim for up to $3,500 in proven monetary loss if:

(i)    The loss is an actual, documented, and unreimbursed monetary loss;

(ii)    The loss was more likely than not caused by the Data Security Incident;

(iii)    The loss occurred between May 1, 2021, and the date of the Settlement Agreement;

(iv)    The loss is not already covered by one or more of the normal reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

S.A. ¶ 3.1(b).

Credit Monitoring Services: Settlement Class Members will also be offered an opportunity to enroll in two years of single bureau credit monitoring and identity theft protection with $1 million in insurance. S.A. ¶ 3.2.

In no event shall the total costs owed by PracticeMax, including reasonable Notice and Settlement Administration Costs, any attorneys' fees, costs, and expenses, as approved by the Court, and any service awards approved by the Court exceed $3,000,000. S.A. ¶ 3.9.

## 1.    **Class Notice and Settlement Administration**

Notice will be paid for by Defendant. Notice will be given to the Settlement Class via individual direct notice, which will be given by mailing the Short-Form notices (attached to the Settlement Agreement as Exhibit A) to the postal addresses of the Settlement Class Members whose mailing addresses are known to PracticeMax by first-class U.S. mail. S.A. ¶ 5.4. If any Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. Where the undeliverable Notice is returned without a forwarding address, the Claims Administrator shall make

reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned undeliverable and remail the Notice. S.A. ¶ 5.5.

A Long Form Notice (attached to Settlement Agreement as Exhibit B), will also be posted on the settlement website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. S.A. ¶ 5.7. The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Moreover, the Parties have agreed upon Epiq a nationally recognized and well-regarded class action settlement administrator, to serve as Settlement Administrator, subject to the Court's approval. *See* Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl."), attached hereto as **Exhibit 2**, ¶ 36.

### 2.    Attorneys' Fees and Expenses

Plaintiffs will separately seek, and PracticeMax has agreed not to object to, an award of attorneys' fees not to exceed eight hundred and twenty-five thousand and no/100 dollars ($825,000.00). S.A. ¶ 8.1. Plaintiffs and Class Counsel will submit a fulsome attorneys' fee motion supporting the fee request in advance of the objection and opt-out date.

### 3.    Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Counsel Decl., ¶ 29. Plaintiffs will separately petition the Court for service awards of $2,500 each ($12,500 total) in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., ¶ 3.6.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *In re Pauley*, 2020 WL 5809953, at *4 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

### 4.    <u>Release</u>

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A., ¶ 13.1. "Released Claims" are defined, *inter alia*, as:

> any and all past, present, and future claims, causes of action, counterclaims, lawsuits, rights, demands, charges, complaints, actions, obligations, or liabilities under any legal or equitable theory, whether known, unknown, suspected, or unsuspected or capable of being known or suspected, and whether, accrued, unaccrued, matured, or not matured, including, but not limited to, negligence, negligence per se, breach of implied contract, unjust enrichment, intrusion into private affairs / invasion of privacy, and any other state or federal consumer protection statutes, misrepresentation (whether fraudulent, negligent, or innocent), bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute, regulation, or common law duty, and any causes of action under 18 U.S.C. §§ 2701 et seq., and all similar statutes in effect in any states in the United States as defined herein, and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs and expenses, set-offs, losses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning, or arising out of the Data Security Incident and alleged exposure and compromise of any Settlement Class Member's private information, personally identifiable information and/or protected health information, or any other allegations, facts, or circumstances described in the Lawsuit or the Complaint.

S.A. ¶ 1.3.  Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the Settlement contained in this Settlement Agreement and shall not include the claims of Persons who have timely and

validly requested exclusion from the Settlement Class pursuant to the opt-out procedures set forth in this Settlement Agreement. *Id.*

## IV.    LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.

## V.    ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and given the relatively small value of the claims of the individual class members, would be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Plaintiffs here seek certification of a Settlement Class consisting of: "All persons residing in the United States to whom PracticeMax sent its notice of a Data Security Incident that PracticeMax discovered on or about May 1, 2021." S.A. ¶ 1.36. Excluded from the Settlement Class are: (i) PracticeMax, Inc.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads nolo contendere to any such charge. *Id.* For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

/ / / /

/ / / /

### A.    The Settlement Satisfies Rule 23(a).

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. The requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1.    <u>The Proposed Class is Sufficiently Numerous.</u>

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital,* Case No.2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020), *citing Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering approximately 154,929 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of the individuals is clearly impracticable—thus the numerosity prong is satisfied. *See, e.g. Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

### 2.    <u>The Settlement Class Satisfies the Commonality Requirement</u>.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's]

conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.' *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, *inter alia*, whether PracticeMax engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Security Incident; whether PracticeMax owed a duty to Plaintiffs and Class members; and whether PracticeMax breached its duties.

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3. Plaintiffs' Claims and Defenses are Typical to Those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the PII of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4. Plaintiffs Will Adequately Protect the Interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously

prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for PracticeMax's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Counsel Dec. ¶ 28, *See also* Firm Resumes attached to the Declaration as Exhibit A. Thus, Plaintiffs satisfy the requirement of adequacy.

### 5.     Common Issues Predominate Over Individualized Ones.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

As discussed above, Plaintiffs allege that common questions predominate over any questions affecting only individual members here. Class certification here is also "superior

to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Malta*, 2013 WL 444619, at *3 (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed"). For these reasons, certification of the Settlement Class for purposes of settlement only is appropriate.

**B.      The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*.

Rule 23(b)(3) requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs' claims depend, first and foremost, on whether PracticeMax used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement only, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are over a hundred thousand class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

## C. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or

14

compromised only with the court's approval."   Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."   If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo.

15

2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement Class's best interests.

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

## 1.     The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability  and that they have a reasonably good chance of proving that PracticeMax's data security was inadequate.  If they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their complaint. For example, with respect to their negligence claim, Plaintiffs believe they will ultimately

be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class's PII.

While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Counsel Decl., ¶ 34.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 154,929 individuals, a complicated and technical factual background, and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers. Further, there is a pending motion to dismiss in this case, and Plaintiffs are aware that prevailing on the that motion is not guaranteed.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due the constant standing challenges plaintiffs face in data breach class actions. Historically, data breach cases face substantial hurdles in surviving

even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3.    The Risk of Maintaining Class Action Status Through Trial

At this stage in the litigation, the Parties have not briefed, and the Court has not certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action

status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). the dearth of direct precedent adds to the risks posed by continued litigation, and this factor favors approval.

### 4.    The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data breach litigation generally and this litigation specifically (as evidenced by the motions' practice in this case), the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members, in the form of out-of-pocket expense reimbursements, compensation for lost time, and credit monitoring protection.

This settlement is a strong result for the Class, and is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs vigorously and aggressively gathered all of the information that was available regarding PracticeMax and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers. Counsel Decl., ¶ 26. The parties also informally exchanged non-public information concerning the Data Incident and the size of the Class in preparation for mediation. Counsel Decl., ¶ 27. This litigation has certainly proceeded to the point where

"the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. Counsel Decl., ¶ 28. Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.    The Experience and Views of Counsel

Class Counsel initiated this lawsuit shortly after PracticeMax announced the Data Security Incident, which, based upon publicly-available information, potentially impacted approximately 154,929 consumers. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Counsel Decl., ¶ 3-26, Ex. A. Having worked on behalf of the putative class since the Data Security Incident was announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id.*, ¶ 30. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton*, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.    Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8.    The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Counsel Decl., ¶ 29.

### 9.  <u>Lack of Collusion Among the Parties</u>

The parties negotiated a substantial, multifaceted Settlement, as described above, with the assistance of Bruce Friedman of JAMS, who presided over a full day mediation. Class Counsel and PracticeMax's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator also is evidence of no collusion. Therefore, the Court can be assured that the negotiations were not collusive.

### 10.  <u>The Settlement Treats Settlement Class Members Equitably</u>

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members as equitably as possible under the circumstances. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement treats all Class Members equitably. All Settlement Class Members have the opportunity to make a claim for up to $500 in ordinary losses, including three hours of lost time reimbursed at a rate of $25 per hour, up to $3,500 in extraordinary losses, and two years of single bureau credit monitoring and identity theft protection. While Plaintiffs have been permitted to seek approval of a service award from this Court, as will be explained in detail at Plaintiffs' Fees Motion*,* the contemplated awards of $2,500 per class representative is in line with awards granted in similar cases, is presumptively

reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement.[1] As such, this factor also weighs in favor of approval.

### D. The Court Should Approve the Proposed Notice Program.

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. CR 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

---

[1] *See e.g. Roe v. Frito-Lay, Inc.,* No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards of $5,000); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 service awards); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 service awards); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (approving $7,500 service award); *Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) (approving $5,000 award in an case settling for $440,000).

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Epiq— which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via direct U.S. mail. The costs of administering the Settlement will be paid by PracticeMax. S.A. ¶ 4.1. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. S.A. Exs. A, B, and C.

In addition to the direct notice, the Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement. S.A. ¶ 5.7. The Settlement Administrator is also authorized and required to provide copies of the forms of Short Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement, upon request. S.A. ¶ 4.9.

Plaintiffs have negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Class Members here provided their contact information in conjunction with receiving healthcare services: it is not known to be a particularly transient Class, thus direct notice via mail is the best practicable. *Compare Roes 1-2 v. SFBSC Management LLC,* 944 F.3d 1035, 1046 (9th Cir. 2019). Notice programs providing notice by mail have been approved by the Ninth Circuit. *See e.g. In re Online DVD-Rental Antitrust Litigation*, 779 F. 3d 934, 946 (9th Cir. 2015) (finding notice provided initially by email, and then by mail to individuals whose emails bounced back was sufficient under both the U.S. Constitution and Rule 23).

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

### E.    Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint Epiq to serve as the Settlement Administrator. Epiq has a trusted and proven track record of supporting class action administrations. Counsel Decl. ¶ 36.

### F.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Counsel Decl. ¶ 3-26,

Ex. A (firm resumes). Accordingly, the Court should appoint  Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood as Settlement Class Counsel.

## VI.   CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. The Settlement is likely to be approved, and as such, Notice should be ordered to issue to the class. For all the above reasons, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: October 23, 2023.                    Respectfully Submitted,

*/s/Elaine A. Ryan*
**AUER RYAN, P.C.**
Elaine A. Ryan (AZ Bar #012870)
Colleen M. Auer (AZ Bar #014637)
20987 N. John Wayne Parkway, #B104-374
Maricopa, AZ 85139
T: (520) 705-7332
eryan@auer-ryan.com
cauer@auer-ryan.com

**PEREZ LAW GROUP, PLLC**
Cristina Perez Hesano (#027023)
7508 N. 59th Avenue
Glendale, AZ 85301
T: (602) 730-7100
F: (623) 235-6173
cperez@perezlawgroup.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger *(Pro Hac Vice Forthcoming)*
221 West Monroe Street, Suite 2100
Chicago, IL 60606
T: 866.252.0878
gklinger@milberg.com

25

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates *(Pro Hac Vice Forthcoming)*
Jonathan T. Deters *(Pro Hac Vice Forthcoming)*
119 E. Court Street, Suite 530
Cincinnati, OH 45202
T: 513.651.3700
F: 513.665.0219
tcoates@msdlegal.com
jdeters@msdlegal.com

**TURKE & STRAUSS LLP**
Raina C. Borrelli (*admitted Pro Hac Vice*)
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
raina@turkestrauss.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION DIVISION**
John A. Yanchunis (*Pro Hac Vice Forthcoming*)
Ryan Maxey (*Pro Hac Vice Forthcoming*)
Ra O. Amen (*Pro Hac Vice Forthcoming*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com
ramen@ForThePeople.com

**THE CONSUMER PROTECTION FIRM**
William 'Billy' Peerce Howard (*Pro Hac Vice Forthcoming*)
401 E. Jackson St., Suite 2340
Tampa, Florida 33602
T: (813) 500-1500
F: (813) 435-2369
Billy@TheConsumerProtectionFirm.com

**FEDERMAN & SHERWOOD**
William B. Federman (admitted *Pro Hac Vice*)
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com

**MURPHY LAW FIRM**
A. Brooke Murphy (admitted *Pro Hac Vice*)
4116 Will Rogers Pkwy, Suite 700

Oklahoma City, OK 73108
T: (405) 389-4989
abm@murphylegalfirm.com

***Counsel for Plaintiffs and the Classes***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

     I HEREBY CERTIFY that on this <u>23rd</u> day of October 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.

                                   */s/ Colleen M. Auer*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ROBERT HOGSED, JUSTIN KNOX, FLOR MEDINA, BRENDA ALLEN, AND KATHERINE WITKOWSKI, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PRACTICEMAX, INC., A DELAWARE CORPORATION,<br><br>    Defendant. | Civil Action No.: 2:22-cv-01261-PHX-DLR |

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and between Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski, ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Settlement Class Counsel (as defined below), and Defendant PracticeMax, Inc., ("PracticeMax" or "Defendant") in order to effect a full and final settlement and dismissal with prejudice of all claims against PracticeMax alleged in the above-captioned litigation on the terms set forth below and to the full extent reflected herein.

**I.    RECITALS**

**1.    The Litigation.**

On or about May 2021, PracticeMax became aware that from April 17, 2021, until May 5, 2021, an unauthorized actor potentially gained access to certain systems and potentially accessed and/or removed certain information stored within those systems (the "Data Security Incident"). PracticeMax began notifying Plaintiffs and the Settlement Class about the Data Security Incident in October 2021, though some Settlement Class Members did not receive notice until as late as June 2022.

In response, Plaintiffs allege they spent hours responding to the Data Breach, including by monitoring their accounts, reviewing their credit reports, and researching credit monitoring options. Additionally, Plaintiffs allege they have experienced an increase in fraudulent and spam calls, evidencing that their Private Information has been made publicly available by the Data Breach's perpetrators. As a result of these losses, Plaintiffs filed various actions which have been consolidated into the above captioned matter.

On June 19, 2023, the Parties (as defined below) engaged in mediation with Bruce Friedman. The Parties were able to reach an agreement on all the principal terms of settlement for this matter, subject to final mutual agreement on all necessary documentation.

**2.      Claims of Plaintiffs and Benefits of Settling.**

Plaintiffs believe that the claims asserted in the Lawsuit (as defined below), as set forth in the Complaint (as defined below), have merit. Plaintiffs and Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Lawsuit against PracticeMax through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Settlement Class Counsel are experienced in class action litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Lawsuit. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

**3.      Denial of Wrongdoing and Liability.**

PracticeMax denies each and all of the claims and contentions alleged against it in the Lawsuit. PracticeMax denies all allegations of wrongdoing or liability as alleged, or which could be alleged, in the Lawsuit. Nonetheless, PracticeMax has concluded that further defense of the

Lawsuit would be protracted and expensive, and that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. PracticeMax has taken into account the uncertainty and risks inherent in any litigation. PracticeMax has, therefore, determined that it is desirable and beneficial that the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## II.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Settlement Class Counsel, and PracticeMax that, subject to the approval of the Court, the Lawsuit and the Released Claims (as defined below) shall be finally and fully compromised, settled, and released, and the Lawsuit shall be dismissed with prejudice as to the Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

## 1.    DEFINITIONS.

As used in this Settlement Agreement and its exhibits, the following terms have the meanings specified below:

1.1    "*Business days*" means calendar days not including Saturday, Sunday or a federal holiday.

1.2    "*Claims Administration*" means providing notice of the Settlement to Settlement Class Members and governmental entities, required to be provided notice, including notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), the processing of claims, requests for exclusions and objections and payment of approved claims received from Settlement Class Members by the Claims Administrator.

1.3    "***Claims Administrator***" means Epiq or another company experienced in administering class action claims generally and specifically those of the type provided for and made in Lawsuit, if jointly agreed upon by the parties and approved by the Court.

1.4    "***Claim Deadline***" means a date certain, which is to be set forth in the Notice and which shall be no more than ninety (90) Days from the date Notice is mailed to Settlement Class Members.

1.5    "***Claim Form***" means the form, attached as **Exhibit C** to this Settlement Agreement, which Settlement Class Members must complete and submit on or before the Claim Deadline in order to be eligible for the benefits described herein. The Claim Form shall require an actual or electronic sworn signature but shall not require a notarization.

1.6    "***Complaint***" means the Consolidated Class Action Complaint filed by Plaintiffs in the Lawsuit.

1.7    "***Court***" means the United States District Court for the District of Arizona.

1.8    "***Data Security Incident***" means the cyberattack incident allegedly involving Plaintiffs' and Settlement Class Members' Private Information that PracticeMax discovered on or about May 1, 2021.

1.9    "***Days***" means calendar days, except, when computing any period of time prescribed or allowed by this Settlement Agreement, does not include the day of the act, event, or default from which the designated period of time begins to run. Further, when computing any period of time prescribed or allowed by this Settlement Agreement, include the last day of the period, unless it is a Saturday, a Sunday, or a Federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or Federal legal holiday.

1.10    "*Effective Date*" means the date defined in Paragraph 14.1 of this Settlement Agreement.

1.11    "*Final*" means that all of the following events have occurred: (a) the settlement pursuant to this Settlement Agreement is approved by the Court; (b) the Court has entered the Final Order and Judgment; and (c) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal or seek permission to appeal therefrom have expired, or (ii) if an appeal or other review proceeding of the judgment has been commenced, such appeal or other review is finally concluded and no longer is subject to further review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects. Notwithstanding the above, any order modifying or reversing any Service Award or award of attorneys' fees or expenses shall not affect whether a judgment in this matter is Final or any other aspect of the judgment.

1.12    "*Final Approval Hearing*" means the hearing in the Lawsuit at which the Court considers final approval of this Settlement and the entry of the Final Order and Judgment.

1.13    "*Final Order and Judgment*" means the final judgment and order of dismissal with prejudice to be entered in the Lawsuit in connection with the approval of the Settlement after the Final Approval Hearing.

1.14    "*Lawsuit*" means the lawsuit, styled *Hogsed, et. al. v. PracticeMax, Inc.*, Case No.: 2:22-cv-01261-DLR pending in the United States District Court for the District of Arizona.

1.15    "*Notice*" means the written notice to be sent or published to Settlement Class Members pursuant to the Preliminary Approval Order, attached as **Exhibits A and B** to this Settlement Agreement.

1.16    "***Notice and Claims Administration Costs***" means actual costs associated with or arising from providing notice to Settlement Class Members and performing Claims Administration in connection with the Settlement.

1.17    "***Notice Deadline***" means within thirty (30) Days of the entry of the Preliminary Approval Order, by which time the Claims Administrator shall send the Notice in **Exhibit A** to all Settlement Class Members whose addresses are known to PracticeMax.

1.18    "***Notice Program***" means the notice program described in Section 5.

1.19    "***Objection Deadline***" means the time period in which a Settlement Class Member may submit an Objection, which is sixty (60) days after the Notice Deadline.

1.20    "***Opt-Out Period***" means the time period ordered by the Court during which a Settlement Class Member may submit an Opt-Out Request to opt-out of the benefits available under the Settlement Agreement and also not be bound by the Settlement Agreement.  The Parties will recommend to the Court this period be the sixty (60) Day period beginning from the Notice Deadline.

1.21    "***Opt-Out Request***" means a written request a Settlement Class Member may submit to the Claims Administrator as detailed under Section 6 below if he or she wants to be excluded from the Settlement Class and not be bound by the Settlement Agreement.

1.22    "***Parties***" means Plaintiffs, individually and on behalf of the Settlement Class, and PracticeMax, Inc.

1.23    "***Person***" means an individual.

1.24    "***PracticeMax***" means PracticeMax, Inc., a Delaware corporation.

1.25    "***PracticeMax Counsel***" means Jon Kardassakis, Lewis Brisbois Bisgaard & Smith LLP and its attorneys.

1.26    "***Private Information***" shall mean "*Personally Identifiable Information*" and includes, but is not limited to, full names, addresses, and/or Social Security numbers.

1.27    "***Plaintiffs***" means Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski.

1.28    "***Preliminary Approval Date***" means the date on which the Preliminary Approval Order has been entered by the Court.

1.29    "***Preliminary Approval Order***" means the order preliminarily approving the Settlement and providing for Notice to the Settlement Class, attached as **Exhibit D** to this Settlement Agreement.

1.30    "***Related Entities***" means PracticeMax's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of PracticeMax's and their respective predecessors, successors, directors, officers, shareholders, employees, principals, agents, clients, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in the Lawsuit, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, or aiding or abetting the criminal activity associated with the Data Security Incident or who pleads *nolo contendere* to any such charge.

1.31    "***Released Claims***" means any and all past, present, and future claims, causes of action, counterclaims, lawsuits, rights, demands, charges, complaints, actions, obligations, or liabilities under any legal or equitable theory, whether known, unknown, suspected, or unsuspected or capable of being known or suspected, and whether, accrued, unaccrued, matured, or not matured, including, but not limited to, negligence, negligence *per se*, breach of implied contract, unjust enrichment, intrusion into private affairs / invasion of privacy, and any other state or federal

consumer protection statutes, misrepresentation (whether fraudulent, negligent, or innocent), bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute, regulation, or common law duty, and any causes of action under 18 U.S.C. §§ 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein, and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs and expenses, set-offs, losses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning, or arising out of the Data Security Incident and alleged exposure and compromise of any Settlement Class Member's private information, personally identifiable information and/or protected health information, or any other allegations, facts, or circumstances described in the Lawsuit or the Complaint. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the Settlement contained in this Settlement Agreement and shall not include the claims of Persons who have timely and validly requested exclusion from the Settlement Class pursuant to the opt-out procedures set forth in this Settlement Agreement.

    1.32    "***Released Persons***" means PracticeMax, the Related Entities, and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, assigns, owners, directors, shareholders, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

    1.33    *"Service Award"* means compensation awarded by the Court and paid to the Settlement Class Representatives in recognition of their roles in this litigation.

1.34   "*Settlement*" means the settlement of the Lawsuit upon the terms and conditions set forth in this Settlement Agreement.

1.35   "*Settlement Agreement*" means this Settlement Agreement, including all exhibits hereto.

1.36   "*Settlement Class*" means: All persons residing in the United States to whom PracticeMax sent its notice of a Data Security Incident that PracticeMax discovered on or about May 1, 2021. Excluded from the Settlement Class are: (i) PracticeMax, Inc.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads nolo contendere to any such charge.

1.37   "*Settlement Class Counsel*" shall mean Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood.

1.38   "*Settlement Class Member[s]*" means all persons who fall within the definition of the Settlement Class.

1.39   "*Settlement Class Representatives*" means Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski.

1.40   "*Settlement Website*" means a dedicated website created and maintained by the Claims Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, Notice, and Claim Form, among other things.

1.41    "*United States*" includes all fifty (50) states, the District of Columbia, and all territories.

## 2.    CLASS CERTIFICATION

2.1    Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, PracticeMax agrees to stipulate to the certification of the Settlement Class and will not oppose Plaintiffs' request for certification.

2.2    Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, PracticeMax stipulates that Plaintiffs are adequate representatives of the Settlement Class, and that Settlement Class Counsel are adequate counsel for the Settlement Class.

2.3    If the Settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, shall be vacated, and the Lawsuit shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Party's position on the issue of class certification or any other issue. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case, or action, as to which all of their rights are specifically preserved. In the event of non-approval, termination, or cancellation of this Settlement Agreement, PracticeMax shall be responsible for administration and notification costs incurred, if any, but shall have no other payment, reimbursement, or other financial obligation of any kind as a result of this Settlement Agreement.

## 3.    SETTLEMENT BENEFITS.

Subject to the terms of this Settlement Agreement, PracticeMax shall make available the following compensation to Settlement Class Members who do not timely and validly opt-out of participation in this Settlement:

3.1    <u>Monetary Compensation for Losses</u>: Settlement Class Members who submit a valid and timely Claim Form may choose all applicable claim categories below. The overall compensation cap for any individual claimant is $500.00 for all amounts claimed in Claim A and $3,500.00 for all amounts claimed in Claim B. Claims will be subject to review for completeness and plausibility by the Claims Administrator.

(a)    **<u>Claim A</u>**: <u>Compensation for Ordinary Losses.</u> Defendant will reimburse documented out of pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $500 per person upon submission of a claim and supporting documentation, such as the following losses:

(i)    Bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

(ii)    Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 1, 2021, and the date of the Settlement Agreement;

(iii)    Compensation for lost time of up to three (3) hours at $25 per hour for a maximum of up to $ 75 per person. Class members may submit claims for up to three (3) hours of lost time with an attestation that they spent the claimed time responding to issues raised by the Data Security Incident. This payment shall be included in the per person cap for Compensation for Ordinary Losses.

(iv)    This list of reimbursable documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary. Settlement Class Members may make claims for any documented out-of-pocket losses reasonably related to the

Data Security Incident or to mitigating the effects of the Data Security Incident. The Claims Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Data Security Incident.

(b)    **Claim B**: Compensation for Extraordinary Losses. Defendant will provide up to a maximum of $3,500 in compensation to each claimant who was the victim of actual documented identity theft for proven monetary loss if:

(i)    The loss is an actual, documented, and unreimbursed monetary loss;

(ii)    The loss was more likely than not caused by the Data Security Incident;

(iii)    The loss occurred between May 1, 2021, and the date of the Settlement Agreement;

(iv)    The loss is not already covered by one or more of the normal reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

3.2    Credit Monitoring Services. Settlement Class Members shall be offered an opportunity to enroll in two years of single bureau credit monitoring and identity theft protection with $1 million in insurance.

3.3    Remedial Measures. Defendant will provide confirmatory discovery regarding remedial measures taken as a result of the Data Security Incident and to confirm that it is no longer operating.

3.4     Claims Period. The Parties agree that the period for submitting claims will be set at a date certain no more than 90 days from the date that Notice is mailed to the Settlement Class Members.

3.5     Attorney's Fees. PracticeMax agrees not to object to an application by Settlement Class Counsel requesting the Court award attorney's fees and costs in an amount not to exceed eight hundred and twenty-five thousand and no/100 dollars ($825,000.00), which are to be paid separate and apart from any other sums agreed to under this Settlement Agreement, but which are included in the Maximum Settlement Cap.

3.6     Service Awards. PracticeMax agrees not to object to an application by Settlement Class Counsel requesting the Court award a Service Award to each Plaintiff in an amount not to exceed two thousand and five hundred and no/100 dollars ($2,500.00), or twelve thousand and five hundred dollars ($12,500) total, which is to be paid separate and apart from any other sums agreed to under this Settlement Agreement but which are included in the Maximum Settlement Cap.

3.7     Settlement administration fees to be paid by Defendant. The Claims Administrator will provide information to PracticeMax regarding approved claims, including all documentation to substantiate the claim upon request. PracticeMax shall have up to five (5) business days after being provided this information to dispute any approved claim.

3.8     The parties will agree on a Settlement Umpire to make a final and binding determination regarding any disputed claim by a Settlement Class Member. If the Settlement Umpire becomes unavailable, the parties may agree upon a substitute Settlement Umpire. If for any reason the parties are unable to agree on a Settlement Umpire the Court may appoint a Settlement Umpire.

3.9    <u>Maximum Settlement Cap</u>. The maximum amount to be paid by PracticeMax is capped at no more than $3,000,000. In the unlikely event that the total cost of this settlement would otherwise exceed $3,000,000, Settlement Administration Fees will be paid as a first priority; the cost of credit monitoring will be paid as a second priority; other costs and expenses will be pro-rated as needed to stay within the maximum $3,000,000 cap.

3.10    The entire settlement is subject to court approval. The Effective Date for the settlement will be when the time for appeal of the Order and Judgment granting final approval have lapsed with no appeal having been filed or, if any appeal is filed, thirty days after an appeal is finally resolved with an affirmance of the Order and Judgment granting final approval.

4.    **SETTLEMENT ADMINISTRATION.**

4.1    All Notice and Claims Administration Costs will be paid by PracticeMax.

4.2    The Parties have agreed to request that the Court appoint Epiq as Claims Administrator. Once approved by the Court, the Claims Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.

4.3    The Claims Administrator will cause the Notice Program to be effectuated in accordance with the terms of this Settlement Agreement and any orders of the Court. The Claims Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by PracticeMax Counsel and Settlement Class Counsel. The Parties shall reasonably cooperate with such requests.

4.4    The Claims Administrator will administer and update the Settlement Website in accordance with the terms of this Settlement Agreement. Settlement Class Counsel and PracticeMax Counsel shall agree on all information and documents to be posted on the Settlement Website.

14

4.5    The Claims Administrator will conduct Claim Administration in accordance with the terms of the Settlement Agreement, and any additional processes agreed to by Settlement Class Counsel and PracticeMax Counsel, and subject to the Court's supervision and direction as circumstances may require. The Claims Administrator shall within ten (10) Days after the filing of the motion seeking Preliminary Approval of the Settlement, acting on behalf of PracticeMax, have served or cause to be served a notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

4.6    To make a claim for monetary compensation, a Settlement Class Member must complete and submit a valid, timely Claim Form. Claim Forms shall be submitted by U.S. mail or electronically through the Settlement Website and must be postmarked or submitted no later than the Claim Deadline.

4.7    The Claims Administrator will review and evaluate each Claim Form, including any required documentation submitted (except for claims for lost time), for timeliness, completeness, and validity.

4.8    The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all documentation (except for claims for lost time) or information needed to complete the Claim Form, including any documentation required to support claims for compensation under Paragraph 3.1 above; and (3) when applicable, the information submitted could lead a reasonable person to conclude that the claimant is eligible for the category and/or amount for which a claim is submitted (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims

Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, available insurance or other sources of reimbursement, the status of any claims made for insurance benefits or other reimbursement, and claims previously made for identity theft and the resolution thereof.

4.9    The Claims Administrator will maintain records of all Claim Forms submitted until the later of (a) one hundred and eighty (180) Days after the Effective Date or (b) the date all Claim Forms have been fully processed. Claim Forms and supporting documentation may be provided to the Court upon request and to Settlement Class Counsel and/or PracticeMax Counsel to the extent requested or necessary to resolve Claims Administration issues pursuant to this Settlement Agreement. PracticeMax or the Claims Administrator will provide other reports or information as requested by the Court.

4.10    Subject to the terms and conditions of this Settlement Agreement, PracticeMax shall transmit needed claimant compensation funds to the Claims Administrator, and the Claims Administrator shall mail or otherwise provide payment for approved claims within sixty (60) Days of the Effective Date, or within sixty (60) Days of the date that the Claim is approved, whichever is later.

4.11    Payment for approved Claims shall be mailed or otherwise sent to the Settlement Class Member in the manner indicated on his or her Claim Form.

4.12    Any checks issued under this section shall be void if not negotiated within ninety (90) Days of their date of issue and shall bear the language: "This check must be cashed within 90 days, after which time it is void." Checks issued pursuant to this section that are not negotiated within ninety (90) Days of their date of issue shall not be reissued. If a Settlement Class Member fails to cash a check issued under this section before it becomes void, the Settlement Class Member

will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief under the Settlement shall be extinguished, and PracticeMax shall have no obligation to make payments to the Settlement Class Member for compensation or loss reimbursement under Paragraph 3.1 or to make any other type of monetary relief to the Settlement Class Member. Such a Settlement Class Member remains bound by all terms of the Settlement Agreement.

4.13    The settlement funds and benefits that PracticeMax shall create or provide will not be subject to any non-claim statutes or any possible rights of forfeiture or escheat.  All monies that might be paid are not vested, contingently due, or otherwise monies in which a Settlement Class Member has an enforceable right and shall remain the property of PracticeMax until all conditions for payment have been met. No interest shall accrue or be payable in connection with any payment due under this Settlement Agreement.

4.14    Information submitted by Settlement Class Members in connection with submitted claims for benefits under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, Settlement Class Counsel, and PracticeMax Counsel. The Claims Administrator is authorized to and shall provide to Settlement Class Counsel and PracticeMax Counsel upon request information regarding approved claims including all documentation supporting approved claims.

## 5.    NOTICE TO SETTLEMENT CLASS MEMBERS.

5.1    The Parties agree that the following Notice Program provides reasonable notice to the Settlement Class.

5.2    Notice shall be provided to Settlement Class Members via: (1) direct notice; and (2) notice on the Settlement Website.

5.3     Within ten (10) Days of the entry of the Preliminary Approval Order, PracticeMax shall provide the Claims Administrator with the names and mailing addresses of the Settlement Class Members whose mailing addresses are known to PracticeMax. The Claims Administrator shall, by using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

5.4     Within thirty (30) Days of the entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator shall send the Notice in **Exhibit A** to all Settlement Class Members whose addresses are known to PracticeMax by first-class U.S. mail.

5.5     If any Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. Where the undeliverable Notice is returned without a forwarding address, the Claims Administrator shall make reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned undeliverable and remail the Notice. Other than as set forth in the preceding sentence, neither the Parties nor the Claims Administrator shall have any obligation to remail a Notice to a Settlement Class Member.

5.6     The Notice mailed to Settlement Class Members will consist of a Short Form Notice in a form substantially similar to that attached hereto as **Exhibit A**. The Claims Administrator shall have the discretion to format the Short Form Notice in a reasonable manner to minimize mailing and administrative costs. Before Notices are mailed, Settlement Class Counsel and PracticeMax Counsel shall first be provided with a proof copy (reflecting what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and any orders of the Court.

5.7     No later than thirty (30) Days following entry of the Preliminary Approval Order and engagement of a Claims Administrator, and prior to the mailing of the Notice to Settlement Class Members, the Claims Administrator will create a dedicated Settlement Website. The Claims Administrator shall cause the Complaint, the Short Form Notice, the Long Form Notice (substantially similar to that attached hereto as **Exhibit B**, and the Claim Form (in a form substantially similar to that attached hereto as **Exhibit C**), as approved by the Court, as well as this Settlement Agreement, to be made available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by Settlement Class Counsel and PracticeMax Counsel, which approval shall not be unreasonably withheld. The Settlement Website address and the fact that the Long Form Notice and a Claim Form are available through the Settlement Website shall be included in the Notice mailed to Settlement Class Members.

5.8     The Settlement Website shall be maintained and updated until thirty (30) Days after the Effective Date.

5.9     Claim Forms shall be returned or submitted to the Claims Administrator via U.S. mail or submitted through the Settlement Website by the Claim Deadline set by the Court or be forever barred.

5.10    Prior to the Final Approval Hearing, the Claims Administrator shall provide to Settlement Class Counsel and PracticeMax Counsel to file with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to its compliance with the Court-approved Notice Program.

19

5.11    PracticeMax shall pay the entirety of the costs of Claims Administration and the costs of providing notice to the Settlement Class in accordance with the Preliminary Approval Order.

**6.    OPT-OUT PROCEDURE.**

6.1    Each Settlement Class Member shall have the right to opt out and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

6.2    The Notice shall inform each Settlement Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Settlement Agreement, if, within such time as is ordered by the Court ("Opt-Out Period"), the Settlement Class Member personally signs and timely submits, completes, and mails a request for exclusion ("Opt-Out Request") to the Claims Administrator at the address set forth in the Notice. To be effective, an Opt-Out Request must be postmarked no later than the final date of the Opt-Out Period.

6.3    The Parties will recommend to the Court that the Opt-Out Period be the sixty (60)-Day period beginning upon the Notice Deadline.

6.4    For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right, such as those in the Lawsuit); and (c) clearly manifest the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all rights to the benefits of the Settlement. The Claims Administrator shall promptly inform Settlement Class Counsel and PracticeMax Counsel of any Opt-Out Requests.

6.5     All Settlement Class Members who submit timely and valid Opt-Out Requests in the manner set forth in Paragraph 6.4, above, referred to herein as "Opt-Outs," shall receive no benefits or compensation under this Settlement Agreement, shall gain no rights from the Settlement Agreement, shall not be bound by the Settlement Agreement, and shall have no right to object to the Settlement or proposed Settlement Agreement or to participate at the Final Approval Hearing. All Settlement Class Members who do not request to be excluded from the Settlement Class in the manner set forth in Paragraph 6.4, above, shall be bound by the terms of this Settlement Agreement, including the Release contained herein, and any judgment entered thereon, regardless of whether he or she files a Claim Form or receives any monetary benefits from the Settlement.

6.6     An Opt-Out Request or other request for exclusion that does not fully comply with the requirements set forth in Paragraph 6.4, above, or that is not timely submitted or postmarked, or that is sent to an address other than that set forth in the Notice, shall be invalid, and the person submitting such request shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and any judgment entered thereon.

6.7     No person shall purport to exercise any exclusion rights of any other person, or purport (a) to opt-out Settlement Class Members as a group, in the aggregate, or as a class involving more than one Settlement Class Member; or (b) to opt-out more than one Settlement Class Member on a single paper, or as an agent or representative. Any such purported Opt-Out Requests shall be void, and the Settlement Class Member(s) who is or are the subject of such purported Opt-Out Requests shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and judgment entered thereon, unless he or she submits a valid and timely Opt-Out Request.

6.8     Within fourteen (14) Days after the last Day of the Opt-Out Period, the Claims Administrator shall furnish to Settlement Class Counsel and to PracticeMax Counsel a complete list of all timely and valid Opt-Out Requests (the "Opt-Out List").

## 7.    OBJECTIONS TO THE SETTLEMENT.

7.1     Any Settlement Class Member who wishes to object to the Settlement Agreement must submit a timely and valid written notice of his or her objection ("Objection") by the Objection Deadline (as defined herein). Such notice shall: (i) state the objecting Settlement Class Member's full name, current address, telephone number, and email address (if any); (i) contain the objecting Settlement Class Member's signature; abd (ii) set forth a statement of all grounds for the objection, including any legal support for the objection that the objector believes applicable.

7.2     To be timely, an Objection in the appropriate form must be filed with the Clerk of the Court and mailed or hand delivered concurrently upon Settlement Class Counsel and PracticeMax Counsel at addresses set forth in the Notice no later than sixty (60) Days after the Notice Deadline ("Objection Deadline"). The deadline for filing Objections shall be included in the Notice.

7.3     If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, the notice of appearance filed with the Court must also identify the attorney(s) representing the objector who will appear at the Final Approval Hearing and include each such attorney's name, address, phone number, email address, state bar(s) to which counsel is admitted.

7.4     If the objecting Settlement Class Member intends to request permission from the Court to call witnesses at the Final Approval Hearing, the objecting Settlement Class Member must provide a list of any such witnesses together with a brief summary of each witness's expected testimony at least thirty (30) Days before the Final Approval Hearing.

7.5     Any Settlement Class Member who fails to comply in full with the requirements for objecting set forth in this Settlement Agreement, the Notice, and any applicable orders of the Court shall forever waive and forfeit any and all rights he or she may have to raise any Objection to the Settlement Agreement, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by the Settlement Agreement and by all proceedings, orders, and judgments in the Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions set forth in this Section.

## 8.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD.

8.1     PracticeMax has agreed not to object to a Service Award to be paid to Plaintiffs in an amount not to exceed two thousand dollars and five hundred and no/100 ($2,500.00) to each of the five Plaintiffs, which award is intended to recognize Plaintiffs for their efforts in the litigation and commitment on behalf of the Settlement Class. Plaintiffs will not request Service Awards exceeding two thousand dollars and five hundred and no/100 ($2,500.00) per Plaintiff ($12,500 total). If approved by the Court, PracticeMax will pay the Service Award to an account established by Settlement Class Counsel no later than twenty-one (21) Days after the Effective Date. The Service Award will be paid by PracticeMax separate and apart from any other sums agreed to under this Settlement Agreement but are included in and subject to the Maximum Settlement Cap.

8.2     PracticeMax has agreed not to object to an award of attorneys' fees and costs in an amount not to exceed eight hundred and twenty-five thousand and no/100 ($825,000.00) to Settlement Class Counsel. Settlement Class Counsel will not request an award of attorneys' fees and costs exceeding eight hundred and twenty-five thousand and no/100 ($825,000.00). If approved by the Court, PracticeMax will pay the Court-approved amount for attorneys' fees and costs up to eight hundred and twenty-five thousand and no/100 ($825,000.00) to an account

established by Settlement Class Counsel no later than twenty-one (21) Days after the Effective Date. The attorneys' fees and costs will be paid by PracticeMax separate and apart from any other sums agreed to under this Settlement Agreement but are included in and subject to the Maximum Settlement Cap.

8.3    Settlement Class Counsel will file the applications with the Court for the Service Award and attorneys' fees and expenses no later than fourteen (14) Days prior to the deadlines for a Settlement Class Member to opt out of or object to the Settlement, unless otherwise ordered by the Court.

8.4    The Parties agree that PracticeMax will not in any event or circumstance be required to pay any amounts to Plaintiffs or Settlement Class Counsel for a Service Award or attorneys' fees and costs in excess of the amounts identified above in Paragraphs 8.1 and 8.2.

8.5    The Parties agree that the Court's approval or denial of any request for a Service Award and/or attorneys' fees and costs are not conditions to this Settlement Agreement. The Parties further agree that the amount(s) of a Service Award, and of any award of attorneys' fees or costs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification, reversal, or appeal of any order of the Court, concerning the amount of a Service Award or any attorneys' fees or costs, ordered by the Court to be paid to Settlement Class Counsel, or Plaintiffs, shall affect whether the Final Order and Judgment is Final, cancel, or terminate this Settlement Agreement, or constitute grounds for cancellation or termination of this Settlement Agreement.

9.    **NOTICES.**

9.1    All notices (other than the Notice) required by the Settlement Agreement shall be made in writing and communicated by mail or hand delivery to the following addresses:

All Notices to Settlement Class Counsel or Plaintiffs shall be sent to:

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

All Notices to PracticeMax Counsel or PracticeMax shall be sent to:

Jon Kardassakis
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071

9.2    Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of comments, Objections, requests for exclusion, or other documents, communications, or filings received as a result of the Notice.

## 10.    SETTLEMENT APPROVAL PROCESS.

10.1    As soon as practicable after execution of this Settlement Agreement, the Parties shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement, requesting entry of a Preliminary Approval Order in the form attached hereto as **Exhibit D**, or an order substantially similar to such form in both terms and cost, which:

(a)    Preliminarily approves this Settlement Agreement;

(b)    Certifies the Settlement Class for settlement purposes only pursuant to Section 2;

(c)    Finds that the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice to Settlement Class Members;

(d)    Appoints the Claims Administrator in accordance with the provisions *supra*;

(e)    Approves the Notice Program and directs the Claims Administrator and PracticeMax to provide Notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

(f)    Approves a customary form of short notice to be mailed to Settlement Class Members (the "Short Form Notice") in a form substantially similar to the one attached hereto as **Exhibit A** and a customary long form of notice ("Long Form Notice") in a form substantially similar to the one attached hereto as **Exhibit B**, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the Settlement set forth in this Settlement Agreement, instructions for how to opt-out of or object to the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time, and place of the Final Approval Hearing;

(g)    Approves a Claim Form substantially similar to that attached hereto as **Exhibit C**, and directs the Claims Administrator to conduct Claims Administration in accordance with the provisions of this Settlement Agreement;

(h)    Approves the Opt-Out and Objection procedures as outlined in this Settlement Agreement;

(i)    Schedules a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court;

(j)    Appoints Settlement Class Counsel;

(k)    Appoints Plaintiffs as the Settlement Class Representative; and

(l)    Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

## 11.    FINAL APPROVAL HEARING.

11.1    Settlement Class Counsel and PracticeMax Counsel shall request that after Notice is completed, the Court hold a Final Approval Hearing and grant final approval of the Settlement

set forth herein. The Parties will recommend that the Final Approval Hearing be scheduled no earlier than one hundred twenty (120) Days after the entry of the Preliminary Approval Order.

11.2    Plaintiffs will file with the Court their brief in support of final approval, attorneys' fees and costs and Service Award no later than fourteen (14) Days before the Final Approval Hearing, or as directed by the Court.

11.3    Plaintiffs will file with the Court their brief in support of attorneys' fees and costs and Service Award no later than fourteen (14) Days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement, or as directed by the Court.

11.4    The Parties shall ask the Court to enter a Final Order and Judgment in substantially the same form as **Exhibit E** attached hereto.

11.5    If and when the Final Order and Judgment becomes Final, the Lawsuit shall be dismissed with prejudice, with the Parties to bear their own attorneys' fees, costs, and expenses not otherwise provided in accordance with this Settlement Agreement.

## 12.    TERMINATION OF THIS SETTLEMENT AGREEMENT.

12.1    Each Party shall have the right to terminate this Settlement Agreement if:

(a)    The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that is not substantially similar in form and substance to **Exhibit D** attached hereto);

(b)    The Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from **Exhibit E** attached hereto); or

(c)    The Final Order and Judgment do not become Final because a higher court reverses final approval by the Court.

27

12.2     In the event that more than 2% of the Settlement Class has opted out, PracticeMax may, by notifying Settlement Class Counsel, in writing, void this Settlement Agreement within five (5) business days from the date the Claims Administrator provides PracticeMax with written notice of the final number of opt-outs. If PracticeMax voids the Settlement Agreement pursuant to this paragraph, PracticeMax shall be obligated to pay all Claims Administration expenses incurred, excluding any attorneys' fees and costs of Settlement Class Counsel and any Service Award, and PracticeMax shall not seek recovery of the same from any other party to the Lawsuit or from Counsel to any other party to the Lawsuit.

12.3     If a Party elects to terminate this Settlement Agreement under this Section 12, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or email within ten (10) Days of the occurrence of the condition permitting termination.

12.4     Nothing shall prevent Plaintiffs or PracticeMax from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement. In the event such appellate proceedings result, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Lawsuit with prejudice, and otherwise meeting the substantive criteria of this Settlement Agreement for approval of the Settlement, such order shall be treated as a Final Order and Judgment.

12.5     If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used

28

in the Lawsuit or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*; (iii) PracticeMax shall be responsible for all Notice and Claims Administration Costs incurred prior to the termination or disapproval; (iv) all Parties shall be deemed to have reverted to their respective positions and status in the Lawsuit as of the date this Settlement Agreement was executed and shall jointly request that a new case schedule be entered by the Court; and (v) PracticeMax shall have no payment, reimbursement, or other financial obligation of any kind as a result of this Settlement Agreement, other than as stated in Sub-Part (iii) above.

13.    **RELEASE.**

13.1    On the Effective Date, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim may be pursued against PracticeMax or any Released Persons with respect to the Released Claims.

13.2    Upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, pursuing, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims is asserted.

13.3    On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, (i) Plaintiffs and each Settlement Class Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as *parens patriae* or on behalf of creditors or estates of the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Settlement Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns will be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, completely, and forever released and discharged the Released Persons from the Released Claims. The release set forth in the preceding sentence (the "Release") shall be included as part of any judgment, so that all Released Claims shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

13.4    Without in any way limiting the scope of the Release, the Release covers, without limitation, any and all claims for attorneys' fees, costs, and expenses incurred by Settlement Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the Settlement, the administration of such Settlement and/or the Released Claims, as well as any and all claims for the Service Award to Plaintiffs.

13.5    Subject to Court approval, as of the Effective Date, all Settlement Class Members shall be bound by this Settlement Agreement and the Release and all of their claims shall be

dismissed with prejudice and released, irrespective of whether they received actual notice of the Lawsuit or this Settlement.

13.6    As of the Effective Date, the Released Persons are deemed, by operation of the entry of the Final Order and Judgment, to have fully released and forever discharged Plaintiffs, the Settlement Class Members, Settlement Class Counsel, or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, of and from any claims arising out of the Lawsuit or the Settlement. Any other claims or defenses PracticeMax or other Released Persons may have against Plaintiffs, the Settlement Class Members, Settlement Class Counsel, or any other counsel representing Plaintiffs or Settlement Class Members, including, without limitation, any claims based upon or arising out of any employment, debtor-creditor, contractual, or other business relationship that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Lawsuit or the Released Claims are not released, are specifically preserved and shall not be affected by the preceding sentence.

13.7    Nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## 14.    EFFECTIVE DATE.

14.1    The "Effective Date" of this Settlement Agreement shall be ten (10) Days after the date when each and all of the following conditions have occurred:

(a)    This Settlement Agreement has been fully executed by all Parties and their counsel;

(b)    Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement, and approving the Notice Program and Claim Form, all as provided above;

(c)     The Court-approved Notice has been sent and the Settlement Website has been duly created and maintained as ordered by the Court;

(d)     The Court has entered a Final Order and Judgment finally approving this Settlement Agreement, as provided above;

(e)     The Final Order and Judgment has become Final; and

(f)     The time for any appeal of the Final Order and Judgment has expired.

## 15.    MISCELLANEOUS PROVISIONS.

15.1    The recitals and exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

15.2    The Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

15.3    This Settlement Agreement is for settlement purposes only. No provision contained in this Settlement Agreement or any action taken hereunder shall constitute or be construed as an admission of the merit or validity of any claim or any fact alleged in the Lawsuit or of any wrongdoing, fault, violation of law, or liability of any kind on the part of PracticeMax or the Released Persons or any admission by PracticeMax or the Released Persons with respect to any claim or allegation made in any action or proceeding or any concession as to the merit of any of the claims asserted by Plaintiffs in the Lawsuit. This Settlement Agreement shall not be offered or be admissible in evidence against either Party or the Released Persons or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by PracticeMax or the

Released Persons that Plaintiffs' claims or any similar claims are suitable for class treatment outside of this Settlement.

15.4    In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing such agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement in order to give this Settlement Agreement full force and effect.

15.5    No Person shall have any claim against Plaintiffs, Settlement Class Counsel, PracticeMax, PracticeMax Counsel, the Claims Administrator, the Released Persons, or their agents based on administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any court order.

15.6    This Settlement Agreement constitutes the entire agreement between the Parties with respect to the settlement of the Lawsuit. This Settlement Agreement supersedes all prior negotiations and agreements with respect to the settlement of the Lawsuit and may not be modified or amended, except by a writing signed by or on behalf of the Parties or their respective successors-in-interest. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on, except as expressly set forth in this Settlement Agreement.

15.7    There shall be no waiver of any term or condition absent an express writing to that effect by the waiving Party. No waiver of any term or condition in this Settlement Agreement shall

be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

15.8    In the event a third party, such as a bankruptcy trustee, former spouse, or other third party, has or claims to have a claim against any payment made or to be made to a Settlement Class Member, it is the sole responsibility of the Settlement Class Member to transmit the funds to such third party in satisfaction of such claims.

15.9    The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Lawsuit. The Settlement compromises and releases claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties each agree that the Settlement was negotiated in good faith by the Parties and was reached voluntarily after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Lawsuit was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Lawsuit, except as set forth herein.

15.10    This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

15.11   The Court shall retain jurisdiction, after entry of the Final Order and Judgment, with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court for purposes of the implementation and enforcement of the Settlement embodied in this Settlement Agreement and any dispute with respect thereto.

15.12   This Settlement Agreement shall be construed under and governed by the laws of Arizona without regard to its choice of law provisions.

15.13   In the event that any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision had never been a part of this Settlement Agreement, as long as the benefits to PracticeMax or the Settlement Class Members are not materially altered as the result of the invalid, illegal, or unenforceable provision.

15.14   This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

15.15   The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa), and the use of the masculine includes the feminine (and vice-versa).

15.16   All dollar amounts are in United States dollars (USD).

15.17   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

15.18  Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19  Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

Date:  September __, 2023        _____
                                Robert Hogsed

Date:  September __, 2023        _____
                                Justin Knox

Date:  September __, 2023        _____
                                Flor Medina

Date:  September __, 2023        _____
                                Brenda Allen

Date:  September __, 2023        _____
                                Katherine Witkowski

Date:  September __, 2023        _____
                                PracticeMax, Inc.

Approved by Counsel:

36

15.18   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

Date:  October __, 2023

                                    _____
                                      Robert Hogsed

Date:  October 9, 2023

                                      _____
                                      Justin Knox

Date:  October __, 2023

                                        _____
                                      Flor Medina

Date:  October __, 2023

                                        _____
                                      Brenda Allen

Date:  October __, 2023

                                        _____
                                      Katherine Witkowski

Date:   September __, 2023

                                      _____
                                      PracticeMax, Inc.

Approved by Counsel:

15.18  Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19  Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

Date: October ___, 2023

_____
Robert Hogsed

Date: October ___, 2023

_____
Justin Knox

Date: October ___, 2023

_____
Flor Medina

Date: October 10, 2023

_____
Brenda Allen

Date: October ___, 2023

_____
Katherine Witkowski

Date: October ___, 2023

_____
PracticeMax, Inc.

Approved by Counsel:

36

15.18   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

Date:   September ___, 2023

_____
Robert Hogsed

Date:   September ___, 2023

_____
Justin Knox

Date:   September ___, 2023

_____
Flor Medina

Date:   September ___, 2023

_____
Brenda Allen

Date:   September ___, 2023

Katie W.
Katherine Witkowski (Oct 5, 2023 17:15 CDT)
_____
Katherine Witkowski

Date:   September ___, 2023

_____
PracticeMax, Inc.

Approved by Counsel:

15.18  Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19  Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

Date:  September ___, 2023

_____
Robert Hogsed

Date:  September ___, 2023

_____
Justin Knox

Date:  September ___, 2023

_____
Flor Medina

Date:  September ___, 2023

_____
Brenda Allen

Date:  September ___, 2023

_____
Katherine Witkowski

Date:  ~~September~~ October 16, 2023

_____
PracticeMax, Inc.

Approved by Counsel:

Dated: October 5, 2023

/s/ _____

Jon Kardassakis*
**LEWIS BRISBOIS BISGAARD &**
**SMITH LLP**
CA State Bar No. 90602
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900
Jon.Kardassakis@lewisbrisbois.com
*pro hac vice application forthcoming*

*Attorneys for PracticeMax, Inc.*

Dated: October 5, 2023

/s/ _____

Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Settlement*
*Class*

# EXHIBIT A

Hogsed, et al. v. PracticeMax, Inc.
c/o Settlement Administrator
P.O. Box XXXX
City, State Zip

FIRST CLASS MAIL
U.S. POSTAGE PAID
CITY, STATE ZIP
PERMIT NO. XXXX

<<Barcode>>

Class Member ID: <<Refnum>>

---

## NOTICE OF CLASS ACTION SETTLEMENT

You may be entitled to submit a claim for monetary compensation under a class action settlement.

**www.PracticeMaxDataSettlement.com**

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

## WHO IS A CLASS MEMBER?

In the lawsuit, *Iacono, et al. v. PracticeMax Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.) you are a class member if you received notice that your personal information was potentially compromised as a result of the data security incident that PracticeMax experienced in early 2021 (the "Data Security Incident").

## WHAT ARE THE SETTLEMENT BENEFITS AND TERMS?

Under the Settlement, PracticeMax has agreed to provide the following benefits for those who make valid claims. **Lost Time Reimbursement**: Reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident ($25 per hour). **Documented Out-of-pocket Expense Reimbursement**: Up to $500 for documented out-of-pocket expenses. **Documented Extraordinary Loss Reimbursement**: Reimbursement for extraordinary losses, not to exceed $3,500 per Settlement Class Member, for documented monetary losses. **Credit Monitoring**: Settlement Class Members can enroll in for two years of credit monitoring and identity theft protection with $1 million in insurance. More information about the types of Claims and how to file them is available at www.PracticeMaxDataSettlement.com.

## WHAT ARE YOUR RIGHTS AND OPTIONS?

**Submit a Claim Form**. To qualify for a cash payment, you must timely mail a Claim Form that is attached to this notice or complete and submit a Claim Form online at www.PracticeMaxDataSettlement.com. Your Claim Form must be postmarked or submitted online no later than _____, 2024. _____ is the Settlement Administrator.

**Opt Out**. You may exclude yourself from the Settlement and retain your ability to sue PracticeMax on your own by mailing a written request for exclusion to the Settlement Administrator that is postmarked no later than _____, 2024. If you don't exclude yourself, you will be bound by the Settlement and give up your right to sue regarding the released claims.

**Objecting**. If you do not exclude yourself, you have the right to object to the Settlement. Written objections must be signed, postmarked no later than _____, 2024, and provide the reasons for the objection. If you intend to file an objection, please review the full requirements for filing an objection located at www.PracticeMaxDataSettlement.com.

**Do Nothing**. If you do nothing, you will not receive a Settlement payment and will lose your ability to sue regarding the released claims.

**Attend the Final Approval Hearing**. The Court will hold a Final Approval Hearing at _____ **m. on** _____, **2024,** to determine if the Settlement is fair, reasonable, and adequate. All persons who timely object to the Settlement may appear at the Final Approval Hearing.

**Who are the attorneys for the Plaintiff and the proposed Class?** The Court has appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood to represent the Class.

**Do I have any obligation to pay attorneys' fees or expenses?** No. Attorneys' fees and expenses will be paid exclusively from the Settlement Fund as awarded and approved by the Court. Class Counsel will request Attorneys' fees and costs in an amount not exceeding $825,000.00. The motion for attorneys' fees and expenses will be posted on the Settlement Website once it is filed.

**How much are the Class Representative Service Awards**? The Class Representatives will seek Service Awards in the amount of $2,500 each, for a total of $12,500 for their service in this case.

**Who is the Judge overseeing this Settlement?** Judge Douglas Rayes of the United States District Court for the District of Arizona.

**Where may I locate a copy of the settlement agreement, learn more about the case, or learn more about submitting a Claim?** www.PracticeMaxDataSettlement.com.

\*\*\* Please note that if you wish to submit a claim for compensation for out-of-pocket losses on the attached Claim Form, you will likely need to submit your claim online so you may attach all information necessary to support your request for payment for such out-of-pocket expenses. If you wish to receive just the cash payment, the attached tear off claim form should suffice. A longer version of the Claim Form may be accessed on the Settlement Website.

**This Notice is a summary of the proposed Settlement.**

# <u>EXHIBIT B</u>

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA

***Hogsed, et al. v. PracticeMax, Inc.***
**Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.)**

**If You Are Receiving this Notice a Class Action Settlement May Affect Your Rights.**

*The United States District Court for the District of Arizona*
*authorized this Notice. You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit concerning PracticeMax, Inc. ("Defendant" or "PracticeMax") and a data security incident (the "Data Security Incident") that occurred in early 2021, when one or more unauthorized individuals accessed information on a database belonging to PracticeMax, including full names, Social Security Numbers, financial account information and/or credit card information, dates of birth, prescription information, diagnosis information, treatment information, treatment providers, health insurance information, medical information, and Medicare/Medicaid ID numbers. ("Private Information").

- The lawsuit is called *Hogsed, et al. v. PracticeMax, Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.). The lawsuit asserts claims related to the Data Security Incident. The Defendant in the lawsuit is PracticeMax, Inc. PracticeMax denies it is or can be held liable for the claims made in the lawsuit. The Settlement does not establish who is correct, but rather is a compromise to end the lawsuit.

- Members of the Class are all individuals to whom PracticeMax sent notice of the Data Incident that occurred in early 2021. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads nolo contendere to any such charge.

- Class Members are eligible to receive each of the following: (1) compensation for lost time of up to three hours at $25 per hour for a maximum of up to $75 per person; (2) compensation for ordinary losses, which are documented out of pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $500 per person upon submission of a claim and supporting documentation; (3) compensation for extraordinary losses, up to a maximum of $3,500 to each claimant who was the victim of actual documented identity theft for proven monetary losses; and (4) two years of single bureau credit monitoring and identity theft protection with $1 million in insurance. The Settlement Administrator will post additional information about the payment amount on www.PracticeMaxDataSettlement.com. For complete details, please see the Settlement Agreement, whose terms control, available at www.PracticeMaxDataSettlement.com.

- Your legal rights are affected regardless of whether you act or do not act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you may receive benefits from this Settlement. The deadline to submit a Claim Form is <<**Date**>>. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | You will receive no payment, but you will retain any rights you currently have with respect to Defendant and the issues in this case. You may download an exclusion form at www.PracticeMaxDataSettlement.com. The deadline to exclude from the Settlement is <<**Date**>>. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court explaining why you do not agree with the Settlement. The deadline to object is <<**Date**>>. |
| **ATTEND THE FINAL APPROVAL HEARING** | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. The Final Approval Hearing will be held on <<**Date**>> at <<**Time**>>. |
| **DO NOTHING** | You get no payment and you give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. For complete details, please see the Settlement Agreement, whose terms control, available at www.PracticeMaxDataSettlement.com.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes Final.

## BASIC INFORMATION

## 1.    What is this Notice and why should I read it?

The Court authorized this Notice to inform you about a proposed Settlement with Defendant. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. You may be eligible to receive a cash payment as part of the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Douglas L Rayes of the United States District Court for the District of Arizona is overseeing this class action. The case is called *Hogsed, et al. v. PracticeMax, Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.) (the "Action").

Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski are the Plaintiffs ("Plaintiffs"). The company they sued, PracticeMax, Inc., is the Defendant.

## 2.    What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs—in this case, the Plaintiffs listed above, sues on behalf of a group of people who have similar claims. Together, this group is called a "Class" and consists of "Class Members." In a class action, the court resolves the issues for all class members, except those who exclude themselves from the class. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and recognized it as a case that should be treated as a class action for settlement purposes.

### THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

## 3.    What is this lawsuit about?

The Plaintiffs claim that Defendant failed to implement and maintain reasonable security measures necessary to protect Private Information that it maintained on its database.

Defendant denies that it is or can be held liable for the claims made in the lawsuit. More information about the allegations in the lawsuit and Defendant's responses can be found in the "Court Documents" section of the Settlement Website at www.PracticeMaxDataSettlement.com.

## 4.    Why is there a Settlement?

The Court has not decided whether the Plaintiffs or Defendant should win this case. Instead, both sides agreed to this Settlement. That way, they can avoid the uncertainty, risks, and expense of ongoing litigation, and Class Members will get compensation now rather than years later—if ever. The Class Representatives and Class Counsel, attorneys for the Class Members, agree the Settlement is in the best interests of the Class Members. The Settlement is not an admission of wrongdoing by Defendant.

### WHO'S INCLUDED IN THE SETTLEMENT?

## 5.    How do I know if I am in the Settlement Class?

You are part of the Settlement as a Class Member if PracticeMax sent you a notice indicating that your Private Information may have been compromised in the Data Security Incident, which occurred in early 2021 but was not publicly announced until June 2022. The Class specifically excludes: (i) PracticeMax, Inc.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. Eligible Class Members will have been mailed notice of their eligibility by the Settlement Administrator, and Class membership will be verified against that mailed list. If you are still not sure whether you are included, you can contact the Settlement Administrator by calling toll-free

at <<**Settlement Toll-Free Number**>> or by visiting the Settlement Website at www.PracticeMaxDataSettlement.com.

## THE SETTLEMENT BENEFITS

| **6.** | **What does the Settlement provide?** |
|---|---|

This Settlement provides eligible Class Members with (1) compensation for lost time of up to three hours at $25 per hour for a maximum of up to $75 per person; (2) compensation for ordinary losses, which are documented out of pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $500 per person upon submission of a claim and supporting documentation; (3) compensation for extraordinary losses, up to a maximum of $3,500 in compensation to each claimant who was the victim of actual documented identity theft for proven monetary losses; and (4) two years of single bureau credit monitoring and identity theft protection with $1 million in insurance.

Compensation for Ordinary Losses. Defendant will reimburse documented out of pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $500 per person upon submission of a claim and supporting documentation, such as the following losses:

– Bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

– Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 1, 2021, and the date of the Settlement Agreement;

– Compensation for lost time of up to three (3) hours at $25 per hour for a maximum of up to $ 75 per person. Class members may submit claims for up to three (3) hours of lost time with an attestation that they spent the claimed time responding to issues raised by the Data Security Incident. This payment shall be included in the per person cap for Compensation for Ordinary Losses.

– This list of reimbursable documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary. Settlement Class Members may make claims for any documented out-of-pocket losses reasonably related to the Data Security Incident or to mitigating the effects of the Data Security Incident. The Claims Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Data Security Incident.

Compensation for Extraordinary Losses. Defendant will provide up to a maximum of $3,500 in compensation to each claimant who was the victim of actual documented identity theft for proven monetary loss if:

– The loss is an actual, documented, and unreimbursed monetary loss;

– The loss was more likely than not caused by the Data Security Incident;

– The loss occurred between May 1, 2021, and the date of the Settlement Agreement;

- The loss is not already covered by one or more of the normal reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

Credit Monitoring Services. Settlement Class Members shall be offered an opportunity to enroll in two years of single bureau credit monitoring and identity theft protection with $1 million in insurance.

Remedial Measures. Defendant will provide confirmatory discovery regarding remedial measures taken as a result of the Data Security Incident and to confirm that it is no longer operating.

In no event shall Defendant's total financial obligation under the Settlement exceed $3,000,000.00, including the benefits to Settlement Class Members identified above, notice and administration costs, and attorneys' fees and Plaintiffs' service awards.

## HOW TO GET BENEFITS

### 7.    How do I make a Claim?

By submitting a valid claim form by on or before the claim deadline of [Month/Date/Year]. If you received the 2022 data breach notification letter, you can make a claim by filling out and submitting the claim form available at www.PracticeMaxDataSettlement.com.

You can also contact the Settlement Administrator to request a paper claim form by telephone (1-800-XXX-XXXX), email (info@ www.PracticeMaxDataSettlement.com), or U.S. mail _____, PracticeMax Data Breach Settlement, (address, city) , (Zip)).

Claims will be subject to a verification process. You will need the Unique ID provided on the front of your postcard Notice (or the top of your email notice) to fill out a Claim Form. If you do not know your Unique ID, please contact the Settlement Administrator.

### 8.    When will I get my payment?

The hearing to consider the fairness of the Settlement is scheduled for <<DATE>>., <<TIME>>. If the Court approves the Settlement, eligible Settlement Class Members whose Claims were approved by the Settlement Administrator will be sent payment after all appeals and other reviews, if any, are completed. Please be patient. Eligible claims will be paid to Class Members via written check unless a Class Member chooses to receive payment electronically. All checks will expire and become void 180 days after they are issued.

## THE LAWYERS REPRESENTING YOU

### 9.    Do I have a lawyer in this case?

Yes, the Court has appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan,

Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood.

**Should I get my own lawyer?**

You don't need to hire your own lawyer because Class Counsel are working on your behalf. These lawyers and their firms are experienced in handling similar cases. You will not be charged for these lawyers. You can ask your own lawyer to appear in Court for you, at your own cost, if you want someone other than Class Counsel to represent you.

## 10.    How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees, costs, and expenses that will be paid from the Settlement Fund. Class Counsel will not seek more than $825,000.00 in attorneys' fees, costs, and expenses. Class Counsel will also request a Service Award of up to $2,500 for each Class Representative, or $12,500 total. The Court will determine the proper amount of any attorneys' fees, costs, and expenses to award Class Counsel and the proper amount of any service award to the Class Representative. The Court may award less than the amounts requested.

### YOUR RIGHTS AND OPTIONS

## 11.    What claims do I give up by participating in this Settlement?

If you do not exclude yourself from the Settlement, you will not be able to sue the Defendant about the issues in this case, and you will be bound by all decisions made by the Court in this case, the Settlement, and its included Release. This is true regardless of whether you submit a Claim Form. You can read the Settlement Agreement at www.PracticeMaxDataSettlement.com. However, you may exclude yourself from the Settlement (see Question 14). If you exclude yourself from the Settlement, you will not be bound by any of the Released Claims.

"Released Claims" means any and all past, present, and future claims and causes of action related to the Data Security Incident, including but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. § 45, et seq., and all similar statutes in effect in any states in the United States as defined below; state consumer-protection statutes; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief or judgment, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Class Member against any of the Released Persons based on, relating to, concerning or arising out of the alleged Data Incident or

the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.

The Settlement Agreement in Subsections 1.31, 1.32, and Section 13 describes the Release, Released Claims, and untimely Valid Claims in necessary legal terminology, so please read these sections carefully. The Settlement Agreement is available at www.PracticeMaxDataSettlement.com or in the public court records on file in this lawsuit.

The Released Claims do not include any claims arising from or relating to any conduct by Defendant after the date the Agreement is executed. The Released Claims shall also not include the right of Plaintiff, any Class Member, or any Releasing Party to enforce the terms of the Settlement Agreement.

## 12.    What happens if I do nothing at all?

If you do nothing, you will receive no payment under the Settlement for any losses incurred as a result of the Data Incident. You will be in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court, the Settlement, and its included Release. You will be deemed to have participated in the Settlement and will be subject to the provisions of Section 11 above.  Unless you exclude yourself, you won't be able to file a lawsuit or be part of any other lawsuit against Defendant for the claims or legal issues resolved in this Settlement.

## 13.    What happens if I ask to be excluded?

If you opt-out of the Settlement, you will not have any rights as a member of the Class under the Settlement terms; you will not receive any payment as part of the Settlement; you will not be bound by any further orders or judgments in this case; and you will keep the right, if any, to sue on the claims alleged in this lawsuit at your own expense.

## 14.    How do I ask to be excluded?

You can ask to be excluded from the Settlement. To do so, you must mail a letter or exclusion form stating: (1) the name of the proceeding, *Hogsed, et al. v. PracticeMax, Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.); (2) your full name; (3) your current address and telephone number; (4) your personal signature; and (5) a clear statement of your intent to opt-out of or exclude yourself from the settlement. You must mail your exclusion request, postmarked no later than <<**ExclusionDeadline**>>, to the following address:

*PracticeMax Data Breach*
c/o _____

You cannot exclude yourself by phone or email. Each individual who wants to be excluded from the Settlement must submit his or her own exclusion request. No group opt-outs shall be permitted.

## 15. If I don't exclude myself, can I sue Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendant for the claims being resolved by this Settlement even if you do nothing.

## 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for a payment.

## 17. How do I object to the Settlement?

If you did not exclude yourself from the Class and think that the Court should not approve the settlement, you can object to the Settlement and provide reasons why you think the settlement should not be approved. Such notice must state: (i) your full name, address, telephone number, and email address; (ii) the case name and docket number, *Hogsed, et al. v. PracticeMax, Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable; and (iv) your signature or the signature of your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than <<Objection Date>>, to the Settlement Administrator, _____, at <<Address>>. You or your counsel shall also file any Objection with the Court through the Court's ECF system or by submitting your objection to the Clerk of Court, which is located at <<Address>>.

For all objections mailed to the Settlement Administrator, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement, unless the Objection(s) were previously filed on the docket.

## 18. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FAIRNESS HEARING

## 19.     When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold the Final Approval Hearing on <<**FinalApprovalHearingDateandTime**>> at the <<**CourtAddress**>>. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees, costs, and expenses and the Service Award Payment to the Class Representative.

**Note**: The date and time of the Final Approval Hearing are subject to change by Court Order. Any changes will be posted at the Settlement Website, www.PracticeMaxDataSettlement.com, or through the Court's publicly available docket. You should check the Settlement Website to confirm the date and time have not been changed.

## 20.     Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have, but you are welcome to attend the hearing at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in the Settlement Agreement, the Court will consider it. You may also pay a lawyer to attend on your behalf at your own expense, but you don't have to.

## 21.     May I speak at the Hearing?

Yes. If you do not exclude yourself from the Class, you may ask the Court for permission to speak at the Final Approval Hearing concerning any part of the proposed Settlement.

### GETTING MORE INFORMATION

## 22.     Where can I get additional information?

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement, which is available at www.PracticeMaxDataSettlement.com**.**

YOU MAY CONTACT THE SETTLEMENT ADMINISTRATOR ONLINE AT www.PracticeMaxDataSettlement.com, BY CALLING TOLL-FREE AT, <<**SETTLEMENTTOLLFREENUMBER**>>, BY EMAIL AT info@practicemaxdatasettlement.com, OR WRITING TO:

*PracticeMax Data Breach*
c/o _____

**PLEASE DO NOT CALL THE COURT, THE CLERK OF THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**

# **<u>EXHIBIT C</u>**

*Hogsed, et al. v. PracticeMax, Inc.,* **Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.)**

<u>**SETTLEMENT CLAIM FORM**</u>

TO BE VALID, THIS CLAIM FORM MUST BE POSTMARKED OR SUBMITTED ONLINE AT
*PracticeMaxDataSettlement.com* NO LATER THAN <<CLAIM DEADLINE>>.

*ATTENTION: This Claim Form is to be used to apply for relief related to the Data Security Incident that PracticeMax, Inc. discovered in early 2021 and publicly announced in June 2022, which potentially affected all individuals to whom PracticeMax sent notice. Class Members are eligible to receive each of the following benefits: (1) compensation for lost time of up to three hours at $25 per hour for a maximum of up to $75 per person; (2) compensation for ordinary losses, which are documented out of pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $500 per person upon submission of a claim and supporting documentation; (3) compensation for extraordinary losses, up to a maximum of $3,500 to each claimant who was the victim of actual documented identity theft for proven monetary losses; and (4) two years of single bureau credit monitoring and identity theft protection with $1 million in insurance.*

*To submit a Claim, you must have been identified as an individual whose Private Information was maintained on the PracticeMax database that was compromised during the Data Incident and received Notice of this Settlement with a Unique ID.*

**Please review this entire Claim Form. Failure to submit required documentation, or to complete all necessary parts of the Claim Form, may result in denial of the Claim, delay its processing, or otherwise adversely affect the Claim.**

*ASSISTANCE: If you have questions, please visit the Settlement Website at PracticeMaxDataSettlement.com or call <<Settlement Toll Free Phone Number>>.*

<u>**REGISTRATION**</u>

First Name:                                               MI:    Last Name:

Mailing Address:

City:                                                                          State:         Zip Code:

Telephone Number:

*XXXXXXXXXXXXX*

Unique ID: XXXXXXXXXXXXX

Email Address:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

**Please provide the Unique ID identified on the Notice that was sent to you:**

☐☐☐☐☐☐☐☐☐☐☐☐☐

*Instructions. Please follow the instructions below and answer the questions as instructed.*

## LOST TIME

All Members of the Class may submit a Claim for Lost Time at a rate of $25/hour if at least one hour of time was spent in response to the Data Breach, remedying fraud, identity theft, or other alleged misuse of personal information caused by the Data Breach or spent on preventative and remedial measures to protect personal information that were caused by the Data Breach. You may claim up to 3 hours of lost time at $25 per hour ($75 maximum) under this settlement benefit. This payment is included in the per person cap for Compensation for Ordinary Losses.

**I attest that I spent (circle one if applicable)        1        2        3        hours        in response to the PracticeMax data security incident.**

## ORDINARY LOSSES

The Settlement provides reimbursement for ordinary out-of-pocket losses or expenses incurred on or after May 1, 2021, as a result of the Data Security Incident, up to a maximum reimbursement of $500. Examples of losses or expenses that can be reimbursed include, but are not limited to, bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel, fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 1, 2021, and the date of the Settlement Agreement. To obtain reimbursement, you must provide a brief description of what the losses or expenses were for, and provide supporting third-party documentation, such as receipts, bank statements, or reports.

This list of reimbursable documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary. Settlement Class Members may make claims for any documented out-of-pocket losses reasonably related to the Data Security Incident or to mitigating the effects of the Data Security Incident. The Claims Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Data Security Incident.

**Did you suffer any financial expenses or losses that you believe were incurred as a result of the Data Incident?** (select one)

**Yes                No**

*XXXXX*                          *CF*

XXXXX                              CF                                    Page 2 of 5

Unique ID: XXXXXXXXXXXX

*If you selected yes*, for each loss or expense that you believe you incurred as a result of the Data Security Incident, please provide a short description of the loss, the date of the loss, and the type of documentation you will be submitting to support the loss. You must provide ALL of this information for this Claim to be processed. **Supporting documents must also be submitted with this Claim Form**. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. Please provide only copies of your supporting documents and keep all originals for your personal files.

| Description of the Loss | Date of Loss | Amount | Description of Supporting Documentation |
|---|---|---|---|
| **Example:**<br>Identity Theft Protection Service | 0 6 – 1 7 – 2 2<br>MM   DD   YY | $ [_][_][_] 5 0 • 0 0 | Copy of identity theft protection service bill |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_][_][_][_][_]<br> | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |
| | [_][_] – [_][_] – [_][_]<br>MM   DD   YY | $ [_][_][_][_] • [_][_] | |

## EXTRAORDINARY LOSSES



Unique ID: XXXXXXXXXXXXX

I am submitting a claim for extraordinary monetary losses in the amount of $_____ on account of losses I incurred as a result of the data security incident involving PracticeMax. I understand that I am required to provide supporting third-party documentation and to support my claim for these losses, such as providing copies of any receipts, bank statements, reports, or other documentation supporting my claim. This can include receipts or other documentation not "self-prepared" by you. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. The Settlement Administrator may contact you for additional information before processing your claim. If you do not have information supporting your claim for extraordinary expenses, you likely will not receive compensation for this settlement benefit. **Any monetary compensation you may receive under the settlement is capped at $3,500.00 for extraordinary losses.**

**Did you suffer extraordinary losses that you believe were incurred as a result of the Data Incident?** (select one)

**Yes**          **No**

| Description of the Loss | Date of Loss | Amount | Description of Supporting Documentation |
|---|---|---|---|
| **Example:** Fees paid to a professional to remedy a falsified tax return | 0 2 – 3 0 – 2 3 <br> MM   DD   YY | $ 3 0 0 • 0 0 | Copy of the professional services bill |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |
| | __ __ – __ __ – __ __ <br> MM   DD   YY | $ ____ • __ | |

**FORM OF PAYMENT**

*XXXXXXXXXXXXX*
Unique ID: XXXXXXXXXXXXX

By mailing this form to the Settlement Administrator, you will receive payment for your losses under this Settlement in the form of a check. If you wish to receive an electronic payment, you must submit your Claim Form online at PracticeMaxDataSettlement.com.

### CLASS MEMBER AFFIRMATION

By submitting this Claim Form and signing my name below, I declare that I received notification from PracticeMax, Inc. or the Settlement Administrator that I am a potential Class Member. I declare under penalty of perjury that any losses or expenses identified above were suffered by me on or after May 1, 2021, and that the information I provided is true and accurate to the best of my knowledge.

Signature: [_____]     Date: [ __ | __ ] – [ __ | __ ] – [ __ | __ ]
                                                    MM          DD          YY

**TO BE VALID, THIS CLAIM FORM MUST BE POSTMARKED OR SUBMITTED ONLINE AT PracticeMaxDataSettlement.com NO LATER THAN <<CLAIM DEADLINE>>.**

*XXXXX*                    *CF*
XXXXX                       CF

# **EXHIBIT D**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>PracticeMax, Inc., a Delaware corporation,<br><br>    Defendant. | No.: 2:22-cv-01261-PHX-DLR<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN** |

   This matter comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Motion"). The Court has reviewed the Motion and the Class Action Settlement Agreement and Release ("Agreement") entered into by Plaintiffs and Defendant PracticeMax, Inc. ("Defendant"), and for good cause shown:

   **IT IS ORDERED** granting the Motion.[1]

   **IT IS FURTHER ORDERED** as follows:

---

   [1] Unless otherwise stated, all capitalized terms used in this Order shall have the same meanings as set forth in the Settlement Agreement.

1

2    1.    The Court does hereby preliminarily and conditionally approve, for

3    settlement purposes, the following Class:

4    All persons residing in the United States to whom PracticeMax sent its notice
     of a Data Security Incident that PracticeMax discovered on or about May 1,
     2021. Excluded from the Settlement Class are: (i) PracticeMax, Inc.; (ii) the
5    Related Entities; (iii) all Settlement Class Members who timely and validly
     request exclusion from the Settlement Class; (iv) any judges assigned to this
6    case and their staff and family; and (v) any other Person found by a court of
     competent jurisdiction to be guilty under criminal law of initiating, causing,
7    aiding or abetting the criminal activity occurrence of the Data Security
     Incident or who pleads nolo contendere to any such charge.

8    2.    The Settlement provides that PracticeMax will pay up to $3,000,000.00 for

9    Settlement benefits to the Class, Settlement Administration costs and expenses, Class

10   Counsel's attorneys' fees and expenses, and any Class Representative Service Award. The

11   following Settlement benefits are available to Class Members who submit valid and timely

12   Claim Forms:

13       a.   Compensation for ordinary losses incurred as a result of the Data Security
              Incident, up to a maximum of $500 per person upon submission of a claim
14            and supporting documentation, including $25 per hour for a maximum of up
              to $75 per person for lost time;

15       b.   Compensation for extraordinary losses incurred as a result of the Data
              Security Incident, up to a maximum of $3,500 per person upon submission
16            of actual documented identity theft for proven monetary loss;

17       c.   Credit monitoring services for all Settlement Class Members to enroll in two
              years of single bureau credit monitoring and identity theft protection with $1
18            million in insurance;

19       d.   Defendant will also provide confirmatory discovery regarding remedial
              measures taken as a result of the Data Security Incident and to confirm that
20            it is no longer operating.

21   3.    Based upon information provided: the Class is ascertainable; it numbers

22   approximately 258,00 individuals, satisfying numerosity; there are common questions of

23   law and fact, including whether Defendant's Data Security Incident potentially

     compromised Plaintiffs' and Class Members' Private Information, satisfying commonality;

24

2

the proposed Class Representative's claims are typical, in that they are members of the Class and allege they received notice from Defendant that their Private Information was potentially compromised in Defendant's Data Security Incident, thereby alleging they have been damaged by the same conduct as other Class Members; the proposed Class Representative and Class Counsel will fully, fairly and adequately protect the interests of the Class; questions of law and fact common to members of the Class predominate over questions affecting only individual members for settlement purposes; and a nationwide class for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy.

4.    The Court appoints Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski as the Class Representatives of the Class.

5.    The Court appoints as Class Counsel Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood.

6.    The Court appoints Epiq as Settlement Administrator.

7.    The Court does hereby preliminarily approve the Settlement, including the notices and releases contained therein as being fair, reasonable, and adequate as to the Class Members, subject to further consideration at the Fairness Hearing described below.

8.    A Final Approval Hearing shall be held before the Court on _____, 2024, at _____ am/pm for the following purposes:

    a.    To determine whether the proposed Settlement on the terms and conditions provided for by the Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court;

    b.    To determine whether a Final Approval Order, as defined in the Agreement, should be entered;

    c.    To determine whether the claims process under the Settlement is fair and reasonable, and it should be approved by the Court;

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

d. To determine whether Plaintiffs' application for Attorneys' Fees and Expenses, and requested Service Awards for the Class Representative, should be approved; and

e. To rule upon such other matters as the Court may deem appropriate.

9. Plaintiffs' Motion for Final Approval shall be filed at least thirty (30) days before the Final Approval Hearing.

10. The Court approves, as to the form and content, the Short Form Postcard Notice, Long Form Notice, and Claim Form, and finds that the mailing, distribution, and publishing of the various notices in the form and manner set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled to notice. Defendant shall pay the entirety of the estimated costs of Claims Administration and the costs of providing notice to the Settlement Class within 15 days of this Order.

11. The Complaint was commenced after February 18, 2005. The Court directs Defendant to timely notify, through the Settlement Administrator, the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (to the extent this has not already been done). Counsel for Defendant or the Settlement Administrator shall, at or before the Final Approval Hearing, file with the Court proof of compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

12. The Claim Form submitted by each Class Member must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding subparagraph.

13. As part of the Claim Form, each Class Member shall submit to the jurisdiction of the Court with respect to the claim submitted and shall (subject to effectuation of the Settlement) release all Released Claims as provided in the Agreement.

4

14.     All Class Members shall be bound by all determinations and judgments in the class action concerning the Settlement, including, but not limited to, the releases provided for in the Agreement, whether favorable or unfavorable, except those who timely and validly requested exclusion from the Class and have not opted back in. The persons and entities who timely and validly requested exclusion from the Class will be excluded from the Class and shall not have rights under the Agreement, shall not be entitled to submit any Claim Forms, and shall not be bound by the Agreement or the Final Approval Order as to Defendant in the Class Action.

15.     Pending final determination of whether the Agreement should be approved, Class Counsel, Plaintiffs, and Class Members are barred and enjoined from commencing or prosecuting any action asserting any Released Claims against Defendant.

16.     Any Class Member may enter an appearance, individually or, at their own expense, through counsel of their choice, in which case counsel must file with the Clerk of Court and deliver to Class Counsel and counsel for Defendant a notice of such appearance no later than sixty (60) days after the Notice Deadline. If they do not enter an appearance, they will be represented by Class Counsel.

17.     Any Class Member may appear and show cause, if that Class Member has any reason why the proposed Settlement should not be approved as fair, reasonable, and adequate, or why Class Counsel's application for an award of attorneys' fees and for reimbursement of expenses should not be granted; provided, however, that no person shall be heard or entitled to contest such matters unless that person has delivered by hand or sent by first class mail sufficient written objections and copies of all papers and briefs any such person wishes to submit in support of any such objection delivered or post-marked no later than sixty (60) days following the Notice Deadline to Settlement Class Counsel and PracticeMax Counsel at the address set forth in the Notice.

18.     Objections may also be filed using the Court's ECF filing system, so long as such objections are filed within sixty (60) days of the Notice Deadline.

19.     Any written objection shall include: (i) the objector's full name and address; (ii) the case name and docket number, *Hogsed, et al. v. PracticeMax, Inc.*, Case No. 2:22-cv-01261-PHX-DLR (D. Ariz.); (iii) a written statement of all grounds for the objection; and (iv) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

20.     Any person who does not make an objection in the manner provided in this Order shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as set forth in the Agreement, unless otherwise ordered by the Court.

21.     Class Members may also exclude themselves from this action by mailing a written notice of such intent to the designated Post Office box established by the Settlement Administrator (which shall be identified in the settlement notices). To be effective, the written notice must be timely, signed, and clearly manifest the Person's intent to opt-out of the Class. Such notices of a Class Member's intent to opt-out of the settlement must be postmarked no later than sixty (60) days after the Notice Deadline.

22.     This Order, the Agreement, and the Settlement, and any of their terms, and all negotiations, discussions, and proceedings in connection with this Order, the Agreement, and the Settlement, shall not constitute evidence, or an admission by Defendant that any acts of wrongdoing have been committed and shall not be deemed to create any inference that there is any liability on the part of Defendant. This Order, the Agreement, and the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order, the Agreement and the Settlement shall not be offered or received in evidence or used for any purpose in this or any other proceeding in

any court, administrative agency, arbitration tribunal, or other forum of any kind of character in the United States or any other country except as necessary to enforce the terms of this Order or the Settlement.

23.    In addition to the deadlines imposed above, the Settlement Administrator and Parties shall abide by the following timeline:

| **From Date this Order is Entered** | |
| --- | --- |
| Defendant provides list of Class Members to the Settlement Administrator | +10 days |
| Long and Short Notices Posted on the Settlement Website | +30 days |
| Defendant pays cost of Notice Program and Claims Administration from the Settlement Fund | +15 days |
| Notice Deadline | +30 days |
| Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Award | +76 days |
| Objection & Exclusion Date | +90 days |
| Claims Deadline | +120 |
| Settlement Administrator Provide List of Objections/Opt-Outs to the Parties' counsel | +104 days |

24.    The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Class Members and retains jurisdiction to consider all further applications or matters arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Plaintiffs and Defendant, if appropriate, without further notice to the Class.

# **EXHIBIT E**

1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8  | Robert Hogsed, Justin Knox, Flor Medina, | No.: 2:22-cv-01261-PHX-DLR
9  | Brenda Allen, and Katherine Witkowski, on behalf of themselves and all others |
10 | similarly situated, |

11 |                          Plaintiffs, | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
12 |                  v. |

13 | PracticeMax, Inc., a Delaware corporation, |

14 |

15 |                          Defendant. |

16

17

18      This matter comes before the Court on Plaintiffs' Unopposed Motion for Final

19  Approval of Class Action Settlement [Doc. ___] and Plaintiffs' Unopposed Motion for

Attorneys' Fees and Litigation Expenses and Plaintiffs' Service Awards [Doc. _____]

20  (collectively, the "Motions"). The Court has reviewed the Motions, and the Settlement

21  Agreement and Release [Doc. __] ("Settlement Agreement") entered into between

22  Plaintiffs Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine

23  Witkowski, ("Plaintiffs") and Defendant PracticeMax, Inc., ("PracticeMax" or

"Defendant"), and for good cause shown:

24

**IT IS ORDERED** granting the Motions.

**IT IS FURTHER ORDERED** as follows:

1.    The Court, for purposes of this Final Judgment, adopts the defined terms as set forth in the Settlement Agreement for any term not otherwise defined herein.

2.    The Court finds that the Settlement Agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length, and without collusion.  The Court approves and directs consummation of the Settlement Agreement.

3.    The Court approves the Release provided in Section 13 of the Settlement Agreement and orders that, as of the Effective Date, the Released Claims will be released as to Released Parties.

4.    The Court has and reserves jurisdiction over the Settlement and this Settlement Agreement, and for purposes of the Settlement and Settlement Agreement, the Court has and reserves jurisdiction over the Parties to the Settlement.

5.    The Court finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

6.    The Court dismisses with prejudice all claims of the Class against PracticeMax in the Litigation, without costs and fees except as explicitly provided for in the Settlement Agreement.

7.    The Court grants Plaintiffs' Unopposed Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Service Awards [Doc. _____]. The Court awards Class Counsel $825,000 in attorneys' fees and reimbursement of litigation expenses, to be paid according to the terms of the Settlement Agreement. This amount of fees and reimbursement of expenses is fair and reasonable. The Court awards each Plaintiff a service award of $2,500, for a total of $12,500.

8.     On _____, the Court entered an Order Granting Preliminary Approval of Class Action Settlement [Doc. ____] ("Preliminary Approval Order") that preliminarily approved the Settlement Agreement and established a hearing date to consider the final approval of the Settlement Agreement and Class Counsel's Motion for Attorneys' Fees and Litigation Expenses.

9.     The Court's Preliminary Approval Order approved the Short Form Settlement Notice, Long Form Notice, Claim Form, and found the mailing, distribution, and publishing of the various notices as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and was the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice.

10.    The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that Notice to Class Members complied with Fed. R. Civ. P. 23 and due process.

11.    The Court finds PracticeMax has complied with the requirements of 28 U.S.C. §1715 regarding the CAFA Notice.

12.    The Court grants final approval to its appointment of Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski as the Class Representatives of the Class. The Court finds for settlement purposes that the Class Representatives are similarly situated to absent Class Members, are typical of the Class, and are adequate Class Representatives, and that Class Counsel and the Class Representatives have fairly and adequately represented the Class.

13.    The Court grants final approval to its appointment of Class Counsel as provided in the Preliminary Approval Order, appointing Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood.

14.    The Court certifies the following Class for settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3), subject to the Class exclusions set forth in the Settlement Agreement:

**All persons residing in the United States to whom PracticeMax sent its notice of a Data Security Incident that PracticeMax discovered on or about May 1, 2021. Excluded from the Settlement Class are: (i) PracticeMax, Inc.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads nolo contendere to any such charge.[1]**

15.    The Court finds that the Class defined above satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes in that: (a) the Class of approximately 258,000 individuals is so numerous that joinder of all Class Members would be impracticable; (b) there are issues of law and fact that are common to the Class; (c) the claims of the Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members; (d) the Class Representatives and Class Counsel have fairly and adequately protected the interests of the Class, as the Class Representatives has no interests antagonistic to or in conflict with the Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Class; (e) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement are superior to other methods available for a fair and efficient resolution of this controversy.

16.    The Court, having considered the negotiation of, the terms of, and all of the materials submitted concerning the Settlement Agreement; having considered Plaintiffs'

---

[1] "Data Security Incident" shall mean the 2021 cybersecurity incident against PracticeMax giving rise to the action.

4

and the Class's likelihood of success both of maintaining this action as a class action and of prevailing on the claims at trial, including the possibility that PracticeMax could prevail on one or more of its defenses; having considered the range of the Plaintiffs' possible recovery (and that of the Class) and the complexity, expense, and duration of the Litigation; and having considered the substance and amount of opposition to the proposed settlement, it is hereby determined that:

a.   Plaintiffs and Class Counsel have adequately represented the proposed Class;

b.   the terms of the Settlement Agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiffs and PracticeMax;

c.   the outcome of the Litigation was in doubt when the Settlement was reached making the compromise under this Settlement reasonable under the circumstances;

d.   it is possible the proposed Class could receive more if the Litigation were to go to trial, but it is also possible that the proposed Class could receive less (including the possibility of receiving nothing) and/or that PracticeMax could defeat class certification;

e.   the value of immediate recovery outweighs the possibility of future relief that would likely occur, if at all, only after further protracted litigation and appeals;

f.   the Parties have in good faith determined the Settlement Agreement is in their respective best interests, including both Plaintiff and Class Counsel determining that it is in the best interest of the Class Members;

5

g.  the aggregate consideration for the Class—including the Settlement Fund, which PracticeMax shall cause to be funded—is commensurate with the claims asserted and being released as part of the Settlement; and,

h.  the terms of the Settlement Agreement treat the Class Members equitably relative to each other and fall within the range of settlement terms that would be considered a fair, reasonable, and adequate resolution of the Litigation.

Therefore, pursuant to Rule 23(e), the terms of the Settlement Agreement are finally approved as fair, reasonable, and adequate as to, and in the best interest of, the Class and each of the Class Members. Class Members who did not opt-out of the Settlement are bound by this Final Approval Order.  The Settlement Agreement and its terms shall have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings as to Released Claims and waivers applicable thereto.

17.  The Court approves the distribution and allocation of the Settlement Fund under the Settlement Agreement pursuant to the terms of the Settlement Agreement.

18.  This Final Approval Order, and all statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against PracticeMax of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of PracticeMax or of the validity or certifiability for this Litigation or other litigation of any claims or class that have been, or could have been, asserted in the Litigation.

19.  This Final Approval Order, and all statements, documents or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing by PracticeMax, or that Plaintiffs, any Class

Member, or any other person has suffered any damage due to the Data Incident. Notwithstanding the above, the Settlement Agreement and this Final Approval Order may be filed in any action by PracticeMax, Class Counsel, or Class Members seeking to enforce the Settlement Agreement or the Final Approval Order.

20.    The Settlement Agreement and Final Approval Order shall not be construed or admissible as an admission by PracticeMax that Plaintiffs' claims or any similar claims are suitable for class treatment.

# EXHIBIT 2

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Attorneys for Plaintiff*

| | |
|---|---|
| ROBERT HOGSED, JUSTIN KNOX, FLOR MEDINA, BRENDA ALLEN, AND KATHERINE WITKOWSKI,<br>on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>PRACTICEMAX, INC., A DELAWARE CORPORATION,<br><br>          Defendant. | Civil Action No.: 2:22-cv-01261-PHX-DLR |

### DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Gary M. Klinger, being competent to testify, make the following declaration:

1.     I am currently a partner of the law firm of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). I am one the lead attorneys for Plaintiffs and seek appointment as Class Counsel for the proposed Settlement Class. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so. A true and

correct copy of the Settlement Agreement ("Agreement" or "Agr.") is attached to the Memorandum in Support of the motion as **Exhibit 1**.

1.      I have extensive experience prosecuting complex class actions, especially in data breach litigation. I have been licensed to practice law in the State of Illinois since 2010, is a member of the bars of numerous federal district and appellate courts, and has decades of litigation and class action experience.

2.      I have extensive experience in class action litigation generally and data breach class actions in particular. My experience, and that of my law firm, is described below.

3.      Milberg Attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on hundreds of complicated and complex class actions. *See* Milberg Firm Resume, **Exhibit A.**

4.      These cases recently include cutting-edge litigation, including: *In re Dealer Management Systems Antitrust Litigation*, Case No. 1:18-cv-00864 (N.D. Ill. 2018) (appointed co- lead counsel; partial settlement of $29.5 million, case on-going); *In re Seresto Flea and Tick Collar Marketing, Sales Practices, and Products Liability Litigation*, Case No. 1:21-cv-04447 (N.D. Ill. 2021) (appointed co-lead counsel; case on-going); and *Carder v. Graco Children's Products, Inc. et al.*, Case No. 2:20-cv-00137 (N.D. Ga. 2020) (appointed interim co-lead counsel; case on-going)

5.      With respect to privacy cases, Milberg is presently litigating more than fifty (50) cases across the country involving violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., privacy violations, data breaches, and ransomware attacks. Milberg Attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on data breach and privacy litigations, including *In re Blackbaud, Inc. Consumer Data Security Breach Litigation*, MDL 2972, Case No. 3:20-mn-02972 (D.S.C. 2020) (appointed co-lead counsel; case on-going).

6.     Milberg Attorneys have also participated in other data breach and privacy litigation, recently, which includes: *Veiga, et al. v. Respondus, Inc.*, Case No., 1:21-cv-02620 (N.D. Ill. 2021); *Dickerson v. CDPQ Colonial Partners, L.P., et. al,* Case No. 1:21-cv-02098 (N.D. Ga. 2021); *In re Wawa, Inc. Data Security Litigation,* 2:19-cv-06019 (E.D. Pa. 2019); *Whalen v. Facebook, Inc.*, Case No.4:20-cv-06361 (N.D. Cal. 2020); and *K.F.C. v. Snap, Inc.,* No. 21-2247 (7th Cir. 2021).

7.     It is noteworthy that in the past 3 years (since March 2020 through the present), I (either individually, or as a member of the law firms in which I have been a partner during that timeframe) have been appointed class counsel in a number of data breach and/or data privacy cases, including, but not limited to, the following:

a.     *Kenney et al. v. Centerstone of America, Inc.*, Case No. 3:20-cv-01007 (M.D. Tenn.) (appointed co-class counsel in data breach class action settlement involving over 63,000 class members; final approval granted Aug. 2021);

b.     *Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D.N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

c.     *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

d.     *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

e.     *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class

counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

f.   *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2- 00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

g.   *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington) (appointed class counsel in data breach case, final approval granted September 2021);

h.   *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

i.   *In re: GE/CBPS Data Breach Litigation*, 1:2020-cv-02903, Doc. 35 (S.D.N.Y.) (appointed co-lead counsel in nationwide class action);

j.   *Nelson, et al. v. Idaho Central Credit Union*, No. CV03-20-00831 (Bannock County, Idaho) (appointed co-lead counsel in data breach class action involving 17,000 class members; granted final approval of settlement valued at $3.3 million);

k.   *In Re: Canon U.S.A. Data Breach Litigation*, Master File No. 1:20-cv-06239- AMD-SJB (E.D.N.Y.) (appointed co-lead counsel);

l.   *Suren et al. v. DSV Solutions, LLC*, Case No. 2021CH000037 (Circuit Court for the Eighteenth Judicial Circuit of DuPage County, Illinois) (appointed Settlement Class Counsel, final approval granted Sept. 27, 2021);

m.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted Sept. 2021);

n.  *Aguallo et al v. Kemper Corporation et al.,* Case No. 1:21-cv-01883 (N.D. Ill.) (appointed Co-lead Counsel, final approval granted of $17.1 million class settlement);

o.  *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP- DLP (S.D. Ind.) (appointed co-lead counsel in data breach involving over 1 million persons; preliminary approval of $4.35 million settlement granted Jan. 2022);

p.  *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (appointed co- lead counsel in data breach case involving over 2.4 million class members; preliminary approval of $4.75 million settlement granted Feb. 2022);

q.  *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (appointed co- lead counsel in data breach case involving over 3 million class members);

r.  *Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) ($11 million settlement for a major data breach involving more than 4 million consumers);

s.  *Hough v. Navistar, Inc.*, Case No.: 2021L001161 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.); (appointed co-lead class counsel; final approval granted May 2022);

t.  *Clark v. Mercy Hospital, et al*, Case No. CVCV082275 (Iowa Dist. Crt, Johnson Cnty.) (appointed class counsel; final approval granted July 2022);

u.    *Myschka, et al v. Wolfe Clinic, P.C. d/b/a Wolfe Eye Clinic*, (Iowa Dist. Crt., Marshall Cnty.) (appointed class counsel; final approval granted June 2022);

v.    *Devine, et al v. Health Aid of Ohio, Inc.,* (Ohio Court of Common Pleas, Cuyahoga Cnty.) (appointed class counsel; final approval granted September 2022);

w.    *Davidson v. Healthgrades Operating Company, Inc.,* Case No. 1:21-cv-01250- RBJ (D. Colo.), (appointed class counsel; final approval granted August 2022);

x.    *Bodie v. Capitol Wholesale Meats, Inc.*, Case No. 2022CH000020 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.) (appointed class counsel; final approval granted March 2022);

y.    *Culp v. Bella Elevator LLC*, Case No. 2021-CH-00014 (Ill. 10th Jud. Cir. Crt., Peoria Cnty.) (appointed class counsel; final approval granted May 2022);

z.    *Cain, et al. v. OSF Healthcare*, Case No. 21-L-00231 (Circuit Court for the Tenth Judicial Circuit of Peoria County, Illinois) (appointed settlement class counsel; final approval granted January 2023);

aa.    *Nelson, et al. v. Bansley & Kiener*, Case No. 2021-CH-06274 (Ill. Cir. Ct., Cook Cnt'y) (appointed class counsel; final approval granted November 2022);

bb.    *Steen v. The New London Hospital Association, Inc.,* Civil Action No. 217-2021- CV-00281 (Merrimack Superior Court, New Hampshire) (appointed class counsel; final approval granted January 2023);

cc. *Summers II v. Sea Mar Community Health Ctrs.*, Case No. 22-2-00773-7 SEA (Wash. Sup. Ct., King Co.) (appointed class counsel; final approval granted December 2022);

dd. *In re Forefront Data Breach Litigation*, Master File No. 1:21-cv-00887-LA (E.D. Wisc.) (appointed settlement class counsel; final approval granted March 2023);

ee. *Engle v. Talbert House*, Case No.: A2103650 (Court of Common Pleas, Hamilton County, Ohio) (appointed class counsel; final approval granted February 2023);

ff. *Henderson et al. v. San Juan Regional Medical Center*, Case No. D-1116-CV- 2021-01043 (11th Jud. Dist. Ct., County of San Juan, NM) (appointed class counsel; final approval granted March 2023);

hh. *Cathy Shedd v. Sturdy Memorial Hospital, Inc.*, Civ. Action No: 2173 CV 00498 (Mass. Sup. Ct. Dept.) (appointed class counsel; final approval granted February 2023);

ii. *Hawkins et al. v. Startek, Inc.*, Case No. 1:22-cv-00258-RMR-NRN (USDC CO)(appointed class counsel; final approval granted April, 2023);

jj. *McHenry v. Advent Health Partners, Inc.*, Case No. 3:22-cv-00287 (USDC MD TN) (appointed settlement class counsel; final approval granted April 2023);

kk. *Beasley et al. v. TTEC Services Corporation*, Civil Action No. 22-cv-00097-PAB-STV (USDC CO) (appointed class counsel; preliminary approval granted May 2023);

ll. *Boyd v. Public Employees Credit Union*, Case No. 1:22-cv-00825-LY (USDC WD TX)(appointed class counsel; final approval granted June 2023);

mm.   *Charlie et al. v. Rehoboth McKinley Christian Healthcare Services*, Civil No 21-652 SCY/KK (USDC NM)(appointed class counsel; final approval granted July 2023);

nn.   *Sharma et al. v. Accutech Systems Corporation*, Case No. 18C02-2210-CT-000135 (Delaware Circuit Court 2, Delaware County, Indiana) (appointed Class Counsel; preliminary approval granted January 2023);

oo.   *Simmons et al. v. Assistcare Home Health Services, LLC*, Index No. 511490/2021 (Supreme Court of the State of New York, County of Kings)(appointed settlement class counsel; final approval granted August 2023);

pp.   *Bailey et al. v. Alacrity Solutions Group, LLC,* Cause No. 29D03-2204-PL-002383 (Hamilton County (Indiana) Superior Court)(appointed class counsel; final approval granted June 2023);

qq.   *Retsky et al. v. Super Care, Inc d/b/a/ Supercare Health*, Case No. 22STCV16267 (Los Angeles County California Superior Court)(appointed class counsel; final approval granted August 2023);

rr.   *In re Medical Review Institute of America, LLC, Data Breach Litigation*, Civil No. 2:22cv0082-DAK-DAO (USDC UT)(appointed co-lead class counsel; final approval granted August 2023);

ss.   *Colon v. Creative Ventures Inc.*, Case Number 2023LA000177 (In the Circuit Court of the Eighteenth Judicial Circuit, Dupage County, Illinois)(appointed settlement class counsel; final approval granted September 2023);

tt.   *Jones v. Horizon House, Inc*., Case No. 01767, Control No. 23030116 (Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania)(appointed class counsel; preliminary approval granted April 2023);

uu.    *Keefe, et al v. Froedtert Health, Inc.*, Case No. 2023CV001935 (Circuit Court of Wisc., Milwaukee Cty.) (appointed settlement class counsel; final approval granted September 29, 2023).

8.    I have been appointed by state and federal courts to act as Class Counsel for millions of consumers and recovered hundreds of millions of dollars for consumers throughout the country. Presently, I am lead or co-lead counsel in more than thirty (30) active class action lawsuits pending in state and federal courts across the country.

9.    Some of my notable successes include obtaining final approval of a class-wide settlement for a major data breach class action involving more than six million consumers. See *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where I, as appointed co-lead counsel, obtained final approval of a $17.6 million dollar settlement to resolve similar data breach class action claims against Kemper Corporation in a case involving more than six million class members)

10.    I serve as one of two Court-appointed Lead Counsel in the data breach case, *In re Canon U.S.A. Data Breach Litigation,* No. 1:20-cv-06239-AMD-SJB (S.D.N.Y. filed Dec. 23, 2020).

11.    I was also appointed Co-Lead Counsel in the data breach case, *In re: Herff Jones Data Breach Litigation,* Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involved more than one million class members and was finally approved on a class-wide basis for a $4.35 million settlement.

12.    I served as co-lead counsel in the consolidated data breach litigation styled, *In Re: CaptureRx Data Breach Litigation,* No. 5:21-cv-00523-OLG (W.D. Tex.), which involved more than 2.4 million class members and was finally approved on a class-wide basis for a $4.75 million settlement.

13.     I was appointed co-lead counsel to represent more than three million class members in another major data breach class action in the Seventh Circuit. See *In re Arthur J. Gallagher Data Breach Litig.*, No. 1:21-cv-04056 (N.D. Ill.).

14.     I successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc.,* No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), where I certified, over objection, a nationwide privacy class action involving more than one million class members.

15.     In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended me for having achieved "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by me (and my co-counsel).

16.     In addition to concentrating my practice on class action litigation involving consumer, privacy, and product liability matters, I also make substantial efforts to stay apprised of the current law on these issues. In recent years, I have attended various legal training seminars and conferences, such as the dri™ conference for Class Actions, The Consumer Rights Litigation Conference and Class Action Symposium, as well as attended various seminars offered by Strafford on class action issues.

17.     I am also a member of the International Association of Privacy Professionals and a Certified Information Privacy Professional (CIPP/US).

18.     I graduated from the University of Illinois at Urbana-Champaign in 2007 (B.A. Economics), and from the University of Illinois College of Law in 2010 (J.D., cum laude). While at the U of I College of Law, I was a member of, and ultimately appointed as the Executive Editor for the Illinois Business Law Journal. My published work includes: *The U.S. Financial Crisis: Is Legislative Action the Right Approach?,* Ill. Bus. L. J. (Mar. 2, 2009).

19.     I am presently pursuing a Master of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

20.     I became licensed to practice law in the State of Illinois in 2010 and am a member of the Trial Bar for the Northern District of Illinois, as well as the U.S. Bankruptcy Court for the Northern District of Illinois. Additionally, I am admitted to practice in federal courts across the country, including, but not limited to, the U.S. District Courts for the District of Colorado, the Central District of Illinois, the Northern District of Illinois, Northern District of Indiana, Southern District of Indiana, Eastern District of Michigan, and the Eastern District of Texas.

21.     In addition to my personal qualifications, I bring the support and resources of Milberg to this case on behalf of the putative class. Milberg pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing, repeatedly taking the lead in landmark cases that have set groundbreaking legal precedents, prompting changes in corporate governance, and recovering over $50 billion in verdicts and settlements. A brief firm biography is attached to this declaration as **Exhibit A**.

22.     Milberg is and has been one of the nation's most prominent class action law firms since its founding in 1965. Milberg continues to break new ground in cybersecurity and data privacy cases, including taking a co-lead counsel role in the high-profile *In re: Blaukbaud, Inc. Customer Data Security Breach Litigation* (MDL 2972) that has established pleading standards and Art. III standing guidelines for data breach cases. Milberg has and is litigating multiple class actions against other companies within the same industry as Creative Services.

23.     My experience and Milberg's data breach experience compare favorably with that of any law firm in the country. The firm has ample resources (both financial and personnel, with over 100+ attorneys at the firm) to fully and adequately represent the interests of the proposed class here.

24.     I am, and my firm is, fully aware of the financial and human resources that will be required to bring this case to a successful conclusion and the Court should have no reservations that my firm has and is willing to commit those resources for the benefit of the Plaintiff's class. I personally have never used third-party funding on any data breach case, nor failed to meet my assessment obligations in any case. Neither I nor Milberg intends to use any third-party litigation funding for this case.

25.     Plaintiffs request that the Court appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, John A. Yanchunis of Morgan & Morgan, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and William Federman of Federman & Sherwood as Settlement Class Counsel (collectively, "Class Counsel"). The Firm resumes of Class Counsel are attached to this declaration as **Exhibit A**.

26.     Class Counsel have invested considerable time and resources into the investigation of the facts underlying the claims and the prosecution of this action. Plaintiffs vigorously and aggressively gathered all of the information that was available regarding PracticeMax and the Data Incident—including publicly-available documents concerning the Data Incident and notice sent to Settlement Class Members regarding the same.

27.     Since the outset of this litigation, the firms have cooperatively and effectively collaborated to prosecute, and ultimately resolve, this case on behalf of our client and the Class. They have performed work critical to achieving benefits for the Class, including by investigating the facts surrounding the Data Incident, researching and analyzing legal claims under state and federal law and common law, preparing and filing the Complaint and subsequent Consolidated and Amended Complaints, substantial motion and discovery practice, participating in meetings with defense counsel to discuss the parties' respective positions, preparing for and participating in a formal mediation, negotiating the proposed Settlement, and drafting this motion for preliminary approval.

28.     As noted above, and as reflected in the respective firm resumes filed herewith, Class Counsel are qualified, experienced, and able prosecute this litigation. Class Counsel have a wealth of experience in litigating complex class action lawsuits similar to this one and have extensive knowledge of the applicable law and sufficient resources to commit to the Settlement Class. Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area.

29.     Throughout the pendency of this case, I and my co-counsel have maintained regular contact with Plaintiffs to discuss with them the prosecution of the case. With the assistance of counsel, Plaintiffs have been at the helm of this case and continue to be focused on the advancement of the interests and claims of the Class over their own interests. Plaintiffs have always been concerned about obtaining a result that was best for the Class. Plaintiffs have been personally involved in the case and support the Settlement. Plaintiffs are adequate class representatives with no conflicts of interest.

30.     After investigating the facts and carefully considering applicable law, Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to enter into the Settlement in order to avoid the uncertainties of litigation and to assure meaningful and timely benefits to the Settlement Class Members. I, along with Plaintiffs and other Class Counsel, respectfully submit that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of all Settlement Class Members.

31.     Throughout the settlement process, my co-counsel and I carefully weighed with the Plaintiffs: (1) the benefits to the Class under the terms of this Settlement Agreement, which provides significant relief to the Class; (2) the quantum of damages which might have been sustained by individual Settlement Class Members, the likelihood

that in the absence of a class action consumers would not pursue individual claims, particularly due to the high cost and expense, including the cost of cyber and damage experts to litigate these claims if pursued in individual litigation, and the fact that the quantum of damages would not justify the retention of an attorney, either on an hourly or contingent basis, to pursue the claims individually; (3) the difficulty in proving and calculating those damages; (4) the attendant risks and uncertainty of litigation, as well as the difficulties and delays inherent in such litigation including the challenges to certification of a class; (5) Defendant's vigorous defense of the litigation and continued denial of the claims contained in the Complaint; (6) the desirability of consummating the present Settlement Agreement to ensure that the Class receives a fair and reasonable Settlement; and (7) providing Settlement Class Members prompt relief.

32.    In particular, it is my opinion that the Settlement Agreement provides significant benefits to Settlement Class Members.

33.    The relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay of trial and associated appeals.

34.    Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims involved in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement.

35.    This settlement was negotiated at arms'-length between highly competent counsel for both the Plaintiffs and Defendant. The Parties participated in a formal mediation with a well-regarded private mediator (Bruce Friedman, of JAMS) which is evidence that the negotiations were at arms'-length and non-collusive. This settlement was only achieved after months of hotly contested negotiations.

36.    The Parties have agreed upon Epiq a nationally recognized and well-regarded class action settlement administrator, to serve as Settlement Administrator, subject to the Court's approval.

37.    Given my extensive experience with class action settlements, it is my informed opinion that the Notice Program, with all attendant forms and as outlined in the Settlement, makes every effort to ensure that Class Members will be made aware of their right to a recovery under the Settlement.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

Executed this 20th day of October, 2023, at Chicago, Illinois

*/s/ Gary M. Klinger*
Gary M. Klinger

# <u>EXHIBIT A</u>



FIRM RESUME

# WHO WE ARE

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations - wherever they operate.

**www.milberg.com**

# PRACTICE AREAS

### ANTITRUST & COMPETITION LAW

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

### COMPLEX LITIGATION

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for businesses and plaintiffs outside of the class action context, including business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property.

### CONSUMER PRODUCTS

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims and unfair trade practices cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

### CONSUMER SERVICES

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy.
We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

## CLASS ACTION LAWSUITS

Milberg pioneered federal class action litigation, and is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements of up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

## DANGEROUS DRUGS & DEVICES

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most poweful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

## DATA BREACH, CYBERSECURITY & BIOMETRIC DATA LAWSUITS

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cybersecurity threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

## ENVIRONMENTAL & TOXIC TORTS LITIGATION

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

## FINANCE & INSURANCE LITIGATION

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

## PUBLIC CLIENT REPRESENTATION

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

## SECURITIES LITIGATION

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

## WHISTLEBLOWER & QUI TAM

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients. Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring impressive victories against companies guilty of outrageous behavior."*

- FORBES

*"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
- NEW YORK TIMES

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)
In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973
In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation
In re: Blackbaud Data Privacy MDL No. 2972
In re: Paragard IUD Products Liability Litigation MDL No. 2974
In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation MDL No. 3009
In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation
In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

In re: Zicam
In re: Guidant Corp. Implantable Defibrillators
In re: Ortho Evra
In re: Yaz
In re: Kugel Mesh
In re: Medtronic Sprint Fidelis Leads
In re: Stand 'N Seal
In re: Chantix
In re: Fosamax
In re: Olmesartan (Benicar)
In re: Onglyza (Saxagliptin) And Kombiglyze XR
In re: Risperdal and Invega Product Liability Cases

In re: Mirena
In re: Incretin
In re: Reglan
In re: Levaquin Litigation
In re: Zimmer Nexgen Knee
In re: Fresenius Granuflo
In re: Propecia
In re: Transvaginal Mesh
In re: Fluoroquinolones
In re: Depuy Pinnacle
In re: Recalled Abbott Baby Formula

# NOTABLE RECOVERIES

$3.2 Billion Settlement - In re: Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

$4 Billion Settlement - In re: Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

$1.14 Billion Settlement - In Re: Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

$1 Billion-plus Trial Verdict - Vivendi Universal, S.A. Securities Litigation

$1 Billion Settlement - NASDAQ Market-Makers Antitrust Litigation

$1 Billion Settlement - W.R. Grace & Co.

$1 Billion-plus Settlement - Merck & Co., Inc. Securities Litigation

$775 Million Settlement - Washington Public Power Supply System Securities Litigation

# LOCATIONS

**CALIFORNIA**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

**FLORIDA**
2701 South Le Jeune Road
Coral Gables, Florida 33134

**ILLINOIS**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

**KENTUCKY**
19 North Main Street
Madisonville, Kentucky 42431

**LOUISIANA**
5301 Canal Boulevard
New Orleans, Louisiana 70124

**MICHIGAN**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

**NEW JERSEY**
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza,
Garden City
New York 11530

405 E 50th Street
New York 10022

**NORTH CAROLINA**
900 West Morgan Street
Raleigh, North Carolina 27603

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**WASHINGTON**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

**WASHINGTON, D.C.**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052

**NETHERLANDS**

**GERMANY**

**PORTUGAL**

**UNITED KINGDOM**



www.milberg.com

# Turke & Strauss LLP

613 Williamson Street, Suite 201
Madison, Wisconsin 53703
P: 608.237.1775
F: 608.237.4423
www.turkestrauss.com

# Our Firm

Turke & Strauss is a law firm based in Madison, Wisconsin that focuses on complex civil and commercial litigation with an emphasis on consumer protection, data privacy, data breach, employment, wage and hour, business, and real estate matters. The attorneys of Turke & Strauss have extensive experience in complex litigation, including class actions. The attorneys of Turke & Strauss have prosecuted a variety of multi-million-dollar consumer fraud, product defect, privacy, and antitrust class actions and served as class counsel in cases at the federal level. The defendants in these cases have included companies such as Wells Fargo Bank, N.A., LG Electronics U.S.A., Inc., The Clorox Company, Best Buy, Monsanto Company, Kimpton Hotel & Restaurant Group, LLC, Stearns Lending, LLC, Fiat Chrysler Automobiles, and American Power & Gas.

# Our Cases

## CONSUMER PROTECTION

### *Fowler, et al. v. Wells Fargo Bank, N.A.* (N.D. Cal.)

Filed on behalf of consumers who were overcharged fees on FHA mortgages. The case settled on a class-wide basis for $30,000,000 in 2018, and final approval was granted in January 2019.

### *Jones, et al. v. Monsanto Company* (W.D. Mo.)

Filed on behalf of individuals who purchased mislabeled RoundUp® products. The case settled on a class-wide basis in 2020 for $39,550,000. Final approval was granted in May 2021 and the case is currently on appeal to the United States Court of Appeals for the Eight Circuit.

### *Crawford, et al. v. FCA US LLC* (E.D. Mich.)

Filed on behalf of consumers who purchased or leased Dodge Ram 1500 and 1500 Classic vehicles equipped with 3.0L EcoDiesel engines between 2013 and 2019. Plaintiffs allege unfair, deceptive, and fraudulent practices in the Defendants' marketing and sale of vehicles with allegedly defective EGR coolers. This case is currently pending in the United States District Court for the Eastern District of Michigan.

### *In re: Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation* (N.D. Cal.)

Filed on behalf of consumers against Fiat Chrysler and Bosch alleging unfair, deceptive, and fraudulent practices in the Defendants' marketing and sale of certain EcoDiesel vehicles. The class contained over 100,000 vehicles, including 2014-2016 model-year Jeep Grand Cherokees and Dodge Ram 1500 trucks that were allegedly outfitted with devices that masked actual emission levels. The case settled on a class-wide basis for $307,500,000, and final approval was granted in May 2019.

### *Rolland, et al. v. Spark Energy, LLC* (D.N.J.)

Filed on behalf of consumers who were forced to pay considerably more for their electricity than they should otherwise have paid due to Spark Energy's deceptive pricing practices. Plaintiff alleges that Spark Energy engages in a bait-and-switch deceptive marketing scheme luring consumers to switch utility companies by offering lower than local utility rates. These lower rates are fixed for only a limited number of months and then switch to a variable market rate that is significantly

higher than the rates local utilities charge. The case settled on a class-wide basis for $11,000,000 in 2022, and final approval was granted in December 2022.

### *Haines v. Washington Trust Bank* (Wash. Sup. Ct., King Cty.)
Turke & Strauss represents consumers who were charged $35 overdraft fees by Washington Trust Bank on accounts that were never actually overdrawn. Plaintiff filed suit against Washington Trust Bank for the unfair and unlawful assessment of these overdraft fees. This case settled on a class-wide basis in 2021, and is final approval was granted in November 2021.

### *Pryor v. Eastern Bank* (Mass. Sup. Ct., Suffolk Cty.)
Turke & Strauss represents consumers who were charged $35 overdraft fees by Eastern Bank on accounts that were never actually overdrawn. Plaintiff filed suit against Eastern Bank for the unfair and unlawful assessment of these overdraft fees. This case settled on a class-wide basis in 2021, and final approval was granted in March 2021.

### *Benanav, et al. v. Healthy Paws Pet Insurance LLC* (W.D. Wash.)
Turke & Strauss represents consumers who were deceived by Healthy Paws Pet Insurance, an insurance provider that markets and administers pet insurance policies, regarding the true cost of its pet insurance policies. Plaintiffs allege that purchasers of Healthy Paws Pet Insurance's policies found that their policy premiums increased drastically from year to year, at a rate far outpacing the general costs of veterinary medicine, despite Healthy Paws Pet Insurance's representations to the contrary. This case is currently pending in the United States District Court for the Western District of Washington.

## DATA BREACH

### *Walters v. Kimpton Hotel & Restaurant Group, LLP* (N.D. Cal.)
Filed on behalf of consumers whose private information and personal identifiable information, including credit and debit card numbers, names, mailing addresses, and other personal information, was compromised and stolen from Kimpton Hotel & Restaurant Group by hackers. The case settled on a class-wide basis in 2018, and final approval was granted in July 2019.

### *Reetz v. Advocate Aurora Health, Inc.* (Wis. Cir. Ct., Milwaukee Cty.)
Filed on behalf of employees of Aurora Advocate Health, the 10th largest not-for-profit integrated health care system in the United States, whose personally identifiable information was breached and stolen through an email phishing campaign beginning in January 2020. Many of these individuals have lost time

and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case is currently pending in the Circuit Court of Wisconsin for the County of Milwaukee.

*Goetz v. Benefit Recovery Specialists, Inc.* **(Wis. Cir. Ct., Walworth Cty.)**
Turke & Strauss represented a class of consumers whose personal health information was compromised and stolen from Benefit Recovery Specialists, Inc., a Houston-based billing and collections services firm that provides billing and collection services to healthcare providers across the country. Many of these consumers have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case settled on a class-wide basis in 2022 and final approval was granted in July 2022.

*In re BJC Healthcare Data Breach Litigation* **(Mo. Cir. Ct., St. Louis Cty.)**
Turke & Strauss represented a class of consumers whose personal health information was compromised and stolen from BJC Healthcare, a major regional health system. Many of these consumers lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case settled on a class-wide basis in 2021 and final approval was granted in September 2022.

*Daum, et al. v. K & B Surgical Center, LLC* **(Cal. Sup. Ct., Los Angeles Cty.)**
Turke & Strauss represents a class of consumers whose personal health information and protected health information was compromised and stolen from K & B Surgical Center. Many of these consumers have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. The case settled on a class-wide basis in 2022 and preliminary approval is pending the Superior Court of California for the County of Los Angeles.

*In re: Netgain Technology, LLC, Consumer Data Breach Litigation* **(D. Minn.)**
Filed on behalf of consumers whose personal identifiable information and protected health information was breached and stolen from Netgain Technology, LLC beginning in September 2020. Turke & Strauss partner, Raina Borrelli, serves as a member of the Executive Committee in this multidistrict litigation. Many of the individuals impacted by the breach have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case is currently pending in The United States District Court for the District of Minnesota.

*Dusterhoff, et al. v. OneTouchPoint Corp.* **(E.D. Wisc.)**

Filed on behalf of 2.6 million consumers whose personal identifiable information and protected health information was breached and stolen from OneTouchPoint Corp., a mailing and printing services vendor, beginning in April 2022. Turke & Strauss partner, Raina Borrelli, serves as a member of the Plaintiffs' Steering Committee in this litigation. Many of the individuals impacted by the breach have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case is currently pending in The United States District Court for the Eastern District of Wisconsin.

*In re Lincare Holdings Inc. Data Breach Litigation* **(M.D. Fla.)**

Filed on behalf of consumers whose personal identifiable information and protected health information was breached and stolen from Lincare Holdings Inc., a medical products and services provider, beginning in September 2021. Turke & Strauss partner, Raina Borrelli, serves as co-lead counsel for plaintiffs and the class in this multidistrict litigation. Many of the individuals impacted by the breach have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case is currently pending in The United States District Court for the Middle District of Florida.

*Forslund, et al. v. R.R. Donnelley & Sons Company* **(N.D. Ill.)**

Filed on behalf of consumers whose personal identifiable information was breached and stolen from R.R. Donnelley & Sons Company, a Fortune 500 marketing, packaging, and printing company, beginning in November 2021. Turke & Strauss partner, Raina Borrelli, serves as co-lead counsel for plaintiffs and the class in this litigation. Many of the individuals impacted by the breach have lost time and money responding to the data breach and they face an ongoing risk of identity theft, identity fraud, or other harm. This case is currently pending in The United States District Court for the Northern District of Illinois.

## DATA PRIVACY

*Patterson v. Respondus, Inc., et al.* **(N.D. Ill.)**

Filed on behalf of all persons who took an exam using Respondus' online exam proctoring software, Respondus Monitor, in the state of Illinois. Plaintiffs allege that Respondus collects, uses, and discloses students' biometric identifiers and biometric information in violation of Illinois' Biometric Information Privacy Act. This case is currently pending in the United States District Court for the Northern District of Illinois.

### *Powell v. DePaul University* (N.D. Ill.)

Turke & Strauss represents a class of DePaul University students located in the state of Illinois who were required to take exams using Respondus Monitor, which collects, uses, and discloses students' biometric identifiers and biometric information in violation of Illinois' Biometric Information Privacy Act. Plaintiff alleges that DePaul University collects students' biometric identifiers and biometric information without written consent and without legally compliant written public policies. This case is currently on appeal before the United States Court of Appeals for the Seventh Circuit.

### *Fee v. Illinois Institute of Technology* (N.D. Ill.)

Turke & Strauss represents a class of DePaul University students located in the state of Illinois who were required to take exams using Respondus Monitor, which collects, uses, and discloses students' biometric identifiers and biometric information in violation of Illinois' Biometric Information Privacy Act. Plaintiff alleges that DePaul University collects students' biometric identifiers and biometric information without written consent and without legally compliant written public policies. This case is currently pending in the United States District Court for the Northern District of Illinois.

### *Harvey v. Resurrection University* (N.D. Ill.)

Turke & Strauss represents a class of Resurrection University students located in the state of Illinois who were required to take exams using Respondus Monitor, which collects, uses, and discloses students' biometric identifiers and biometric information in violation of Illinois' Biometric Information Privacy Act. Plaintiff alleges that Resurrection University collects students' biometric identifiers and biometric information without written consent and without legally compliant written public policies. This case is currently pending in the United States District Court for the Northern District of Illinois.

## RIGHT OF PUBLICITY

### *Abraham, et al. v. PeopleConnect, Inc., et al.* (N.D. California)

Filed on behalf of California residents against PeopleConnect alleging violations of California law that recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Plaintiffs allege that PeopleConnect violates these legal rights by using California residents' names and childhood photographs in advertisements promoting paid subscriptions to its website, classmates.com. The case is pending in the United States District Court for the Northern District of California.

*Boshears, et al. v. PeopleConnect, Inc., et al.* **(W.D. Wash.)**
Filed on behalf of Indiana residents against PeopleConnect alleging violations of Indiana's Right of Publicity Statute and Indiana's common law prohibiting misappropriation of a name or likeness. Plaintiffs allege that PeopleConnect violates these legal rights by using Indiana residents' personalities, including their names and childhood photographs, in advertisements promoting paid subscriptions to its website, classmates.com. The case is currently on appeal before the United States Court of Appeals for the Ninth Circuit.

*Loendorf v. PeopleConnect, Inc., et al.* **(N.D. Ill.)**
*Mackey v. PeopleConnect, Inc., et al.* **(N.D. Ill.)**
Both actions were filed on behalf of Illinois residents against PeopleConnect alleging violations of Illinois' Right of Publicity Act and Illinois common law prohibiting unjust enrichment. Plaintiffs allege that PeopleConnect violates these legal rights by using Illinois residents' names, personas, and personal information in advertisements promoting paid subscriptions to its website, classmates.com, and unlawfully profiting from it. The cases are pending in the United States District Court for the Northern District of Illinois.

*Sessa, et al. v. Ancestry.com Operations Inc., et al.* **(D. Nev.)**
Filed on behalf of Nevada residents against Ancestry.com alleging violations of Nevada's right to publicity statute, Nevada law prohibiting deceptive trade practice, Nevada common law protection against Intrusion upon Seclusion, and Nevada Unjust Enrichment law. Plaintiffs allege that Ancestry.com violates these legal rights by knowingly misappropriating the photographs, likenesses, names, and identities of Nevada residents for the commercial purpose of selling access to and advertising them in Ancestry.com products and services without their prior consent. The case is pending in the United States District Court for the District of Nevada.

*Braundmeier v. Ancestry.com Operations, Inc., et al.* **(N.D. Ill.)**
Filed on behalf of Illinois residents against Ancestry.com alleging violations of Illinois' Right of Publicity Act and Illinois common law prohibiting unjust enrichment. Plaintiffs allege that Ancestry.com violates these legal rights by knowingly misappropriating the photographs, likenesses, names, and identities of Illinois residents for the commercial purpose of selling access to and advertising them in Ancestry.com products and services without their prior consent. The case is pending in the United States District Court for the Northern District of Illinois.

*Spindler v. Seamless Contacts Inc.* **(N.D. Cal.)**
Filed on behalf of California residents against Seamless Contacts Inc. alleging violations of California law that recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Plaintiffs allege that Seamless Contacts violates these legal rights by using California residents' names, likenesses, photographs, and personas in advertisements promoting paid subscriptions to its website, seamless.ai. The case is pending in the United States District Court for the Northern District of California.

*Martinez v. ZoomInfo Technologies Inc.* **(W.D. Wash.)**
Filed on behalf of California residents against ZoomInfo Technologies Inc. alleging violations of California law that recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Plaintiffs allege that ZoomInfo Technologies violates these legal rights by using California residents' names and person information in advertisements promoting paid subscriptions to its website, zoominfo.com, as well as selling access to their names and personal information as part of its products. The case is currently on appeal before the United States Court of Appeals for the Ninth Circuit.

*Gbeintor v. DemandBase, Inc., et al.* **(N.D. Cal.)**
Filed on behalf of California residents against DemandBase, Inc. and InsideView Technologies, Inc. alleging violations of California law that recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Plaintiffs allege that DemandBase and InsideView Technologies violate these legal rights by using California residents' names, likenesses, photographs, and personas in advertisements promoting paid subscriptions to its website, insideview.com, without their consent. The case is currently on appeal before the United States Court of Appeals for the Ninth Circuit.

*Kellman, et al. v. Spokeo, Inc.* **(N.D. Cal.)**
Filed on behalf of California residents against Spokeo, Inc. alleging violations of California law that recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Plaintiffs allege that Spokeo violates these legal rights by using California residents' names, likenesses, photographs, and personas in advertisements promoting paid subscriptions to its website without their consent. The case is pending in the United States District Court for the Northern District of California.

# TELEPHONE CONSUMER PROTECTION ACT

### *Evans v. American Power & Gas, LLC, et al.* (S.D. Ohio)
Filed on behalf of consumers who received automated solicitation telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* The case settled on a class-wide basis for $6,000,000, and final approval was granted in May 2019.

### *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh* (D. Mass.)
Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*  The case settled on a class-wide basis for $14,000,000 in 2020. Final approval was granted in October 2021 and the case is currently on appeal to the United States Court of Appeals for the First Circuit.

### *Baldwin, et al. v. Miracle-Ear, Inc., et al.* (D. Minn.)
Filed on behalf of consumers who received automated or prerecorded telemarketing telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* The case settled on a class-wide basis fir $8,000,000 in 2021 and final approval was granted in October 2022.

### *Goodell, et al. v. Van Tuyl Group*, LLC (D. Az.)
Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This case is currently pending in the United States District Court for the District of Arizona.

### *Doup v. Van Tuyl Group*, LLC (N.D. Tex.)
Filed on behalf of consumers who received solicitation telephone calls on their cellular and residential telephones that were listed on the National Do-Not-Call Registry, without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This case is currently pending in the United States District Court for the Northern District of Texas.

*Dickson v. Direct Energy, LP, et al.* **(N.D. Ohio)**
Filed on behalf of consumers who received automated or prerecorded telemarketing telephone calls on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This case is currently on appeal to the United States Court of Appeals for the Sixth Circuit.

*Learned, et al. v. McClatchy Company, LLC* **(E.D. Cal.)**
Filed on behalf of consumers who received solicitation telephone calls on their cellular and residential telephones that were listed on the National Do-Not-Call Registry and/or who requested Defendant stop calling them, without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This case is currently pending in the United States District Court for the Eastern District of California.

*Rogers, et al. v. Assurance IQ, LLC, et al.* **(W.D. Wash.)**
Filed on behalf of consumers who received automated solicitation telephone calls on their cellular and residential telephones, some that were listed on the National Do-Not-Call Registry, without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This case is currently pending in the United States District Court for the Western District of Washington.

# Our Professionals

## SAMUEL J. STRAUSS

Samuel J. Strauss is a founding member of Turke & Strauss LLP. Mr. Strauss concentrates his practice in class action litigation with an emphasis on consumer protection and privacy issues. Mr. Strauss has a national practice and appears in federal courts across the country. Over the course of his career, Mr. Strauss has represented plaintiffs in cases which have resulted in the recovery of hundreds of millions of dollars for consumers.

Mr. Strauss received his J.D. with honors from the University of Washington School of Law in 2013. Prior to forming Turke & Strauss in 2016, Mr. Strauss was an associate at Terrell Marshall Law Group in Seattle, Washington, where he successfully prosecuted complex class actions in federal and state courts.

Mr. Strauss is a member of bars of the states of Washington, Wisconsin, and Illinios and has been admitted to practice in the United States District Court for the Western District of Washington, United States District Court for the Eastern District of Washington, United States District Court for the Western District of Wisconsin, the United States District Court for the Eastern District of Wisconsin, the United States District Court for the Northern District of Illinois, the United States District Court for the Eastern District of Michigan, and the United States Court of Appeals for the Ninth Circuit.

In recent years, Mr. Strauss has been actively involved in a number of complex class action matters in state and federal courts including:

- *Daum, et al. v. K & B Surgical Center, LLC*, No. 21STCV41347 (Cal. Sup. Ct., Los Angeles Cty.)
- *Reetz v. Advocate Aurora Health, Inc.*, No. 20CV2361 (Wis. Cir. Ct., Branch 22, Milwaukee Cty.)
- *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cty.)
- *Joyner v. Behavioral Health Network, Inc.*, No. 2079CV00629 (Mass. Sup. Ct., Hampden Cty.)
- *In re BJC Healthcare Data Breach Litigation*, No. 2022-CC09492 (Mo. Cir. Ct., St. Louis City)
- *Baldwin, et al. v. National Western Life Insurance Company*, No. 2:21-cv-04066 (W.D. Mo.)

- *Pryor v. Eastern Bank*, No. 1984CV03467-BLS1 (Mass. Sup. Ct., Suffolk Cty.)
- *Murray v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, No. 19-cv-12608 (D. Mass.)
- *Baldwin v. Miracle-Ear, Inc.*, No. 20-cv-01502 (D. Minn.)
- *Goodell v. Van Tuyl Group, LLC*, No. 20-cv-01657 (D. Az.)
- *Weister v. Vantage Point AI, LLC,* No. 21-cv-01250 (M.D. Fla.).
- *Lang v. Colonial Penn Life Insurance Company*, No. 21-cv-00165 (N.D. Fla.)
- *Mackey v. PeopleConnect, Inc.*, No. 1:22-cv-00342 (N.D. Ill.)
- *Sessa v. Ancestry.com Operations Inc., et al.*, No. 2:20-cv-02292 (D. Nev.)
- *Boshears v. PeopleConnect, Inc.*, No. 21-cv-01222 (W.D. Wash.)
- *Braundmeier v. Ancestry.com Operations, Inc.*, No. 1:20-cv-07390 (N.D. Ill.)
- *Martinez v. ZoomInfo Technologies Inc.*, No. 21-cv-05725 (W.D. Wash.)
- *Uhhariet v. MyLife.com, Inc.*, No. 21-cv-08229 (N.D. Cal.)
- *Kellman v. Spokeo, Inc.*, No. 21-cv-08976 (N.D. Cal.)
- *Patterson v. Respondus, Inc.*, No. 20-cv-07692 (N.D. Ill.)
- *Bridges v. Respondus, Inc.*, No. 21-cv-01785 (N.D. Ill.)
- *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (D. Minn.)
- *Crawford v. FCA US LLC*, No. 20-cv-12341 (E.D. Mich.)
- *Klaehn, et al. v. Cali Bamboo, LLC*, No. 19-cv-01498 (S.D. Cal.)
- *Jones v. Monsanto Company*, No. 19-cv-00102 (W.D. Mo.)
- *Dickson v. Direct Energy, LP, et al.*, No. 18-cv-00182 (N.D. Ohio)
- *Rolland v. Spark Energy, LLC*, Case. No. 17-cv-02680 (D.N.J.)
- *Evans v. American Power & Gas, LLC*, No. 17-cv-00515 (S.D. Ohio)
- *Fowler* v *. Wells Fargo Bank, N.A.*, No. 17-cv-02092 (N.D. Cal.)
- *Wilkins v. HSBC Bank Nevada, N.A., et al.*, No. 14-cv-00190 (N.D. Ill.)
- *Ott v. Mortgage Investors Corporation*, No. 14-cv-00645 (D. Or)
- *Booth v. AppStack, et al.*, No. 13-cv-01533 (W.D. Wash.)
- *Melito v. American Eagle Outfitters, Inc.*, No. 14-cv-02440-VEC (S.D.N.Y.)
- *Spencer v. FedEx Ground Package System, Inc.*, No. 14-2-30110-3 SEA (Wa. Sup. Ct., King Cty.)

# MARY C. TURKE

Mary C. Turke is a founding member of Turke & Strauss. Ms. Turke concentrates her practice in civil and commercial litigation. Ms. Turke regularly prosecutes consumer class actions, including those involving violations of the Illinois Biometric Information Privacy Act and the Telephone Consumer Protection Act. Mr. Turke has extensive experience representing parties in multi-national disputes in both state and federal courts throughout the United States.

Ms. Turke received her J.D. *cum laude* from the University of Wisconsin Law School, Order of the Coif, in 1996. Prior to forming Turke & Strauss in May 2016, Ms. Turke was the managing partner of the Madison, Wisconsin, office of Michel Best & Friedrich LLP, where she practiced civil litigation. Ms. Turke is an active member of the Wisconsin State Bar. Ms. Turke has repeatedly been named to the annual Wisconsin Super Lawyers list (2011-2021) by SuperLawyers Magazine as well as The Best Lawyers in America® list (2013-2020) by Woodward/White, Inc. In 2017, shortly after forming Turke & Strauss, Ms. Turke received the Legal Innovator Award from the Wisconsin State Bar.

Ms. Turke is a member of the Wisconsin State Bar and has been admitted to practice in the United States District Court for the Western District of Wisconsin, the United States District Court for the Eastern District of Wisconsin, the United States District Court for the Northern District of Illinois, the United States District Court for the District of Colorado, and the United States Court of Appeals for the Seventh Circuit.

In recent years, Ms. Turke has been substantially involved in a number of complex class action matters in state and federal courts including:

- *Patterson v. Respondus, Inc.*, No. 1:20-cv-07692 (N.D. Ill.)
- *Reetz v. Advocate Aurora Health, Inc.*, No. 20CV2361 (Wis. Cir. Ct., Branch 22, Milwaukee Cty.)
- *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cty.)
- *Murray v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, No. 1:19-cv-12608 (D. Mass.)
- *Goodell, et al. v. Van Tuyl Group*, LLC, No. 2:20-cv-01657 (D. Az.)
- *Doe v. Northwestern University*, No. 1:21-cv-01579 (N.D. Ill.)
- *Duerr v. Bradley University*, No. 1:21-cv-01096-SLD-JEH (C.D. Ill.)
- *Bridges v. Respondus, Inc.*, No. 1:21-cv-01785 (N.D. Ill.)

- *Powell v. DePaul University*, No. 1:21-cv-03001 (N.D. Ill.)
- *Doe v. Chamberlain University*, No. 2021CH01183 (Il. Cir. Ct., Cook Cty.)
- *Fee v. Illinois Institute of Technology*, No. 1:21-cv-02512 (N.D. Ill.)
- *Harvey v. Resurrection University*, No. 1:21-cv-03203 (N.D. Ill.)

# RAINA C. BORRELLI

Raina C. Borrelli is a partner at Turke & Strauss whose practice focuses on complex class action litigation, including data privacy, Telephone Consumer Protection Act ("TCPA"), false advertising, and consumer protection cases in both state and federal courts around the country. Ms. Borrelli has served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation. Additionally, Ms. Borrelli has substantial experience leading discovery teams in these complex class action matters, as well as in working with class damages experts and class damages models in consumer protection cases.

Ms. Borrelli received her J.D. *magna cum laude* from the University of Minnesota Law School in 2011. Prior to joining Turke & Strauss, Ms. Borrelli was a partner at Gustafson Gluek, where she successfully prosecuted complex class actions in federal and state courts. Ms. Borrelli is an active member of the Minnesota Women's Lawyers and the Federal Bar Association, where she has assisted in the representation of *pro se* litigants though the *Pro Se* Project. Ms. Borrelli has repeatedly been named to the annual Minnesota "Rising Star" Super Lawyers list (2014-2021) by SuperLawyers Magazine. She has also been repeatedly certified as a North Star Lawyer by the Minnesota State Bar Association (2012-2015; 2018-2020) for providing a minimum of 50 hours of pro bono legal services.

Ms. Borrelli is a member of the Minnesota State Bar Association and has been admitted to practice in the United States District Court for the District of Minnesota, the United States District Court for the Eastern District of Wisconsin, the United States District Court for the Eastern District of Michigan, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Tenth Circuit.

In recent years, Ms. Borrelli has been appointed to leadership positions in a number of data privacy cases, including *In re Netgain Technology, LLC Consumer Data Breach Litigation*, No. 21-cv-01210 (D. Minn.) (Executive Committee member); *Dusterhoff, et al. v. OneTouchPoint Corp.*, No. 2:22-cv-00882 (E.D. Wisc.) (Plaintiffs' Steering Committee member); *In re Lincare Holdings Inc. Data Breach Litigation*, No. 8:22-cv-01472 (M.D. Fl.) (co-lead counsel); *Forslund v. R.R. Donnelley & Sons Company*, No. 1:22-cv-04260 (N.D. Ill.) (co-lead counsel); and *Medina v. PracticeMax Incorporated*, No. 2:22-cv-0126 (D. Az.) (Executive Leadership Committee member). Ms. Borrelli has been substantially involved in a number of

complex class action matters in state and federal courts including:

- *Daum, et al. v. K & B Surgical Center, LLC*, No. 21STCV41347 (Cal. Sup. Ct., Los Angeles Cty.)
- *Grogan v. McGrath RentCorp*, No. 3:22-cv-00490 (N.D. Cal.)
- *Benedetto, et al. v Southeastern Pennsylvania Transportation Authority*, No. 210201425 (C.C.P. Phila.)
- *Reetz v. Advocate Aurora Health, Inc.*, No. 20CV2361 (Wis. Cir. Ct., Branch 22, Milwaukee Cty.)
- *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cty.)
- *Reese v. Teen Challenge Training Center, Inc.*, No. 00093 (C.C.P. Phila.)
- *Lhota v. Michigan Avenue Immediate Care, S.C.*, No. 2022CH06616 (Ill. Cir. Ct., Cook Cty.)
- *Johnson, et al. v. Yuma Regional Medical Center*, No. 2:22-cv-01061 (D. Az.)
- *Baldwin v. Miracle-Ear, Inc.*, No. 20-cv-01502 (D. Minn.)
- *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, No. 1:19-cv-12608 (D. Mass.)
- *Goodell v. Van Tuyl Group, LLC*, No. 20-cv-01657 (D. Az.)
- *Learned, et al. v. McClatchy Company LLC*, No. 2:21-cv-01960 (E.D. Cal.)
- *Lang v. Colonial Penn Life Insurance Company*, No. 21-cv-00165 (N.D. Fla.)
- *Martinez v. ZoomInfo Technologies Inc.*, No. 21-cv-05725 (W.D. Wash.)
- *Abraham, et al. v. PeopleConnect, Inc.*, No. 3:20-cv-09203 (N.D. Cal.)
- *Boshears v. PeopleConnect, Inc.*, No. 21-cv-01222 (W.D. Wash.)
- *Mackey v. PeopleConnect, Inc.*, No. 1:22-cv-00342 (N.D. Ill.)
- *Sessa v. Ancestry.com Operations Inc., et al.*, No. 2:20-cv-02292 (D. Nev.)
- *Braundmeier v. Ancestry.com Operations, Inc.*, No. 1:20-cv-07390 (N.D. Ill.)
- *DeBose v. Dun & Bradstreet Holdings, Inc.*, No. 2:22-cv-00209 (D.N.J.)
- *Gbeintor, et al. v. DemandBase, Inc., et al.*, No. 3:21-cv-09470 (N.D. Cal.)
- *Spindler v. Seamless Contacts Inc.*, No. 4:22-cv-00787 (N.D. Cal.)
- *Kellman, et al. v. Spokeo, Inc.*, No. 3:21-cv-08976 (N.D. Cal.)
- *Brown v. Coty, Inc.*, No. 1:22-cv-02696 (S.D.N.Y.)
- *Benanav v. Healthy Paws Pet Insurance LLC*, No. 2:20-cv-00421 (W.D. Wash.)
- *Spindler, et al. v. General Motors LLC*, No. 3:21-cv-09311 (N.D. Cal.)
- *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (JRT/KMM) (D. Minn.)
- *Patterson v. Respondus, Inc.*, No. 1:20-cv-07692 (N.D. Ill.)
- *Powell v. DePaul University*, No. 1:21-cv-03001 (N.D. Ill.)
- *Fee v. Illinois Institute of Technology*, No. 1:21-cv-02512 (N.D. Ill.)
- *Harvey v. Resurrection University*, No. 1:21-cv-03203 (N.D. Ill.)
- *In re FCA Monostable Gearshifts Litig.*, No. 16-md-02744 (E.D. Mich.)

- *Zeiger v. WellPet LLC*, No. 17-cv-04056 (N.D. Cal.)
- *Wyoming v. Procter & Gamble*, No. 15-cv-2101 (D. Minn.)
- *In re Big Heart Pet Brands Litig.*, No. 18-cv-00861 (N.D. Cal.)
- *Sullivan v. Fluidmaster*, No. 14-cv-05696 (N.D. Ill.)
- *Rice v. Electrolux Home Prod., Inc.*, No. 15-cv-00371 (M.D. Pa.)
- *Gorczynski v. Electrolux Home Products, Inc.*, No. 18-cv-10661 (D.N.J.)
- *Reitman v. Champion Petfoods*, No. 18-cv-1736 (C.D. Cal.)
- *Reynolds, et al., v. FCA US, LLC*, No. 19-cv-11745 (E.D. Mich.).

# BRITTANY RESCH

Brittany Resch is an associate at Turke & Strauss. Ms. Resch's practice focuses on complex class action litigation, including antitrust litigation, data-breach, Telephone Consumer Protection Act ("TCPA"), false advertising, and consumer protection cases in both state and federal courts around the country. Ms. Resch has substantial experience managing discovery in these complex class action matters.

Ms. Resch received her J.D. from the University of Minnesota Law School in 2015. Prior to joining Turke & Strauss, Ms. Resch was an associate at Gustafson Gluek, where she successfully prosecuted complex class actions in federal and state courts. Ms. Resch also clerked for the Honorable Richard H. Kyle, Senior United States District Judge for the District of Minnesota. Ms. Resch is an active member of the Minnesota Women's Lawyers and the Federal Bar Association, where she has assisted in the representation of *pro se* litigants though the *Pro Se* Project.

Ms. Resch is a member of the Minnesota State Bar Association and has been admitted to practice in the United States District Court for the District of Minnesota and the United States District Court for the Northern District of Illinois.

In recent years, Ms. Resch has been substantially involved in a number of complex class action matters in state and federal courts including:

- *Benedetto v. Southeastern Pennsylvania Transportation Authority*, No. 210201425 (C.C.P. Phila.)
- *In re Netgain Technology, LLC Consumer Data Breach Litigation*, No. 21-cv-01210 (D. Minn.)
- *Perkins v. WelldyneRx, LLC*, No. 8:22-cv-02051 (M.D. Fla.)
- *Forslund v. R.R. Donnelley & Sons Company*, No. 1:22-cv-04260 (N.D. Ill.)
- *Corra, et al. v. ACTS Retirement Services, Inc.*, No. 2:22-cv-02917 (E.D. Pa.)
- *Lamie, et al. v. LendingTree, LLC*, No. 3:22-cv-00307 (W.D.N.C)
- *In re Lincare Holdings Inc. Data Breach Litigation*, No. 8:22-cv-01472 (M.D. Fl.)
- *Benanav, et al. v. Healthy Paws Pet Insurance, LLC*, No. 2:20-cv-00421-RSM (W.D. Wash.)
- *Martinez v. ZoomInfo Technologies Inc.*, No. 21-cv-05725 (W.D. Wash.)
- *Abraham, et al. v. PeopleConnect, Inc.*, No. 3:20-cv-09203 (N.D. Cal.)
- *Boshears v. PeopleConnect, Inc.*, No. 21-cv-01222 (W.D. Wash.)
- *Mackey v. PeopleConnect, Inc.*, No. 1:22-cv-00342 (N.D. Ill.)

- *Sessa v. Ancestry.com Operations Inc., et al.*, No. 2:20-cv-02292 (D. Nev.)
- *Braundmeier v. Ancestry.com Operations, Inc.*, No. 1:20-cv-07390 (N.D. Ill.)
- *DeBose v. Dun & Bradstreet Holdings, Inc.*, No. 2:22-cv-00209 (D.N.J.)
- *Gbeintor, et al. v. DemandBase, Inc., et al.*, No. 3:21-cv-09470 (N.D. Cal.)
- *Spindler v. Seamless Contacts Inc.*, No. 4:22-cv-00787 (N.D. Cal.)
- *Kellman, et al. v. Spokeo, Inc.*, No. 3:21-cv-08976 (N.D. Cal.)
- *Kis v. Cognism Inc.*, No. 4:22-cv-05322 (N.D. Cal.)
- *Uhhariet v. MyLife.com, Inc.*, No. 21-cv-08229 (N.D. Cal.)
- *Brown v. Coty, Inc.*, No. 1:22-cv-02696 (S.D.N.Y.)
- *Emmrich v. General Motors LLC*, No. 21-cv-05990 (N.D. Ill.)
- *Spindler v. General Motors LLC*, No. 21-cv-09311 (N.D. Cal.)
- *Goodell v. Van Tuyl Group, LLC*, No. 20-cv-01657 (D. Az.)
- *Learned, et al. v. McClatchy Company LLC*, No. 2:21-cv-01960 (E.D. Cal.)
- *Clemens v. O'Neil Insurance Company, Inc.*, No. 21-cv-00678 (E.D. Mo.)
- *Patterson v. Respondus University, et al.*, No. 1:20-cv-07692 (N.D. Ill.)
- *Bridges v. Respondus University, et al.*, No. 1:21-cv-01785 (N.D. Ill.)
- *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (JRT/KMM) (D. Minn.)
- *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.)
- *In re Disposable Contact Lens Antitrust Litigation*, No. 15-md-02626 (M.D. Fla.)
- *In re Pork Antitrust Litigation*, No. 21-md-02998 (D. Minn.)
- *In re DPP Beef Litigation,*
- *In re Asacol Antitrust Litigation*, No. 15-cv-12730 (D. Mass.)
- *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311 (E.D. Mich.)

## ALEX S. PHILLIPS

Alex Phillips is an associate at Turke & Strauss. Mr. Phillips concentrates his practice in complex class action litigation and commercial litigation. He has represented both plaintiffs and defendants in high stakes litigation. Mr. Phillips has successfully obtained trial verdicts on behalf of his clients as well as negotiated numerous high-value settlements.

Mr. Phillips received his J.D. from the University of Wisconsin School of Law in 2017 and has been an active member of the Wisconsin State Bar as well as the Dane, Jefferson, and Dodge County Bar Associations.

In recent years, Mr. Phillips has been involved in a number of complex class action matters in state and federal courts including:

- *Benedetto v. Southeastern Pennsylvania Transportation Authority*, No. 210201425 (C.C.P. Phila.)
- *Grogan v. McGrath RentCorp*, No. 3:22-cv-00490 (N.D. Cal.)
- *Koeller, et al. v. Numrich Gun Parts Corporation*, No. 1:22-cv-00675 (S.D.N.Y.)
- *Mayhood v. Wilkins Recreational Vehicles, Inc.*, No. E2022-0701 (N.Y. Sup. Ct., Steuben Cty.)
- *Perkins v. WelldyneRx, LLC*, No. 8:22-cv-02051 (M.D. Fla.)
- *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 3:22-cv-09124 (N.D. Cal.)
- *Sessa v. Ancestry.com Operations Inc., et al.*, No. 2:20-cv-02292 (D. Nev.)
- *Ambramson v. First American Home Warranty Corporation*, No. 2:22-cv-01003 (W.D. Pa.)
- *DeVivo v. Sovereign Lending Group Incorporated*, No. 3:22-cv-05254 (W.D. Wash.)
- *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, No. 1:19-cv-12608 (D. Mass.)
- *Spindler v. General Motors LLC*, No. 21-cv-09311 (N.D. Cal.)
- *Kellman v. Spokeo, Inc.*, No. 21-cv-08976 (N.D. Cal.)
- *Reetz v. Advocate Aurora Health, Inc.*, No. 20CV2361 (Wis. Cir. Ct., Branch 22, Milwaukee Cty.)
- *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cty.)
- *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (D. Minn.)
- *Dickson v. Direct Energy, LP, et al.*, No. 18-cv-00182 (N.D. Ohio)
- *Benanav. v. Healthy Paws Pet Insurance, LLC*, No. 20-cv-00421 (W.D. Wash.)
- *Klaehn, et al. v. Cali Bamboo, LLC, et al.*, No. 19-cv-01498 (S.D. Cal.)

## ZOG BEGOLLI

Zog Begolli is an associate at Turke & Strauss. Mr. Begolli concentrates his practice in complex class action litigation, with an emphasis on cases involving data privacy, the Telephone Consumer Protection Act, the Illinois Biometric Information Privacy Act, various states' consumer protection acts, and financial industry regulations.

Mr. Begolli received his J.D. from the University of Wisconsin School of Law in 2017 and is an active member of the Wisconsin State Bar. During law school, Mr. Begolli was a member of the University of Wisconsin Law and Entrepreneurship Clinic, which provides legal services to nascent entrepreneurs and early stage companies.

In recent years, Mr. Begolli has been actively involved in a number of complex class action matters in state and federal courts including:

- *Baldwin v. Miracle-Ear, Inc.*, No. 20-cv-01502 (JRT/HB) (D. Minn.)
- *Murray v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, No. 19-cv-12608 (D. Mass.)
- *Learned, et al. v. McClatchy Company LLC*, No. 2:21-cv-01960 (E.D. Cal.)
- *Patterson v. Respondus, Inc.*, No. 1:20-cv-07692 (N.D. Ill.)
- *Grogan v. McGrath RentCorp*, No. 3:22-cv-00490 (N.D. Cal.)
- *In re Netgain Technology, LLC Consumer Data Breach Litigation*, No. 21-cv-01210 (D. Minn.)
- *Reetz v. Advocate Aurora Health, Inc.*, No. 20CV2361 (Wis. Cir. Ct., Branch 22, Milwaukee Cty.)
- *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cty.)
- *Reese v. Teen Challenge Training Center, Inc.*, No. 00093 (Philadelphia Ct. Common Pleas)
- *Abraham, et al. v. PeopleConnect, Inc.*, No. 3:20-cv-09203 (N.D. Cal.)
- *Loendorf v. PeopleConnect, Inc.*, No. 1:22-cv-00051 (N.D. Ill.)
- *Braundmeier v. Ancestry.com Operations, Inc.*, No. 1:20-cv-07390 (N.D. Ill.)
- *Crawford, et al. v. FCA US LLC*, No. 20-cv-12341 (E.D. Mich.)
- *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (D. Minn.)
- *Klaehn, et al. v. Cali Bamboo, LLC, et al.*, No. 19-cv-01498 (S.D. Cal.)
- *Fowler, et al. v. Wells Fargo Bank, N.A.*, No. 17-cv-02092 (N.D. Cal.)



## MARKOVITS, STOCK & DeMARCO, LLC

Markovits, Stock & DeMarco, LLC is a boutique law firm whose attorneys have successfully represented clients in some of the largest and most complex legal matters in U.S. history. Our deep and varied experience extends from representing businesses, public pension funds, and individuals in federal and state courts across the nation, to successfully arguing appeals at the highest levels of the legal system – including prevailing before the United States Supreme Court. This broad-based litigation and trial expertise, coupled with no overstaffing and overbilling that can typify complex litigation, sets us apart as a law firm. But expertise is only part of the equation.

"Legal success comes only from recognizing a client's goals and being able to design and effectively execute strategies that accomplish those goals. We understand that every client is different, which is why we spend so much time learning what makes them tick."

As the business world becomes increasingly complex, you need to be able to trust your law firm to help you make the right decisions. Whether you seek counsel in resolving a current conflict, avoiding a future conflict, or navigating the sometimes choppy state and local government regulatory waters, the lawyers at Markovits, Stock & DeMarco have both the experience and track record to meet your legal needs.

**BILL MARKOVITS**

Bill Markovits practices in the area of complex civil litigation, with an emphasis on securities, antitrust, RICO, and False Claims Act cases. Bill began his career as a trial lawyer at the U.S. Department of Justice Antitrust Division in Washington, D.C. He continued to focus on antitrust after moving to Cincinnati, where he became an adjunct professor of antitrust law at the University of Cincinnati Law School. Bill has been involved in the past in a number of notable cases, including: the Choice Care securities, antitrust and RICO class action in which the jury awarded over $100 million to a class of physicians; a fraud/RICO case on behalf of The Procter & Gamble Company, which resulted in a settlement of $165 million; an eleven year antitrust and RICO class action against Humana, including appeals that reached the United States Supreme Court, which culminated in a multi-million dollar settlement; and a national class action against Microsoft, in which he was chosen from among dozens of plaintiffs' attorneys to depose Bill Gates. More recently, Bill was: a lead counsel for plaintiffs in the Fannie Mae Securities Litigation that settled for $153 million; a lead counsel for plaintiffs in a class action against Duke Energy that settled for $80.75 million; and lead counsel for plaintiff in *Collins v. Eastman Kodak*, where he successfully obtained a preliminary injunction against Kodak on an antitrust tying claim. Based upon the result in *Collins*, Bill was a 2015 finalist in the American Antitrust Institute's Antitrust Enforcement Awards under the category "Outstanding Antitrust Litigation Achievement in Private Law Practice."

Bill has received a number of awards and designations, including current and past designations as a "Best Lawyer in America" in the fields of antitrust and commercial litigation.

### Education:

- Washington University, A.B. (1978), Phi Beta Kappa
- Harvard Law School, J.D. (1981), cum laude

### Significant and Representative Cases:

- *Collins v. Eastman Kodak*, United States District Court, Southern District of Ohio. Lead counsel representing Collins in antitrust tying claim, resulting in preliminary injunction against Kodak.
- *In Re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, United States District Court, District of Columbia. Co-lead counsel representing Ohio pension funds in securities class action that settled for $153 million.
- *Ohio Employees Retirement System v. Federal Home Loan Mortgage, aka Freddie Mac, et al.*, United States District Court, Northern District of Ohio, Eastern Division. Special counsel representing Ohio pension fund in securities class action.
- *Williams v. Duke Energy et al.*, United States District Court, Southern District of Ohio. Representing class of energy consumers against energy provider in complex antitrust and RICO class action that settled for $80.75 million.
- *In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, United States District Court, Central District of California. Former member of economic loss lead counsel committee, representing class of consumers in litigation relating to sudden acceleration.
- *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, United States District Court, Eastern District of Louisiana. RICO workgroup coordinator in class action resulting from oil spill.
- *In Re Microsoft Corp. Litigation*, United States District Court, District of Maryland. Member of co-lead counsel firm in antitrust class action.
- *Procter & Gamble v. Amway Litigation*, United States District Court, Southern District of Texas, at Houston; United States District Court, District of Utah, at Salt Lake City. Member of trial team

representing Procter & Gamble in obtaining jury verdict against Amway distributors relating to spreading of false business rumors.

- *United States ex rel. Brooks v. Pineville Hospital*, United States District Court, Eastern District of Kentucky. One of the lead counsel in successful False Claims Act litigation.
- *Procter & Gamble v. Bankers' Trust Litigation*, United States District Court, Southern District of Ohio. Co-counsel in successful $165 million settlement; developed the RICO case.
- *United States ex rel. Watt v. Fluor Daniel*, United States District Court, Southern District of Ohio. Co- lead counsel of successful False Claims Act case.
- *Forsyth v. Humana*, United States District Court, District of Nevada. Represented class of consumers in antitrust and RICO class action; successfully argued antitrust appeal; co-chaired successful Supreme Court appeal on RICO.
- *In Re Choice Care Litigation*, United States District Court, Southern District of Ohio, Western Division. Trial attorney on largest antitrust/RICO/securities verdict.

## Presentations & Publications:

- *"Implications of Sixth Circuit Collins Inkjet Corp. v. Eastman Kodak Co. Decision,"* American Bar Association panel discussion, December 10, 2015
- *"Defining the Relevant Market in Antitrust Litigation,"* Great Lakes Antitrust Seminar, October 29, 2010
- *"Beyond Compensatory Damages – Tread, RICO and The Criminal Law Implications,"* HarrisMartin's Toyota Recall Litigation Conference, Part II, May 12, 2010
- *"The Racketeer Influenced and Corrupt Organizations Act (RICO),"* HarrisMartin's Toyota Recall Litigation Conference, March 24, 2010
- *"The False Claims Act: Are Healthcare Providers at Risk?,"* presentation to Robert Morris College Second Annual Health Services Conferences, Integrating Health Services: Building a Bridge to the 21st Century, Moon Township, PA, October 9, 1997
- *"The Federal False Claims Act: Are Health Care Providers at Risk?,"* (Co-Speaker), Ohio Hospital Association, April, 1996
- *"A Focus on Reality in Antitrust,"* Federal Bar News & Journal, Nov/Dec 1992
- *"Using Civil Rico and Avoiding its Abuse,"* Ohio Trial, William H. Blessing, co-author, Summer 1992
- *"Antitrust in the Health Care Field,"* a chapter published in Legal Aspects of Anesthesia, 2nd ed., William H. L. Dornette, J.D., M.D., editor
- *Antitrust Law Update, National Health Lawyers Health Law Update and Annual Meeting (Featured Speaker)*, San Francisco, California, 1989

## Affiliations:

- American Association for Justice
- American Bar Association
- American Trial Lawyers Association
- Cincinnati Bar Association
- District of Columbia Bar Association (non-active)
- Hamilton County Trial Lawyers Association
- National Health Lawyers Association
- Ohio State Bar Association
- Ohio Trial Lawyers Association

## Courts Admitted:

- District of Columbia (1981)
- State of Ohio (1983)
- United States District Court, Southern District of Ohio (1983)
- U.S. Court of Appeals, 6th Circuit (1991)
- U.S. Court of Appeals, 9th Circuit (1995)
- U.S. Supreme Court, United States of America (1998)
- United States District Court, Northern District of Ohio (2008)

## PAUL M. DEMARCO

Paul M. De Marco is a founding member of Markovits, Stock & DeMarco, LLC. He is an Appellate Law Specialist certified by the Ohio State Bar Association and has handled more than 100 appellate matters, including cases before the Supreme Court of the United States, six federal circuits, and five state supreme courts.

Paul's practice also focuses on class actions and other complex litigation. During his 25 years in Cincinnati, Paul has been actively involved in successful litigation related to the U.S. Department of Energy's Fernald nuclear weapons plant, the Lucasville (Ohio) prison riot, Lloyd's of London, defective Bjork-Shiley heart valves, Holocaust-related claims against Swiss and Austrian banks, the Bankers Trust derivative scheme, Cincinnati's Aronoff Center, the San Juan DuPont Plaza Hotel fire, the Procter & Gamble Satanism rumor, the Hamilton County (Ohio) Morgue photograph scandal, defective childhood vaccines, claims arising from tire delamination and vehicle roll-over, racial hostility claims against one of the nation's largest bottlers, fiduciary breach claims against the nation's largest pharmacy benefits manager, and claims arising from the heatstroke death of NFL lineman Korey Stringer.

### Education:

- College of Wooster (B.A., 1981)
- University of the Pacific, McGeorge School of Law (J.D. with distinction, 1983)
- University of Cambridge (1985)

### Significant and Representative Appeals:

- *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896 (2009): In a case involving allegations of a fraudulent tax shelter and accounting and legal malpractice, the Supreme Court of the United States resolved the issue of the rights of non-parties to arbitration clauses to enforce them against parties, which had divided the circuits.
- *Williams v. Duke Energy International, Inc.*, 681 F.3d 788 (6th Cir. 2012): In a case brought as a class action by a utility's ratepayers for selective payment of illegal rebates to certain ratepayers, the United States Court of Appeals for the Sixth Circuit reversed a district court's dismissal of the excluded ratepayers' claims that the utility violated the RICO statute, the Robinson-Patman Act, and the state corrupt practices act.
- *State of Ohio ex rel. Bd. of State Teachers Retirement Sys. of Ohio v. Davis*, 113 Ohio St.3d 410, 865 N.E.2d 1289 (2007): The Supreme Court of Ohio upheld the appellate court's issuance of the extremely rare writ of procedendo commanding the trial judge to proceed with a trial on claims he mistakenly believed the previous jury had resolved.
- *Chesher v. Neyer*, 477 F.3d 784 (6th Cir. 2007): The Sixth Circuit affirmed the district court's rejection of qualified immunity defenses raised by the Hamilton County (Ohio) coroner, his chief deputy, the coroner's administrative aide, a staff pathologist, and a pathology fellow in connection with the Hamilton County Morgue photo scandal.
- *State of Ohio ex rel. CNG Fin'l Corp. v. Nadel*, 111 Ohio St.3d 149, 855 N.E.2d 473 (2006): The Supreme Court of Ohio affirmed the appellate court's refusal to issue a writ of procedendo commanding the trial judge to halt injunctive proceedings and decide an arbitration issue.
- *Smith v. North American Stainless, L.P.*, 158 F. App'x. 699 (6th Cir. 2006): Rejecting a steel manufacturer's "up-the-ladder" immunity defense, the United States Court of Appeals for the Sixth Circuit reversed the district court's dismissal of a wrongful claim brought by the widow and estate of a steel worker killed on the job.
- *Procter & Gamble Co. v. Haugen*, 427 F.3d 727 (10th Cir. 2005): The United States Court of Appeals for the Tenth Circuit reversed the district court's dismissal of Procter & Gamble's Lanham Act claims, paving

the way for a $19.25 million jury verdict in its favor.

- *Roetenberger v. Christ Hospital*, 163 Ohio App.3d 555, 839 N.E.2d 441 (2005): In this medical malpractice action for wrongful death, the Ohio court of appeals reversed the jury verdict in the physician's favor due to improper arguments by his attorney and instructional error by the trial court.

- *City of Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 768 N.E.2d 1136 (2002): In this landmark decision on public nuisance law, the Supreme Court of Ohio held that a public nuisance action could be maintained for injuries caused by a product — in this case, guns — if the design, manufacture, marketing, or sale of the product unreasonably interferes with a right common to the general public.

- *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 766 N.E.2d 977 (2002): In an employee's intentional tort action alleging that his employer subjected him to long-term beryllium exposure, the Supreme Court of Ohio ruled that a cause of action for an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and — here's the ground-breaking part of the holding — the wrongful conduct of the employer.

- *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St.3d 266, 773 N.E.2d 1018 (2002): In overturning the dismissal of a suit against the state fire marshal for negligently inspecting a fireworks store that caught fire killing nine people, the Supreme Court of Ohio held for the first time that the common-law public-duty rule cannot be applied in cases against the state in the Ohio Court of Claims.

**Courts Admitted:**

- Ohio
- California
- Supreme Court of the United States
- U.S. Court of Appeals, 1st Circuit
- U.S. Court of Appeals, 4th Circuit
- U.S. Court of Appeals, 5th Circuit
- U.S. Court of Appeals, 6th Circuit
- U.S. Court of Appeals, 7th Circuit
- U.S. Court of Appeals, 9th Circuit

- U.S. Court of Appeals, 10th Circuit
- U.S. District Court, Southern District of Ohio
- U.S. District Court, Northern District of Ohio
- U.S. District Court, Eastern District of California
- U.S. District Court, Central District of California
- U.S. District Court, Southern District of California
- U.S. Court of Federal Claims

Since 1994, Paul has worked to promote professional responsibility among lawyers, serving first as a member and eventually the chair of the Cincinnati Bar Association Certified Grievance Committee, and since 2008 as a member of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio.

He also is a member of many legal organizations, including the Federal Bar Association, Ohio State Bar Association, Cincinnati Bar Association, American Bar Association, ABA Council of Appellate Lawyers, and the Cincinnati Bar Association's Court of Appeals Committee.

Paul was one of the founders of the Collaborative Law Center in Cincinnati, a member of Cincinnati's Citizens Police Review Panel (1999-2002), and a member of Cincinnati CAN and its Police and Community Subcommittee following the 2001 riots.

He currently serves on the boards of the Ohio Justice and Policy Center and the Mercantile Library and on the advisory committees of the Fernald Community Cohort and the Fernald Workers' Medical Monitoring Program.

**TERENCE R. COATES**

Terry Coates is Markovits, Stock & DeMarco's managing partner. His legal practice focuses on personal injury law, sports & entertainment law, business litigation and class action litigation. Mr. Coates is currently participating as a member of plaintiffs' counsel in the over 75 data breach cases pending around the country, including serving as co-lead counsel for plaintiff in *Migliaccio v. Parker Hannifin Corp.*, No. 1:22-CV-00835 (N.D. Ohio) (Class Counsel for $1.75 million data breach class action settlement); *Lutz v. Electromed, Inc.*, No. 0:21-cv-02198 (D. Minn.) (Class Counsel for $825,000 data breach class action settlement); *Abrams v. Savannah College of Art & Design*, No. 1:22-CV-04297 (N.D. Ga.) (Class Counsel for data breach class action settlement); *John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.) (Class Counsel in $12,225,000 data privacy class action settlement); *In re Cerebral, Inc. Privacy Practices*, No. 2:23-cv-1803 (C.D. Cal.) (interim co-lead class counsel in a data privacy class action); *In re U.S. Vision Data Breach Litigation*, No. 22-cv-06558 (D. N.J.) (court-appointed interim co-lead class counsel for plaintiffs); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio) (Class Counsel for $1.75 million common fund settlement); *Vansickle v. C.R. England*, No. 22-cv-00374 (D. Utah) (Class Counsel in data breach class action settlement in principle); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio) (Class Counsel for $1.75 million common fund settlement); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga.) (class counsel in data breach class action settlement in principle); *Tracy v. Elekta, Inc.*, No. 1:21-cv-02851-SDG (N.D. Ga.) (court-appointed interim class counsel); *Rodriguez v. Professional Finance Company, Inc.*, No. 1:22-cv-1679 (D. Colo.) (same).

### Education:

- Wittenberg University, B.A. (2005)
- Thomas M. Cooley Law School, J.D. (2009)

### Representative Cases:

- *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) ($3.65 million common fund settlement finally approved on September 20, 2022);
- *Bowling v. Pfizer, Inc.*, No. C-1-95-256 (S.D. Ohio) (Class Counsel for recipients of defective mechanical heart valves including continued international distribution of settlement funds to remaining class members);
- *Collins Inkjet Corp. v. Eastman Kodak Company*, No. 1:13-cv-0664 (S.D. Ohio) (trial counsel for Collins in an antitrust tying claim resulting in a preliminary injunction against Kodak – a decision that was affirmed by the Sixth Circuit Court of Appeals: *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2015));
- *Day v. NLO, Inc.*, Case No. C-1-90-67 (S.D. Ohio) (Class Counsel for certain former workers at the Fernald Nuclear weapons facility; the medical monitoring program continues);
- *In re Fannie Mae Securities Litigation*, Case No. 1:04-cv-1639 (D.D.C.) (represented Ohio public pension funds as Lead Plaintiffs in Section 10b securities class action litigation resulting in a $153 million court-approved settlement);
- *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, MDL No. 2151 (C.D. Cal.) (represented plaintiffs and prepared class representatives for deposition testimony resulting in a court-approved settlement valued in excess of $1.5 billion);
- *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 09-1967 (N.D. Cal.) (represented NCAA, Olympic, and NBA legend, Oscar Robertson, in antitrust claims against the National Collegiate Athletic Association (NCAA), Collegiate Licensing Company (CLC), and Electronic Arts (EA) leading to a $40 million settlement with EA and CLC and the Court issuing a permanent injunction against the NCAA for unreasonably restraining trade in violation of antitrust law);
- *Linneman v. Vita-Mix Corp.*, No. 14-cv-748, (S.D. Ohio) (Class Counsel for a nationwide class of Vita-Mix blender consumers resulting in a nationwide settlement);

- *Ryder v. Wells Fargo Bank, N.A.*, No. 1:2019-cv-00638 (S.D. Ohio) (member of class counsel in a $12 million settlement on behalf of roughly 1,830 class members);
- *Shy v. Navistar International Corp.*, No. 92-cv-0333-WHR (S.D. Ohio) (class counsel for a class action settlement valued at over $742 million);
- *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio) ($4.25 million common fund settlement); and,
- *Williams v. Duke Energy*, No. 1:08-cv-00046 (S.D. Ohio) (representing class of energy consumers against energy provider in complex antitrust and RICO class action resulting in the court granting final approval of an $80.875 million settlement).

**Community Involvement:**

- Cincinnati Academy of Leadership for Lawyers (CALL), Class XXI, *Participant* (2017)
- Cincinnati Chamber of Commerce C-Change Class 9, *Participant* (2014)
- Cincinnati Chamber of Commerce, *Ambassador* (2014)
- Cincinnati Athletic Club, *President* (2015-2017)
- Cincinnati Athletic Club, *Vice President* (2014-2015)
- Cincinnati Bar Association, Board of Trustees, *Trustee* (2019-present)
- Cincinnati Bar Association, Board of Trustees, *Executive Committee* (2021-present)
- Cincinnati Bar Association, Board of Trustees, *Secretary* (2023-present)
- Cincinnati Bar Association, *Membership Services & Development Committee* (2014-present)
- Cincinnati Bar Association, *Run for Kids Committee* (2009-2014)
- Cincinnati Bar Association, *Social Committee* (2011-2014)
- Clermont County Humane Society, *Board Member* (2014-2017)
- Clermont County Humane Society, *Legal Adviser* (2017-present)
- Potter Stewart Inn of Court, *Executive Director* (2021-present)
- Summit Country Day High School, *Mock Trial Adviser* (2013-2016)
- St. Peter in Chains, Cathedral, Parish Council (2014-2017)

**Recognitions:**

- Super Lawyers, Rising Star (2014 – 2022)
- Super Lawyers, Super Lawyer (2022-present)
- Best Lawyers in America, Commercial Litigation (2020-present)
- Wittenberg University Outstanding Young Alumnus Award (2014)
- Cincinnati Bar Association, Young Lawyers Section Professionalism Award (2015)
- JDRF Bourbon & Bow Tie Bash, *Young Professional (Volunteer) of the Year* for the Flying Pig Marathon (2016)
- Cincinnati Business Courier, Forty Under 40 (2019)
- Cincinnati Cystic Fibrosis Foundation, Cincinnati's Finest Honoree (2020)

**Courts Admitted:**

- State of Ohio (2009)
- United States District Court, Southern District of Ohio (2010)
- United States District Court, Northern District of Ohio (2010)
- United States District Court, Eastern District of Michigan (2021)
- United States District Court, District of Colorado (2022)
- United States District Court, Eastern District of Wisconsin (2022)
- United States District Court, Western District of Michigan (2023)
- United States District Court, District of Nebraska (2023)
- United States Court of Appeals, Sixth Circuit (2018)

## DYLAN J. GOULD

Dylan is an associate attorney at Markovits, Stock & DeMarco. Dylan's practice primarily focuses on class action and complex civil litigation with an emphasis on cases involving consumer fraud and data privacy. He also has experience with matters related to sports & entertainment, personal injury, commercial law, civil conspiracy, and civil litigation under the RICO Act. At the University of Cincinnati College of Law, where he spent multiple semesters on the Dean's Honors List, Dylan was selected to the Trial Practice and Moot Court teams, participating in mock trial and appellate court competitions with law students across the country. Upon graduation, Dylan joined Markovits, Stock & DeMarco, where he quickly gained valuable experience in nearly every facet of the litigation process while skillfully guiding several cases to final judgment, including as a court appointed member of class counsel in multiple actions gaining final approval of class action settlement. In recognition of his achievements, Dylan was named an Ohio Super Lawyers Rising Star in 2021 and 2023. Aside from his litigation practice, Dylan is also a Certified Contract Advisor with the National Football League Players Association.

### Education:

- University of Colorado at Boulder, B.A. (2015)
- University of Cincinnati, J.D. (2018)

### Courts Admitted:

- State of Ohio (2018)
- United States District Court, Southern District of Ohio (2019)
- United States District Court, Northern District of Ohio (2022)
- United States District Court, Eastern District of Wisconsin (2022)
- United States District Court, District of Colorado (2023)
- United States Court of Appeals, Sixth Circuit (2023)

### Representative Cases:

- *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378 (S.D. Ohio 2023) (granting class certification of contested claims in complex civil RICO action and appointing Mr. Gould as a member of class counsel);
- *Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2023 WL 6443122, at *8 (S.D. Ohio Oct. 3, 2023) (granting final approval of $750,000 settlement and appointing Mr. Gould as member of class counsel)
- *Voss v. Quicken Loans*, No. A 2002899, 2023 WL 1883124 (Feb. 8, 2023 Ohio Com.Pl.) (granting class certification of contested claim under Ohio law and appointing Mr. Gould as member of class counsel);
- *Lutz v. Electromed, Inc.*, No. 21-cv-2198 (D. Minn.) (court appointed member of class counsel in data breach action that recently gained final approval of $825,000 non-reversionary settlement)
- *Abrams v. Savannah Coll. of Art & Design, Inc.*, No. 1:22-CV-04297 (N.D. Ga.) (court appointed member of class counsel in data breach action that recently gained final approval of $375,000 settlement);
- *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-02070-MHW-EPD (S.D. Ohio) (court appointed Interim Co-Lead Counsel in pending data breach action);
- *Anderson v. Fortra LLC*, No. 0:23-cv-00533 (SRN/DTS) (D. Minn.) (court appointed member of Executive Committee Counsel in pending data breach action with millions of alleged victims).
- *In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS (E.D. Wis.) (court appointed member of class counsel in data privacy action that recently gained preliminary approval of $12,225,000 settlement)

### Affiliations:

Cincinnati Bar Association                    Ohio State Bar Association

## JUSTIN C. WALKER

Justin C. Walker is Of Counsel at Markovits, Stock & DeMarco. Justin's practice areas are focused on complex civil litigation and constitutional law, with an emphasis on with an emphasis on cases involving consumer fraud and data privacy. Before joining Markovits, Stock & DeMarco in April 2019, Justin practiced at the Finney Law Firm, a boutique law firm specializing in complex litigation and constitutional law. At the beginning of his legal career, Justin served as a judicial extern for Senior United States District Judge Sandra S. Beckwith before taking a full-time position as a law clerk and magistrate in the Hamilton County Ohio Court of Common Pleas for the Honorable Norbert A. Nadel. After completing his clerkship, Justin took a position as a prosecutor, serving as first chair for multiple jury trials. Justin then entered private practice, shifting his practice to focus on litigation matters.

### Education:

- Miami University, B.S. (2001)
- University of Cincinnati, J.D. (2005)

### Courts Admitted:

- State of Ohio (2005)
- U.S. Court of Appeals, 6th Circuit (2017)
- U.S. District Court, Southern District of Ohio (2008)
- U. S. District Court, Northern District of Ohio (2023)
- U.S.  District Court, Western District of Michigan (2023)
- U.S. District Court for the District of Colorado (2023)
- U.S. Bankruptcy Court, Southern District of Ohio (2009)

### Representative Cases:

- *Abrams v. Savannah Coll. of Art & Design, Inc.*, No. 1:22-CV-04297 (N.D. Ga.) (court appointed member of class counsel in data breach action that recently gained final approval of $375,000 settlement);
- *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) (court appointed member of class counsel in $3.65 million common fund settlement finally approved on September 20, 2022);
- *Voss v. Quicken Loans*, No. A 2002899, 2023 WL 1883124 (Feb. 8, 2023 Ohio Com.Pl.) (court appointed member of class counsel where Court granted class certification of contested claim under Ohio law);
- *Linneman v. Vita-Mix Corp.*, Case No. 15-cv-748, United States District Court, Southern District of Ohio (Co-Class Counsel for a nationwide class of Vita-Mix blender consumers resulting in a nationwide settlement).
- *Baker v. City of Portsmouth*, Case  No. 1:14-cv-512, 2015 WL 5822659  (S.D. Ohio Oct. 1, 2015)  (Co-Counsel for a class of property owners, the Court ruled that City violated the Fourth Amendment when it required property owners to consent to a warrantless inspection of their property or face a criminal penalty where not valid exception to the warrant requirement exists).
- *E.F. Investments, LLC v. City of Covington, Kentucky*, Case No. 17-cv-00117-DLB-JGW, United States District Court, Eastern District of Kentucky (Lead Counsel on case brought on behalf of local property owners, contending that City's rental registration requirements violated the Fourth Amendment resulting in a settlement).
- *State of Ohio ex rel. Patricia Meade v. Village of Bratenahl*, 2018-04409, Supreme Court State of Ohio (Co-Counsel on behalf of local taxpayer contending that Defendant's violated Ohio Open Meetings Law).
- *Dawson v. Village of Winchester*, United States District Court, Southern District of Ohio (Lead Counsel represented Plaintiff claiming Federal Civil Rights violations due to unconstitutional arrest and detainment).

### Affiliations and Presentations:

- Cincinnati Bar Association

- Clermont County Bar Association
- American Association for Justice
- "Municipal Bankruptcy: Chapter 9 – Should Cincinnati Consider Filing for Bankruptcy"
- "Ohio CLE Introduction to Bankruptcy for Lawyers CLE"

## JONATHAN T. DETERS

Jon is a Cincinnati native whose legal practice is focused on complex civil litigation, class action litigation, personal injury law, and sports & entertainment law. Jon has been a litigator since the start of his career, and his clients have included individuals, businesses, local governments, and government officials. Jon's experience serving as both plaintiff and defense counsel make him uniquely qualified and well-suited to represent individual and corporate clients in litigation. Jon has been designated as an Ohio Super Lawyers "Rising Star" from 2019-present, which is a distinction awarded to less than 2.5% of Ohio attorneys under the age of 40.

Before joining Markovits, Stock & DeMarco in January 2022, Jon practiced at Schroeder, Maundrell, Barbiere & Powers, an Ohio law firm specializing in civil litigation, personal injury, and constitutional law. While in law school, Jon served as a constable in the Hamilton County Ohio Court of Common Pleas for the Honorable Steven E. Martin and worked as law clerk at the Law Office of Steven R. Adams.

### Education:

- Xavier University, Cincinnati, Ohio, Honors Bachelor of Arts (2012)

- Salmon P. Chase School of Law at Northern Kentucky University, J.D. (2015)

### Representative Cases:

- *Baker v. Carnine*, No. 1:19-CV-60 (2022), United States District Court, Southern District of Ohio

- *Jones v. Vill. of Golf Manor,* No. 1:18-CV-403 (2020), United States District Court, Southern District of Ohio

- *Vaduva v. City of Xenia*, 780 F. App'x 331 (2019), United States Court of Appeals, Sixth Circuit

- *Gillispie v. Miami Twp.*, No. 3:13-CV-416 (2017), United States District Court, Southern District of Ohio

- *City of Mt. Healthy v. Fraternal Ord. of Police, Ohio Lab. Council, Inc*., 101 N.E.3d 1163 (2017), Ohio First District Court of Appeals

### Community Involvement:

- Cincinnati Bar Association, *Member*
- Ohio Bar Association, *Member*
- Boy Hope Girls Hope of Cincinnati, *Young Professionals Board Member*
- Board of Trustees of the New St. Joseph Cemetery, Cincinnati, Ohio, *Member*

### Courts Admitted:

- State of Ohio
- United States District Court, Southern District of Ohio
- United States District Court, Northern District of Ohio
- United States Court of Appeals, Sixth Circuit

## CHRISTOPHER D. STOCK

Chris's legal practice focuses on securities class action and multi-district products liability litigation, as well as appellate advocacy. Serving as a judicial law clerk for Ohio Supreme Court Justice Terrence O'Donnell gave Chris invaluable insight into how courts synthesize and deconstruct legal arguments. Since then, Chris has briefed and argued numerous cases before the United States Court of Appeals for the Sixth Circuit, the Ohio Supreme Court, and Ohio appellate courts, including obtaining a rare summary reversal from the United States Supreme Court.

Chris also served as both Deputy First Assistant Attorney General and Deputy State Solicitor for Ohio Attorney General Jim Petro. In these positions, Chris was principal counsel to the Attorney General on a wide variety of legal and policy-oriented issues, including numerous constitutional and regulatory matters arising from state agencies, boards, and commissions. Prior to his service in state government, Chris was an attorney at a 500-lawyer nationally-recognized law firm. He has also received multiple designations as an Ohio Super Lawyers "Rising Star."

### Education:

- The Ohio State University, BA (1997)
- The Ohio State University, Moritz College of Law, J.D. (2002)

### Significant Cases:

- *In re Fannie Mae Securities Litigation,* Case No. 1:04-cv-1639 (D.D.C.). Represented Ohio public pension funds as Lead Plaintiffs in Section 10b-5 securities class action litigation.
- *Ohio Public Employees Retirement System v. Freddie Mac, et al.,* Case No. 4:08-cv-160 (N.D. Ohio). Representing Ohio public pension funds as Lead Plaintiffs in Section 10b-5 securities class action litigation.
- *Williams v. Duke Energy,* Case No.: 1:08-CV-00046 (S.D. Ohio). Represented class of energy consumers against energy provider in complex antitrust and RICO class action.
- *Slaby v. Wilson,* Hamilton County Court of Common Pleas. Represented two private individuals who were falsely accused by a County Commissioner of murdering their child and covering up the child's death (as well as sexual abuse of child).
- *Kelci Stringer, et al. v. National Football League, et al.,* United States District Court, Southern District of Ohio, Western Division. Represented professional football player against NFL and helmet manufacturer in wrongful death/products liability litigation related to professional football player's death.
- *Susan B. Anthony List v. Driehaus,* United States District Court, Southern District of Ohio, Western Division. Represented former Congressman in defamation action against organization who published false statements about former Congressman's voting record and alleged influence over organization's commercial activities.
- *Mitchell v. Esparza,* Case No. 02-1369 (United States Supreme Court). Obtained summary reversal of Sixth Circuit decision on Eighth Amendment capital sentencing issue.
- *Cleveland Bar Association v. CompManagement, Inc.,* Case No. 04-0817 (Ohio Supreme Court). Represented the State of Ohio as amicus in landmark workers' compensation lawsuit.

### Presentations:

- Class Action Boot Camp: The Basics and Beyond (2012).
- Harris Martin Toyota Sudden Unintended Acceleration Litigation Conference: TREAD Act Liability and Toyota (2010).
- Harris Martin BP Oil Spill Litigation Conference: The RICO Act's Application to the BP Oil Spill (2010).

### Affiliations:

- Ohio State Bar Association

- Cincinnati Bar Association

**Courts Admitted:**

- State of Ohio (2002)
- United States District Court, Southern District of Ohio (2003)
- Sixth Circuit Court of Appeals, Ohio (2003)
- United States District Court, Northern District of Ohio (2007)

# FEDERMAN & SHERWOOD

(An Association of Attorneys and Professional Corporations)

10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone:  405-235-1560
Facsimile: 405-239-2112

212 W. Spring Valley Road
Richardson, Texas 75081
Telephone:  214- 696-1100
Facsimile: 214-740-0112

## FIRM RESUME

**WILLIAM B. FEDERMAN.** *Education*:  Boston University (B.A., cum laude, 1979); University of Tulsa (J.D., 1982); Phi Alpha Delta (Treasurer, 1980-1982).  *Admitted to practice*: United States District Courts for the following Districts:  Western, Northern and Eastern, Oklahoma; Eastern and Southern, New York; Southern, Northern, Eastern and Western, Texas; Eastern and Western, Arkansas; District of Columbia; District of Colorado; Northern, Ohio; District of Nebraska; Eastern District of Michigan; Eastern District of Wisconsin; United States Court of Appeals for the following Circuits: First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh and Federal; and United States Supreme Court. *Lectures/Publications*: "*Class Actions, New Rules and Data Breach Cases,*" 40th *Annual OCBA Winter Seminar 2019; "A Case Study of Ethical Issues in Complex Litigation and Trends in Class Certification,*" 39th Annual OCBA Winter Seminar, 2018; "*Talkin' About Insurance Coverage and Complex Litigation: What Every Lawyer and Client Should Know,*" 38th Annual OCBA Winter Seminar, 2017; "*Securities Litigation: Using Data to Make the Case,*" by Bloomberg BNA, 2016; "*The Changing Landscape for Prosecution of Financial Claims Involving Insolvent Companies*" 37th Annual OCBA Winter Seminar, 2016; "*Current Status of Securities Class Actions: Where are the Courts Taking Us?*" Houston Bar Association, 2014.  "*Class & Derivative Actions and Securities Litigation,*" 2013 Annual Meeting of the American Bar Association; "*Litigation and Employment Law Update,*" Securities Industry Association Compliance and Legal Division; "*Inside a Disclosure Crisis*", 30th Annual Northwest Securities Institute Annual Meeting and sponsored by the Washington Bar Association; "*Managing Directors' Liability,*" 3rd Annual Energy Industry Directors Conference and sponsored by Rice University; "*Executive Liability - 2009 D & O Market Trends,*" Chartis Insurance; "*Derivative Actions and Protecting the Corporation – Critical Issues in Today's Banking,*" Oklahoma Bar Association and the Oklahoma Bankers Association; "*Arbitration - What Is It?  Why Should a Lawyer Suggest or Use It?,*" Oklahoma Bar Association; "*The Attorney and Accountant as Targets in Failed Financial Institution Litigation,*" American Bar Association Trial Practice Committee; "*Effective Arbitration in the 1990's - Adapting to Build a Successful Practice,*" Oklahoma County Bar Association; "*Current Issues in Direct Investments and Limited Partnerships: The Litigation Scene From All Perspectives,*" American Bar Association Litigation Section; "*Stockbroker Litigation and Arbitration,*" Securities Arbitration Institute. Author: "*Who's Minding the Store: The Corporate Attorney-Client Privilege,*" 52 O.B.J. 1244, 1981; "*Potential Liability From Indirect Remuneration in Private Oil and Gas Offerings,*" 11 Sec. Reg. L.J. 135, 1983; "*Capitalism and Reality Meet in the Courts. . . Finally,*" 59 O.B.J. 3537, 1987; "*Class Actions, New Rules & Data Breach Cases,*" Annual OCBA Winter Seminar, 2019. *Membership*: Arbitration Panel, New York Stock Exchange; Federal Bar Association; Oklahoma County Bar Association (Committee on Professionalism, 1987-1990); Oklahoma Bar Association (Civil Procedure/Evidence Code, Lawyers Helping Lawyers Assistance Program and Rules of Professional Conduct Committees, 2017-2020); American Bar Association (Committee on Securities Litigation and Corporate Counsel); American Inns of Court (Barrister 1990-1993 and Master 2002-2004); inducted into the Outstanding Lawyers of America, 2003; received the Martindale-Hubbell peer review rating of AV Preeminent in both ethical standards and legal ability; recognized as one of the "Top Lawyers of 2013" for excellence and achievements in the legal community; Litigation Counsel of America (Trial Lawyer & Appellate Lawyer Honorary Society). *Awards/Honors*:  Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2018 (Global Law Experts Annual Awards); Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2019, 2020 (Corporate INTL Magazine); Oklahoma Super Lawyers list by Thomson Reuters – 2019; Recognized for Exceptional Service and Outstanding Performance on behalf of the Federal Bar

FEDERMAN & SHERWOOD
Page 2

Association (Oklahoma City Chapter) Pro Bono Program – 2018-2019, 2020, Oklahoma Super Lawyer for 2022.

**STUART W. EMMONS. (In Memoriam)** *Education*: University of Oklahoma (J.D., 1987, with distinction); University of Oklahoma (B.B.A., Accounting, 1984, with distinction). *Admitted to practice*: 1987, Oklahoma; 1987, U.S. District Court for the Western District of Oklahoma; 1990, U.S. District Court for the Northern District of Oklahoma; 1992, U.S. Court of Appeals, Tenth Circuit; 1994, U.S. Court of Appeals, Eighth Circuit; U.S. Patent and Trademark Office; 2002, U.S. District Court for the District of Colorado; U.S. District Court for the Southern District of Texas; 2003, U.S. Court of Appeals, Second Circuit; 2004, U.S. District Court for the Northern District of Texas; U.S. Court of Appeals, Fifth Circuit; 2005, United States Supreme Court; 2005 U.S. Court of Appeals, Fourth Circuit; 2015, U.S. Court of Appeals, First Circuit; 2016, U.S. Court of Appeals, Ninth Circuit and U.S. Court of Appeals for the First Circuit.  1988-1989, Law Clerk to the Hon. Layn R. Phillips, U.S. District Court for the Western District of Oklahoma.  *Published Decisions:  American Fidelity Assurance Company v. The Bank of New York Mellon,* 810 F.3d 1234 (10th Cir. 2016); *Paul Spitzberg v. Houston American Energy Corporation, et al.*, 758 F.3d 676 (5th Cir. 2014); *Patipan Nakkhumpun v. Daniel J. Taylor, et al.,* 782 F.3d 1142 (10th Cir. 2015); *Membership*: Oklahoma County and Oklahoma Bar Associations.

**SARA E. COLLIER.**  *Education*:  Oklahoma Christian University (B.S. 2000); Oklahoma City University School of Law (J.D., 2004). *Admitted to practice*: Oklahoma; 2005, U.S. District Courts for the Western, Eastern and Northern Districts of Oklahoma; 2007, U.S. District Court for the Southern District of Texas; and 2007, United States Court of Appeals for Veterans Claims in Washington, DC. *Membership*: Oklahoma Bar Association, American Bar Association.

**KENNEDY M. BRIAN**. *Education:* University of Central Oklahoma (B.M. in Musical Theater, 2018, cum laude; Minor in Real Estate Finance), University of Oklahoma (J.D., 2021) (Dean's Honor Roll; Academic Achievement Award, Trial Techniques; American Indian Law Review). *Admitted to practice:* Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2023. *Membership:* Oklahoma Bar Association, Federal Bar Association, Junior League of Oklahoma City, and Oklahoma County Bar Association. Prior to joining Federman & Sherwood, Ms. Brian was actively involved in litigation on various estate planning, probate, and trust matters.

**MEAGON R. EAGON.** *Education:* East Central University (B.S. in Legal Studies, 2013, with honors; Minor in Mass Communications); Oklahoma City University School of Law (J.D. 2017, with honors; Dean's List; Faculty Honor Roll; Merit Scholar; Class Treasurer; Pro Bono Service Award 2015-2016; Dean's Service Award 2017). *Admitted to practice:* Oklahoma 2017, U.S. District Court for the Eastern District of Oklahoma, U.S. District Court for the Western District of Oklahoma, U.S. District Court for the Northern District of Oklahoma, Chickasaw Nation of Oklahoma, and Choctaw Nation of Oklahoma. *Membership:* Oklahoma County Bar Association, Oklahoma Bar Association, Federal Bar Association. Prior to joining Federman & Sherwood, Ms. Eagon actively practiced in insurance defense and general civil litigation.

**JESSICA A. WILKES.** *Education:* Baylor University School of Law (J.D. 2021, with honors; Dean's Academic Excellence Full-Tuition Scholarship; Baylor Law Review, Technical Editor & Alumni Relations Coordinator; Research Assistant for Dean and Professors; Baylor Barrister Society). *Admitted to practice:* Oklahoma 2021, *Membership:* Oklahoma Bar Association; Oklahoma Bar Association, Women in Law; Friends of Trivera; Junior League of Oklahoma City. Prior to joining Federman & Sherwood, Ms. Wilkes actively practiced in litigation for the Oklahoma Attorney General's Office.

FEDERMAN & SHERWOOD
Page 3

**OF COUNSEL:**

**JOHN CHARLES SHERWOOD.** *Education*: Texas Christian University, (BBA, magna cum laude, 1981); Baylor School of Law (J.D., 1984). *Areas of Practice*: Litigation. *Board Certified*: Civil Trial Law, Personal Injury Trial Law, Texas Board of Legal Specialization. *Organizations*: Texas Trial Lawyers, Association of Trial Lawyers of America, Dallas Trial Lawyers Association, Dallas Bar Association, Former Chairperson of the Solo and Small Firm Section of the Dallas Bar Association (1999), Member of the College of the State Bar of Texas and founding President of Citizens For a Fair Judiciary (Political Action Committee). *Licenses and Courts of Practice*: Member of the State Bar of Texas, National Board of Trial Advocacy, Licensed as a Certified Public Accountant by the Texas State Board of Public Accountancy, admitted to practice before the United States Tax Court, United States District Court, Northern District of Texas, United States Fifth Circuit Court of Appeals, and the United States Supreme Court. *Papers Presented*: *Other People's Money,* Presented to the Dallas Bar Association, Solo and Small Firm Section; *Recognition*:  "Top Attorneys in Texas, Business Litigation," (2012).

**A. BROOKE MURPHY.** *Education*: Oklahoma City University (B.A. summa cum laude, 2005; Robert L. Jones Outstanding Senior Paper Award; Women's Leadership Award); University of Oklahoma College of Law (J.D. 2010, with honors; Dean's List; First Amendment Moot Court Team; Assistant Articles Editor of Oklahoma Law Review). *Admitted to practice*: Oklahoma, 2010; U.S. District Court for the Western District of Oklahoma, 2010; U.S. District Court for the Northern District of Texas, 2010; U.S. District Court for the Eastern District of Wisconsin, 2023; Tenth Circuit Court of Appeals, 2014; First Circuit Court of Appeals and Ninth Circuit Court of Appeals, 2016; Second Circuit Court of Appeals, 2021. *Published Decisions: Paul Spitzberg v. Houston American Energy Corporation, et al.*, 758 F.3d 676 (5th Cir. 2014); *Patipan Nakkhumpun v. Daniel J. Taylor, et al.*, 782 F.3d 1142 (10th Cir. 2015); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117 (C.D. Cal. 2018); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999 (N.D. Cal. 2020); *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264 (S.D.N.Y. 2021). *Publication*: *Credit Rating Immunity? How the Hands-Off Approach Toward Credit Rating Agencies Led to the Subprime Credit Crisis and the Need for Greater Accountability*, 62 Okla. L. Rev. 735 (2010). *Membership*: Oklahoma Bar Association. *Recognition: Oklahoma Super Lawyers*, "Rising Star," 2020, 2021, 2022.

**JOSHUA D. WELLS.** *Education*: Oklahoma Baptist University (B.A. 2004); Oklahoma City University College of Law (J.D. 2008) (Dean's List, Faculty Honor Roll, OCU American Trial Lawyers Association Moot Court Team, 2008; Staff Member, Law Review, 2006-07; Executive Editor, Law Review, 2007-08). *Admitted to practice*: Oklahoma, 2008; U. S. District Court for the Western District of Oklahoma; 2009, U.S. District Court for the Eastern District of Oklahoma; 2011, U.S. District Court for the Northern District of Oklahoma; 2012, U.S. Court of Appeals for the Tenth Circuit; 2016, U.S. Court of Appeals, Fourth Circuit. *Membership*: Oklahoma Bar Association; Federal Bar Association; American Bar Association. *Publication*:  *Stuck in the Mire: The Incomprehensible Labor Law,* 34 Okla. City U.L. Rev. 131 (2009). *Experience*:  Research Assistant to J. William Conger, General Counsel and Distinguished Lecturer of Law, Oklahoma City University and President of the Oklahoma Bar Association (2007-08). General Counsel for Reaching Souls International (2013-2016). Mr. Wells has significant experience in complex and class action litigation in various state and federal courts, with more than a decade of experience protecting consumer and shareholder rights. Mr. Wells knows how to efficiently prosecute complex cases to conclusion and practices in areas of estate planning, probate, and guardianships for both children and adults. He is the recipient of the Federal Bar Association Pro Bono Exceptional Service Award (2019) and is a leader in his church.

FEDERMAN & SHERWOOD
Page 4

### PARALEGALS:

**SHARON J. KING.**  Ms. King has worked in the legal community for over twenty years, after having worked in the securities and insurance industry for over fifteen years. She primarily works on insurance and civil litigation.

**JANE E. ADAMS.** Mrs. Adams has over 25 years of Administrative and Finance experience focusing her career on Human Resources.  Additionally, she has first-hand experience with FEMA response as well as government contractual administration.

**TIFFANY R. PEINTNER.** Mrs. Peintner has worked in the legal community for over ten years. Before joining Federman & Sherwood, Mrs. Peintner worked in patent law, oil and gas, probate, banking and real estate, family law, personal injury and insurance defense. She works in securities and civil litigation for the firm.

**FRANDELIND V. TRAYLOR.**  Mrs. Traylor has worked in the legal community for over fifteen years. She provides class action, securities and derivative litigation, and product liability support for the firm.

**LACRISTA A. BAGLEY.** Ms. Bagley has been in the legal field for twenty-one years. Before joining Federman & Sherwood, Ms. Bagley worked primarily in bankruptcy law that focused on Chapter 11's and corporate liquidations, as well as estate planning, family law, civil defense, personal injury and medical malpractice.

### LAW CLERK:

**TANNER R. HILTON.** _Education:_ Texas A&M University (B.S. in Political Science, 2019); Oklahoma City University School of Law (J.D., 2022, Dean's List Spring of 2021; Order of the Barristers; Native American Law Student Association Moot Court Team, 2020-2022; CALI Award for Secured Transactions (2021)). Mr. Hilton graduated from Oklahoma City University School of Law in May of 2022 and sat for the Uniform Bar Exam in July of 2023.

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| CONSUMER CLASS ACTIONS | COURT |
|---|---|
| Albany ENT & Allergy | Supreme Courts of the State of New York, Albany County |
| Altice USA, Inc. (Data Breach) | USDC Southern District of New York |
| Artech, LLC (Data Breach) | USDC Northern District of California |
| AT&T Services Inc. (Class Action) | USDC Northern District of Texas |
| Avem Health Partners, Inc. (Data Breach) | USDC Southern District of Oklahoma |
| Brinker International, Inc. (Chili's) (Data Breach) | USDC Middle District of Florida |
| Burgerville, LLC (Data Breach) | Circuit Court, State of Oregon, Multnomah County |
| Carvin Wilson Software, LLC | USDC District of Arizona |
| CentralSquare Technologies, LLC (Data Breach) | USDC Southern District of Florida |
| Christie Business Holdings Company PC (Data Breach) | USDC Central District of Illinois |
| Dakota Growers Pasta Company, Inc. (Food Mislabeling) | USDC District of Minnesota/District of New Jersey |
| Filters Fast, LLC (Data Breach) | USDC Western District of Wisconsin |
| Hy-Vee, Inc. (Data Breach) | USDC Central District of Illinois |
| LeafFilterNorth, LLC/LeafFilter North of Texas, LLC (Data | USDC Western District of Texas |
| Lime Crime, Inc. (Data Breach) | USDC Central District of California |
| Medical Review Institute of America, LLC (Data Breach) | USDC District of Utah |
| Mednax Services, Inc. (Data Breach) | USDC Southern District of Florida |
| Physician's Business Office, Inc. (Data Breach) | In the Circuit Court of Wood County, West Virginia |
| PracticeMax (Data Breach) | USDC District of Arizona |
| OneTouchPoint (Data Breach) | USDC Eastern District of Wisconsin |
| Smile Brands (Data Breach) | USDC Central District of California |
| Snap Finance (DataBreach) | USDC District of Utah |
| Solara Medical Supplies, LLC (Data Breach) | USDC Central District of California |
| Wichita State University (Data Breach) | USDC District of Kansas |
| Wing Financial Services LLC (Data Breach) | USDC Northern District of Oklahoma |
| Yuma Regional Medical Center (Data Breach) | USDC District of Arizona |
| **SHAREHOLDER DERIVATIVE CASES** | |
| Abercrombie & Fitch Company | USDC Southern District of Ohio |
| American Superconductor Corporation | Superior Court, Commonwealth of Massachusetts |
| Antares Pharma, Inc. | USDC District of New Jersey |
| Arrowhead Research Corporation | Superior Court, State of California, County of Los Angeles |
| Carrier Access Corporation | USDC District of Colorado |
| Catalina Marketing Corporation | Chancery Court of the State of Delaware |
| Cell Therapeutics, Inc. | USDC Western District of Washington |
| Computer Associates | USDC Eastern District of New York |
| Delcath Systems, Inc. | USDC Southern District of New York |
| Dendreon Corporation | USDC Western District of Washington |
| Digital Turbine, Inc. | USDC Western District of Texas |
| Doral Financial Corporation | USDC Southern District of New York |
| Dynavax Technologies Corporation | Superior Court of the State of California; county of Alameda |
| First BanCorp. | USDC District of Puerto Rico |
| Flowers Foods, Inc. | USDC Middle District of Georgia |
| Genta, Inc. | USDC District of New Jersey |
| GMX Resources, Inc. | District Court of Oklahoma County, Oklahoma |
| Great Lakes Dredge & Dock Corporation | Circuit Court of Illinois, Dupage County Chancery Division |
| Host America Corporation | USDC District of Connecticut |
| Motricity Inc. | USDC Western District of Washington |
| NutraCea | Superior Court of Maricopa County, Arizona |
| Nuverra Environmental Solutions, Inc. | Superior Court of Maricopa County, Arizona |
| Nyfix, Inc. | USDC District of Connecticut |
| OCA, Inc. | USDC Eastern District of Louisiana |
| ONEOK, Inc. | District Court of Tulsa County, Oklahoma |
| PainCareHoldings, Inc. | USDC Middle District of Florida |
| Seitel, Inc. | USDC Southern District of Texas |
| Spectrum Pharmaceuticals, Inc. | USDC District of Nevada |
| The Spectranetics Corporation | USDC District of Colorado |
| ValueClick, Inc. | USDC Central District of California |
| Zix Corporation | USDC Northern District of Texas |
| **SECURITIES CLASS ACTIONS** | |
| Amyris, Inc. | USDC, Northern District of California |
| Bellicum Pharmaceuticals, Inc. | USDC Southern District of Texas |
| Broadwind Energy, Inc. | USDC Northern District of Illinois |
| China Valves Technology, Inc. | USDC Southern District of New York |
| Cryo-Cell International, Inc. | USDC Middle District of Florida |
| Delta Petroleum, Inc. | USDC District of Colorado |
| Direxion Shares ETF Trust | USDC Southern District of New York |
| Ener1, Inc. | USDC Southern District of New York |
| Exide Technologies | USDC Central District of California |
| Galena Biopharma, Inc. | USDC, District of New Jersey |

| | |
|---|---|
| Houston American Energy Corp. | USDC Southern District of Texas |
| Image Innovations Holdings, Inc. | USDC Southern District of New York |
| IZEA, Inc. | USDC Central District of California |
| Motive, Inc. | USDC Western District of Texas |
| Quest Energy Partners LP | USDC Western District of Oklahoma |
| Secure Computing Corporation | USDC Northern District of California |
| Superconductor Technologies, Inc. | USDC Central District of California |
| UTi Worldwide, Inc. | USDC Central District of California |
| Unistar Financial Service Corp. | USDC Northern District of Texas |
| **MDL PROCEEDINGS** | |
| In re: Anthem, Inc. (Data Breach–Participating Counsel) | USDC, Northern District of California |
| In re: Equifax, Inc. (Data Breach–Participating Counsel) | USDC Northern District of Georgia |
| In re: Farmers Insurance Co. | USDC Western District of Oklahoma |
| In re: Home Depot, Inc. (Executive Committee) | USDC Northern District of Georgia |
| In re: Mednax Services Inc. (Data Breach – Co-Lead Counsel) | USDC Southern District of Florida |
| In re: Premera Blue Cross (Data Breach–Participating Counsel) | USC, District of Oregon |
| In re: Samsung Electronics America, Inc. | USDC Western District of Oklahoma |
| **DEAL CASES (MERGERS)** | |
| Easylink Services International Corp. | Superior Court of Gwinnett County, Georgia |
| Genon Energy, Inc. | Chancery Court of the State of Delaware |
| Lawson Software, Inc. | Chancery Court of the State of Delaware |
| Network Engines, Inc. | Chancery Court of the State of Delaware |
| Paetec Holding Corp. Shareholder Litig. | Chancery Court of the State of Delaware |
| Williams Pipeline Partners, L.P. | District Court of Tulsa County, Oklahoma |
| Xeta Technologies, Inc. | District Court of Tulsa County, Oklahoma |
| **ERISA LITIGATION** | |
| Winn-Dixie Stores | USDC Middle District of Florida |

7/13/2023



Morgan & Morgan is a leading civil trial law firm representing consumers and commercial clients nationwide. With over 800 lawyers, and more than 3,000 non-lawyer employees, Morgan & Morgan is the largest plaintiffs' firm in the nation. Morgan & Morgan maintains over offices throughout the United States. Among its lawyers are former state attorney generals and present and former members of various state legislatures.

Morgan & Morgan has a dedicated Complex Litigation Group staffed with lawyers, paralegals, and retired FBI agents serving as investigators committed to representing consumers in complex litigation, MDL proceedings and class action cases throughout the country. It has achieved many remarkable results in class litigation, including the settlement of *In re Black Farmers Discrimination Litigation*, no. 08-0511 (D.C. Oct. 27, 2017), where one of its partners served as co-lead. The case resulted in a settlement with the United States Government in the amount of $1.2 billion for African American farmers who had been systematically discriminated against on the basis of race, in violation of the Fifth Amendment to the United States Constitution, the Equal Credit Opportunity Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act. Morgan & Morgan has assembled a talented team of lawyers:

***John A. Yanchunis*** leads the class action section of the law firm. His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., S. D. Tex.—has concentrated on complex litigation and spans over 40 years, including consumer class actions for more than two-thirds of that time. As a result of his extensive experience in class litigation, including privacy and data-breach litigation, he regularly lectures nationally and internationally at seminars and symposiums regarding class litigation and privacy litigation.

He has served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. In 2014, he was recognized by the National Law Journal as a trailblazer in the area of privacy litigation, and in 2020, he was recognized by LAW 360 for the second year in a row as one of 4 MVPs in the United States in the area of privacy and cyber security litigation. For his work in the area of privacy litigation, he was awarded lawyer of the year in the state of Florida

by The Daily Business Review.

As a result of his experience in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of his clients.

Mr. Yanchunis began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-Lead Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act (DPPA) against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). See *Fresco v. Automotive Directions, Inc.,* No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk,* No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, I also served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank of America,* No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank and Trust,* No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

He has been appointed and served in leadership positions a number of multidistrict litigation in the area of privacy and data breaches: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.)(settlement for $190,000,000 preliminarily

approved ) *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.) ("Yahoo") (Lead Counsel) (Court approved $117,500,000.00 common fund settlement for approximately 194 million US residents and 270,000 Israeli citizens ); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving $380.5 million fund for 145 million consumers ); *In re: U.S. Office of Personnel Management Data Security Breach Litigation,* 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (motion for preliminary approval of a $60,000,000 common fund ); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers ).

His court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, and to just name a few : *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) ("Facebook") (class certified for 8 million residents , subsequently settlement of the class was approved by the court); *Walters v. Kimpton Hotel & Restaurant,* No. 3:16-cv-05387 (N.D. Cal.) ("Kimpton") (Lead Counsel) (class action settlement final approval order entered July 11, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation,* Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June 6, 2019); and Jackson, et al., v. Wendy's International, LLC, No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019); *Henderson v. Kalispell Regional Healthcare*, No. CDV-19-0761 (Montana Eighth Judicial Court – Cascade County) (final approval of class settlement entered January 5, 2021); *In re: Citrix Data Breach Litigation*, No. 19-cv-61350 (S.D. Fla.) (preliminary approval of class action settlement entered on January 26, 2021); *Kuss v. American HomePatient, Inc.,* et al., 18-cv-2348 (M.D. Fla.) (final approval of class action settlement entered on August 13, 2020); *Fulton-Green v. Accolade, Inc.*, 18-cv-274 (E.D. Pa.) (final approval of class action settlement entered September 23, 2019); *Nelson v. Roadrunner Transportation Systems, Inc.,* 18-cv-7400 (N.D. Ill.) (final approval of class action settlement entered September 15, 2020).

His experience in these major data breach matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs in major data breach cases such as Capital One, Yahoo, Kimpton, and Facebook.  In addition, he has defended experts used in these cases and also deposed defense liability and damage experts.

Presently he leads his firm's efforts in two major class cases pending against Google for

data misuse.

As result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation.   He is a frequent lecturer on privacy and class litigation nationally and internationally, including at international conferences, having presented at the University of Haifa's 2019 Class Action Conference, in Haifa, Israel, attended by lawyers, judges and law professors from around the world. In 2020 he lectured on data privacy in Mexico, and in November 2020 and 2021 he presented on class action issues to an international group of lawyers, judges and professors at a symposium in London sponsored by the London Law Society. He is schedule to speak on class action issues in 2022 at two different symposiums in Amsterdam, and two seminars on privacy and cyber security issues in the United States .

While at the University of Florida Mr. Yanchunis was a member of Florida Blue Key and Omicron Delta Kappa.  He received his Juris Doctor degree from the South Texas College of Law in 1980, where he graduated magna cum laude.  During law school, Mr. Yanchunis was a member of the Order of the Lytae, Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal.

**Michael F. Ram.** Mr. Ram is a consumer class action lawyer with 40 years of experience. He graduated cum laude from Harvard Law School in 1982.  He has co-tried several class action trials and frequently lectures on class trials.  In 1992 he was a co-recipient of the Trial Lawyer of the Year Award given by Trial Lawyers for Public Justice for *National Association of Radiation Survivors v. Walters* No. 83-c-1861 (N.D. Cal.) (tried to class-wide judgment on remand from Supreme Court).

From 1993 through 1997, Mr. Ram was a partner with Lieff, Cabraser, Heimann and Bernstein where he represented plaintiffs in several major class actions, including: *Cox v. Shell*, Civ. No 18,844 (Obion County Chancery Court, Tenn.) national class of six million owners of property with defective polybutylene plumbing systems; *In re Louisiana-Pacific Inner-Seal Litigation*, No. 95-cv-879 (D. Oregon) (co-lead counsel) national class of homeowners with defective siding; *ABS Pipe Litigation,* Cal. Judicial Council Coordination Proceeding No. 3126 (Contra Costa County) national class of homeowners.

In 1997, Mr. Ram founded Levy, Ram & Olson which became Ram & Olson and then Ram, Olson, Cereghino & Kopczynski.  He was co-lead counsel in many consumer class actions including a national class of half a million owners of dangerous glass pane gas fireplaces in *Keilholtz et al. v. Superior Fireplace Company*, No. 08-cv-00836 (N.D. Cal. 2008).  He was co-lead counsel for plaintiffs in *Chamberlan v. Ford Motor Company,* No. 03-cv-2628 (N.D. Cal.), a

class action involving defective intake manifolds that generated four published opinions, including one by the Ninth Circuit, 402 F.3d at 950, and settled one court day before the class trial. He was also co-counsel for plaintiffs in a number of other consumer class actions, including: *In re General Motors Corp. Product Liability Lit.* MDL. No. 1896 (W.D. Wash.) (defective speedometers); *Richison v. American Cemwood Corp.,* San Joaquin Superior Court Case No. 005532 defective Cemwood Shakes); *Williams v. Weyerhaeuser,* San Francisco Superior Court Case No. 995787 (defective hardboard siding); *Naef v. Masonite,* Mobile County, Alabama Circuit Court Case No. CV-94-4033 (defective hardboard siding on their homes); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) (approving class action settlement); *McAdams v. Monier, Inc.* (2010) 182 Cal. App. 4th 174 (reversing denial of class certification in consumer class action involving roof tiles); *Gardner v. Stimson Lumber Co.* (King County Wash. No. 2-17633-3-SEA) (defective siding); *Rosenberg v. U-Haul* (Santa Cruz Superior Ct. No. CV-144045 (certified consumer class action for false and deceptive conduct; tried successfully to judgment); *In re Google Buzz User Privacy Litigation*, No. 10-cv-00672-JW (N.D. Cal. 2011) (international class action settlement for false and deceptive conduct); *Whitaker v. Health Net of California, Inc., and International Business Machines Corp,* No. 2:11-cv-0910 KJM DAD (E.D. Cal.) (electronic privacy class action under the California Confidentiality of Medical Information Act); and *In re Kitec Plumbing System Products Liab. Litigation MDL No 2098*, N.D. Texas, No. 09-MD-2098 (MDL class action involving claims concerning defective plumbing systems).

From 2017 to 2020, Mr. Ram was a partner at Robins Kaplan LLP. In August, 2020, Mr. Ram joined Morgan & Morgan to open a San Francisco office for them. He is currently co-lead counsel in numerous consumer class actions, including *Gold v. Lumber Liquidators,* N.D. Cal. No. 14-cv-05373-RS, a certified multistate class action involving bamboo floors, and *Fowler v. Wells Fargo,* N.D. Cal. No. 3:17-cv-02092-HSG, a class action involving interest charges that settled for $30 million. In addition, he is also currently serving on the Plaintiffs' Steering Committee in the *In re Philips CPAP MDL Litigation,* where he is co-chair of the Law and Briefing Committee.

***Jean Sutton Martin.*** Ms. Martin presently serves by appointment as interim co-lead counsel in *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.)($68 million settlement for 15 million class members), *Combs, et al. v. Warner Music Group*, Case No. 1:20-cv-07473-PGG (S.D.N.Y.), *In Re: Ambry Genetics Data Breach Litigation*, No. 20-cv-00791 (C.D. Cal.), and *Johnson, et al. v. Yuma Regional Medical Center*, 2:22-cv-01061-SMB (D. Ariz.). She also serves as a member of the Plaintiffs' Steering Committee for the cases proceeding against LabCorp, Inc. in *In re: American Medical Collection Agency Data Breach Litigation*, 19-md-2904 (D. N.J.). She is a member of the Plaintiffs' Steering Committee in *In re: Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, No. 17-md-2775 (D. Md.) and *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation,* No. 19-md-2921 (D. N.J).

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).

She has served in leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including *inter alia*: *Aguallo, et al. v. Kemper Corp., et al.,* Case No.: 1:21-cv-01883 (N.D. Ill.) (data breach settlement valued at over $17.5 million) (co-lead counsel); *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *Linnins v. HAECO Americas, Inc., et al.*, No. 16-cv-486 (M.D.N.C.) (employee data disclosure) (co-lead counsel); *Torres v. Wendy's International, LLC*, No. 6:16- cv-210 (M.D. Fla.) (data breach) (class counsel); *Fuentes, et al. v. UniRush, LLC, et al.,* No. 1:15- cv-08372 (S.D.N.Y.) (disruption in servicing of financial accounts) (co-lead counsel); *Lewis, et al., v. Green Dot Corp., et al*., No. 2:16-cv-03557 (C.D. Cal.) (disruption in servicing of financial accounts) (class counsel); *Brady, et al. v. Due North Holdings, LLC, et al.*, No. 1:17-cv-01313 (S.D. Ind.) (employee data disclosure) (class counsel); *Foreman v. Solera Holdings, Inc.*, No. 6:17-cv-02002 (M.D. Fla.) (employee data disclosure) (class counsel); *In Re: Outer Banks Power Outage Litigation*, No. 4:17-cv-141 (E.D.N.C.) (extended island power outage due to defective construction practices) (class counsel); and, *McCoy v. North State Aviation, LLC, et al.*, No. 17- cv-346 (M.D.N.C.) (WARN Act violations) (class counsel).

In addition to consumer class actions, Ms. Martin has practiced in the areas of mass tort and catastrophic personal injury litigation. Prior to joining Morgan and Morgan, Ms. Martin ran her own law firm concentrating in consumer class actions and mass tort litigation. She also has served as an adjunct professor at Wake Forest University School of Law.

Ms. Martin received her Juris Doctor degree from Wake Forest University School of Law in 1998, where she served as Editor-in-Chief of the *Wake Forest Law Review*. She obtained eDiscovery certification from the eDiscovery Training Academy at Georgetown Law Center in 2017. Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical Economics in 1989. She earned a Master of International Business from the University of South Carolina in 1991.

Ms. Martin has been honored with the prestigious "AV" rating by Martindale-Hubbell. In 2016, Ms. Martin was selected by her peers as the foremost Litigation attorney in the State of North Carolina for *Business North Carolina Magazine's Legal Elite*, gaining membership in the *Legal Elite* Hall of Fame. In 2015, she was inducted as a Fellow of the Litigation Counsel of America, a prestigious trial lawyer honorary society comprised of less than one-half of one percent of American lawyers. Fellows are selected based upon excellence and

accomplishment in litigation, both at the trial and appellate levels, and superior ethical reputation. For upholding the highest principles of the legal profession and for outstanding dedication to the welfare of others, Ms. Martin has also been selected as a Fellow of the American Bar Foundation, an honorary legal organization whose membership is limited to one third of one percent of lawyers in each state. Since 2012, she has been selected to the Super Lawyers list for North Carolina in the areas of mass torts and class actions, with repeated selection to the Top 50 Women North Carolina.

Before entering law school, Ms. Martin worked with the sales finance team of Digital Equipment Company in Munich, Germany developing sales forecasts and pricing models for the company's expansion into the Eastern European market after the fall of the Berlin wall. She also worked as a practice management consultant for a physician consulting group and as a marketing manager for an international candy manufacturer where her responsibilities included product development, brand licensing, market research, and sales analysis.

Ms. Martin has been a presenter on a variety of topics related to class actions including: *Fantasy Gaming Webinar: FanDuel and DraftKings Litigation*, AAJ (December 2015); *Thinking Outside the Black Box: Drug Cases in the Class Context*, Mass Torts Made Perfect (October 2019); *Mass Torts and MDLs*, Western Alliance Class Action Forum (March 2020); *Consumer Class Actions*, Western Alliance Class Action Forum (March 2022); *How to Maximize Efficiency in Document Production and Review*, Mass Torts Made Perfect (April 2022).

Ms. Martin is a member of the North Carolina bar, having been admitted in 1998. She is also admitted to practice before the United States Supreme Court, the United States Court of Federal Claims, the United States Court of Appeals for the Fourth Circuit, the Western, Middle, and Eastern Districts of North Carolina, and the United States District Court of Colorado.

***Marcio Valladares.*** Mr. Valladares was born in Managua, Nicaragua and immigrated to the United States during Nicaragua's civil war. In 1990, Marcio obtained a Bachelor of Science degree in psychology from the University of Florida. In 1993, he obtained his Juris Doctor degree, *magna cum laude*, from Florida State University. He is pursuing a Masters in Law (LL.M.) degree from Columbia University, focusing on federal and comparative law.

Before joining Morgan & Morgan, Marcio worked in both the public and private sectors. He served as a judicial law clerk to the Honorable Steven D. Merryday, United States District Judge, Middle District of Florida, and then served as a judicial law clerk to the Honorable Susan H. Black, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit. Marcio served as an Assistant United States Attorney for the Middle District of Florida. In the private sector, Marcio practiced commercial litigation and insurance defense at Holland & Knight LLP.

Marcio also worked as in-house counsel for the Mayo Clinic. Marcio is fluent in English and Spanish.

*Marie Noel Appel.* Ms. Appel has dedicated her career to representing consumers in both individual and class action cases involving claims under consumer protection laws and other statutory and common law claims. She earned a B.A. in French from San Francisco State University in 1992 and graduated from University of San Francisco School of Law in 1996.

For most of her career, Ms. Appel has been in private practice litigating class claims related to defective products, mortgage fraud/Truth in Lending violations, unfair business practices relating to manufactured home sales, interest overcharges by the United States on military veterans' credit accounts, and statutory violations by the United States relating to offset of debts beyond the limitations period.

From 2012 to 2019, Ms. Appel left private practice to become the Supervising Attorney of the Consumer Project at the Justice & Diversity Center of the Bar Association of San Francisco which provides free legal services to low-income persons facing consumer issues.

In April 2019, Ms. Appel returned to private practice as Counsel at Robins Kaplan, LLP, then joined Morgan & Morgan in August 2020 where she focuses on class action litigation.

In additional to her legal practice, Ms. Appel is an Adjunct Professor at Golden Gate University School of Law in San Francisco where she teaches legal research and writing, and from 2011 to 2018 supervised students at the Consumer Rights Clinic, in which students performed legal work at the Justice & Diversity Center's Consumer Debt Defense and Education Clinics.

Ms. Appel has a long history of pro bono involvement and currently is a regular volunteer at the Community Legal Assistance Saturday Program, a monthly free legal clinic sponsored by the Alameda County Bar Association. Ms. Appel provides trainings to San Francisco Bay Area legal aid attorneys regarding consumer collection defense and related matters, focusing recently on defense of lawsuits against low-income individuals for unpaid back rent resulting during the COVID-19 pandemic. In the past, Ms. Appel has provided pro bono representation for numerous low-income consumers facing debt collection lawsuits, and volunteered regularly at free legal clinics through the Justice & Diversity Center in San Francisco which, on multiple years, designated her as one of the Outstanding Volunteers in Public Service.

Ms. Appel is admitted to practice in the Ninth Circuit Court of Appeals, and United States District Courts in the Central District of California; the Eastern District of California; the Northern District of California; and the Southern District of California.

***Kenya Reddy.*** Ms. Reddy represents consumers in class action litigation. She graduated from Duke University in 1997 with a degree in political science. In 2000, she received her law degree from the University of Virginia School of Law.  Prior to joining Morgan & Morgan, Ms. Reddy was a shareholder at Carlton Fields, P.A., where her primary areas of practice were antitrust, complex civil litigation, class action defense, and business litigation. She also has experience in including labor and employment, products litigation, ERISA and employee benefits law, insurance, healthcare, and securities litigation.

Ms. Reddy has served as a law clerk for the Honorable Charles R. Wilson, United States Circuit Court Judge, Court of Appeals for the Eleventh Circuit, the Honorable Anne C. Conway, former Chief Judge of the United States District Court for the Middle District of Florida, the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida, and the Honorable Karla R. Spaulding, United States Magistrate Judge, Middle District of Florida.

Ms. Reddy was a guest speaker in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on the topic of standing in data breach cases.  In October 2019, she presented on the topic of third-party litigation funding at the Mass Torts Made Perfect Conference.

Ms. Reddy is admitted to practice in the Northern, Middle, and Southern Districts of Florida.

***Ryan Maxey.***  Mr. Maxey grew up in Tampa, Florida. He attended the University of South Florida, where he obtained Bachelors Degrees in Computer Science and Philosophy.  During and after his undergraduate education, Mr. Maxey developed software and databases for Amalie Oil Company, an automotive lubricant manufacturer located in the Port of Tampa.  Mr. Maxey later attended law school at the University of Florida, graduating *order of the coif* in 2008.

From 2008 to 2011, Mr. Maxey served as a judicial law clerk to the Honorable Elizabeth A. Jenkins, United States Magistrate Judge, University of Florida.  Mr. Maxey then worked at one of the country's largest law firms, Greenberg Traurig, for four years.  In 2015, Mr. Maxey joined Morgan & Morgan's Business Trial Group as a lead attorney handling a variety of business litigation matters.  Mr. Maxey later started his own law practice, litigating claims related to breach of contract, trade secret misappropriation, the FLSA, the FDCPA, and premises liability.

Mr. Maxey was admitted to the Florida Bar in 2008 and is also admitted to practice in the

Middle District of Florida and the Southern District of Florida.

**Ryan J. McGee**. Mr. McGee was born and raised in Tampa, Florida. He studied business economics and history at the University of Florida, where he was a teaching assistant for technology classes in the business school, and received his law degree from Stetson University College of Law, where he was an editor on the *Stetson Law Review*, a research assistant for antitrust and consumer protection laws, and a teaching assistant for Stetson's trial advocacy program.

Ryan began his legal career as a state-appointed prosecutor, where he tried over 50 jury trials to verdict, mostly felonies, as well as a special prosecutor appointed to investigate police officers' deadly use-of-force and corruption within various law enforcement agencies. Ryan also served as a law clerk for two years for the Honorable Elizabeth A. Kovachevich, the former Chief United States District Judge, Middle District of Florida. Before joining Morgan & Morgan, Ryan's practice involved complex business disputes, antitrust, trade secret, data security, and class action investigations and defense-side litigation in state and federal courts across the country.

Since shifting his focus entirely to consumer class action representation, Ryan has been selected as a Florida Super Lawyer Rising Star in 2018 and 2019 in the field of Class Actions, and has extensive privacy and consumer fraud class action experience, having actively participated in the following litigations: *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal.); *Rodriguez v. Google LLC*, No. 3:20-cv-4688-RS (N.D. Cal.); *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.); *In re: Capital One Consumer Data Security Breach Litigation*, No. 1:19-MD-2915-AJT (E.D. Va.); *Schmidt, et al., v. Facebook, Inc.*, No. 3:18-cv-05982 (N.D. Cal.); *In re Google Plus Profile Litigation*, No. 5:18-cv-06164 EJD (N.D. Cal.); *Kuss v. American HomePatient, Inc., et al.*, No. 8:18-cv-02348 (M.D. Fla.); *In re Equifax, Inc. Customer Data Sec. Breach Litigation*, No. 1:17-md-02800 (N.D. Ga.); *Morrow v. Quest Diagnostics, Inc.*, No. 2:17-cv-0948(CCC)(JBC) (D.N.J.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK (N.D. Cal.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.);

Ryan was admitted to the Florida Bar in 2009 and is also admitted to practice in the Northern, Middle, and Southern Districts of Florida.

**Patrick Barthle.** Mr. Barthle was born and raised in Dade City, Florida. He attended the University of Florida where he was admitted to the Honors Program and graduated, *cum laude*, with a double major in History and Criminology in 2009. While at UF, Patrick was inducted into the Phi Beta Kappa Honor Society and served as President of the Catholic Student Center. Patrick attended Washington and Lee University School of Law, graduating *summa cum laude* in 2012; where he was a Lead Articles Editor for the Wash. & Lee Law Review, a member of the Order of

the Coif and the Phi Delta Phi Legal Honor Society, and President of the W&L Law Families organization.

Before joining Morgan & Morgan in 2015, Patrick worked at one of the country's largest law firms, Greenberg Traurig, LLP, and then served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida. Patrick has extensive privacy and consumer fraud class action experiencing, having actively participated in the following litigations: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.C.); *Torres v. Wendy's International, LLC*, No. 6:16-cv-210 (M.D. Fla.); *Morrow v. Quest Diagnostics, Inc*., No. 2:17-cv-0948 (Dist. NJ); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.); *In re The Home Depot, Inc. Customer Data Security Data Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-md-02752-LHK (N.D. Cal.); and *Finerman v. Marriott Ownership Resorts, Inc.*, Case No.: 3:14-cv-1154-J-32MCR (M.D. Fla.).

Patrick was selected as a Florida Super Lawyer Rising Star in 2019 in the field of Class Actions. He is also active in speaking on privacy and class action topics, having spoken in June 2018, at the NetDiligence Cyber Risk Summit on the topic of Unauthorized Use of Personal Data; in November 2018 at the American Association for Justice's Advanced 30(b)(6) Seminar, on the topic of 30(b)(6) Depositions in in Data Breach Cases; and in January 2019 at HarrisMartin's Marriott Data Breach Litigation Conference on that topics of damage models and settlements in data breach cases; and Rule 23(c)(4) classes at the Mass Torts Made Perfect conference.

Mr. Barthle was admitted to the Florida Bar in 2012 and is also admitted to practice in the Middle District of Florida, the Southern District of Florida, and the District of Colorado.

***Francesca Kester.*** Ms. Kester was born and raised in Scranton, Pennsylvania. She attended Marywood University, where she graduated with a major in English Literature, and The Pennsylvania State University's Dickinson School of Law, where she received her Juris Doctor degree in 2017. While at Dickinson, Ms. Kester competed in the American Bar Association's National Appellate Advocacy Competition, where she was awarded the highest honor for her legal brief writing, and the Texas Young Lawyer's National Trial Competition, where she finished as a regional finalist. Ms. Kester also served as Executive Chair of the Dickinson Law Moot Court Board, Founder of the Dickinson Law partnership with Big Brothers Big Sisters, and Student Director of the Bethesda Mission Men's Shelter legal clinic. At graduation, she was honored with the D. Arthur Magaziner Human Services Award for outstanding academic achievement and service to others, the Joseph T. McDonald Memorial Scholarship for excellence in trial advocacy, and the peer-selected Lee Popp Award for her devotion to the legal field.

Ms. Kester interned as a judicial clerk to United States Magistrate Judge Martin C. Carlson while in law school. After graduation, she served for two years as a law clerk to the Honorable James M. Munley in the United States District Court for the Middle District of Pennsylvania. Ms. Kester is a member of the Lackawanna County Bar Association, the Pennsylvania Bar Association, the American Association for Justice, and Order of the Barristers. In 2018 and 2019, she served as the attorney advisor for her alma mater's high school mock trial team, coaching them to a first place finish in the state and ninth in the nation.

Ms. Kester is admitted to practice law in both Pennsylvania and Florida.

*Ra O. Amen.* Mr. Amen was raised in both the California Bay Area and Massachusetts. In 2005, Ra graduated from Stanford University with a B.A. in Economics. After graduating, Ra worked as a Peace Corps volunteer in Morocco teaching English as a second language and business skills to local artisans. Before entering law school, Ra worked for several years in education and in business development for a mobile technology startup. In 2017, he obtained his Juris Doctor degree with Honors from Emory University School of Law. While at Emory Law, he was a Managing Editor of the Bankruptcy Developments Journal, interned at a consumer fraud law practice, and worked in-house with one of the globe's leading metals companies assisting in a diverse array of legal issues ranging from corporate restructuring to international tax and contract disputes. Before joining Morgan & Morgan in 2020, Mr. Amen worked at one of the nation's largest defense law firms in the nation where he specialized in representing clients in complex commercial, administrative, and ecclesiastical disputes.

Ra speaks both English and Spanish, and is an avid guitar player.

Ra was admitted to the Georgia Bar in 2017.

*David Reign.* Mr. Reign is the former Assistant Special Agent in Charge of the Tampa FBI Field office, with nearly 25 years of investigative experience. He has investigated and managed some of the FBI's most complex white-collar crime cases, with an emphasis on health care fraud, public corruption, and financial crimes. As Deputy Chief of the Enron Task Force, he led a team of investigators and analysts in the successful investigation and prosecution of several executives of the Enron Corporation. He received the Attorney General's Award for Exceptional Service for his work on the Enron matter.