William B. Federman
(admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Attorneys For Plaintiffs*

*(Additional Counsel Listed on Signature Page)*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROBERT HOGSED, JUSTIN KNOX, FLOR MEDINA, BRENDA ALLEN, and KATHERINE WITKOWSKI, on behalf of themselves and others similarly situated, | No. 2:22-cv-01261-DLR |
| Plaintiffs, | |
| vs. | *Judge Douglas L. Rayes* |
| PRACTICEMAX, INC., a Delaware corporation, | |
| Defendant. | |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF REQUESTS FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………..… 1

II.  FACTS AND PROCEDURAL HISTORY……………………………………….........2

III. ARGUMENT…………………………………………………………….…..…4

    A.  The Requested Fee is Reasonable Under the Percentage-of- Fund Method…………....5

    B.  The Vizcaino Factors Support the Award Requested………………………….…....6

        1.  Class Counsel achieved a favorable result for the Class…………………..…………...6

        2.  The litigation was risky, complex, and expensive…………………………………...8

        3.  Counsel performed superior quality work to achieve the Settlement……………….9

        4.  Class Counsel worked on a contingent basis……………………………….…..…11

        5.  Fees awarded in comparable cases exceed those requested here……………….......12

        6.  The reaction of the Class supports the fee request………………………….…..14

    C.  A Lodestar Cross-check Confirms the Reasonableness of the Fee Request…………...14

        1.  Class Counsel Should be Reimbursed for Their Litigation Expenses……….….…..15

    D.  The Court should grant a Service Award for each Class Representative……....……..16

IV. CONCLUSION……………………………………………………………….17

i

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3

*Allagas v. BP Solar Int'l, Inc.,*

4

    2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ........................................................ 10

5

*Avila v. LifeLock Inc.,*

6

    2020 WL 4362394 (D. Ariz. July 27, 2020) ........................................................ 13

7

    297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................ 13

8

*Bellinghausen v. Tractor Supply Co.,*

9

    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 11

10

*Boyd v. Bank of Am. Corp.,*

11

    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .................................................... 13

12

*Brown v. 22nd Dist. Agric. Ass'n,*

13

    2017 WL 3131557 (S.D. Cal. July 24, 2017) .................................................... 11

14

*Burden v. Select Quote Ins. Servs.,* No. C,

15

    2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) .................................................... 13

16

*Ching v. Siemens Indus.,*

17

    2014 WL 2926210 (N.D. Cal. June 27, 2014) .................................................. 11

18

*Cicero v. DirecTV, Inc.,*

19

    2010 WL 2991486 (C.D. Cal. July 27, 2010) ...................................................... 5

20

*Dearaujo v. Regis Corp.,*

21

    2017 WL 3116626 (E.D. Cal. July 21, 2017) .................................................... 13

22

*Fernandez v. Victoria's Secret Stores, LLC,*

23

    2008 WL 8150856 (C.D. Cal. July 21, 2008) .................................................... 13

24

*Franco v. Ruiz Food Prods., Inc.,*

25

    2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................................................. 13

26

*Garner v. State Farm Mut. Auto. Ins. Co.,*

27

    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................. 14

28

*Graham v. Capital One Bank (USA), N.A.*,
  2014 WL 12579806 (C.D. Cal. Dec. 8, 2014) ............................................................. 6

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................................. 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................. 10

*Hawthorne v. Umpqua Bank*,
  2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ........................................................... 17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................... 5

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ......................................................... 10

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................ 9

*In re Capacitors Antitrust Litig.*,
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ......................................................... 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ........................................................... 8, 9

*In re Heritage Bond Litig.*, No. 02-ML-,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ...................................................... 6, 9, 14

*In re Lenovo Adware Litig.*,
  2019 WL 1791420 (N.D. Cal. April 24, 2019) ......................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................. 12, 17

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) .............................................................. 5

iii

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 6, 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................................. 5, 17

*In re Pac. Enters. Secs. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................... 12

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2012) ..................................................... 9, 11

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................... 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................................. 11

*In re Yahoo! Inc. Customer Data Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................................................... 16

*Jordan v. Freedom Nat'l Ins. Servs. Inc.*,
  2017 WL 10185526 (D. Ariz. July 20, 2017) ....................................................... 13

*Kissel v. Code 42 Software Inc.*,
  2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) ....................................................... 6, 11, 15

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................... 9

*Laffitte v. Robert Half Int'l, Inc.*,
  1 Cal. 5th 480, 376 P.3d 672 (2016) ..................................................................... 4

*Lee v. JPMorgan Chase & Co.*,
  2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ..................................................... 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................... 8

iv

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................................ 7

*Lozano v. AT&T Wireless Servs., Inc.*,
   2010 WL 11520704 (C.D. Cal. Nov. 22, 2010) ................................................................. 11

*Marshall v. Northrop Grumman Corp.*,
   2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .................................................................... 5

*Mejia v. Walgreen Co.*,
   2021 WL 1122390 (E.D. Cal. Mar. 24, 2021) .................................................................... 15

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009) ..................................................................... 5

*Nwabueze v. AT&T Inc.*,
   2014 WL 324262 (N.D. Cal. Jan. 29, 2014) ....................................................................... 4

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 9

*Pierce v. Rosetta Stone, Ltd.*,
   2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) .................................................................... 2

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................. 16

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .............................................................. 5, 12

*Sevilla v. Aaron's, Inc.*,
   2020 WL 10573205 (C.D. Cal. May 15, 2020) ................................................................... 5

*Singer v. Becton Dickinson Co.*,
   2010 WL 2196104 (S.D. Cal. June 1, 2010) ..................................................................... 13

*Smith v. CRST Van Expedited, Inc.*,
   2013 WL 163293 (S.D. Cal. 2013) ................................................................................... 12

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) .................................................................. 4, 7

*Stuart v. Radioshack Corp.,*
   2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ........................................ 13

*Syed v. M-I, LLC,*
   2017 WL 3190341 (E.D. Cal. July 27, 2017) ........................................ 13

*United States v. Armour & Co.,*
   402 U.S. 673 (1971) ................................................................................. 9

*Van Vranken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ....................................................... 17

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ....................................................... Passim

*Williams v. MGM-Pathe Comms. Co.,*
   129 F.3d 1026 (9th Cir. 1997) ............................................................... 12

*Willner v. Manpower Inc.,*
   2015 WL 3863625 (N.D. Cal. June 22, 2015) ...................................... 15

*Wing v. Asarco Inc.,*
   114 F.3d 986 (9th Cir. 1997) ................................................................. 10

*Wren v. RGIS Inventory Specialists,*
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................ 13

*Zepeda v. PayPal, Inc.,*
   2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ...................................... 10

**<u>Rules</u>**

Fed. R. Civ. P. 23(e) ................................................................................... 4

Federal Rule of Civil Procedure 23(h) ...................................................... 4

**<u>Other Authorities</u>**

*ABA Regulation of Contingency Fees: Money Talks, Ethics Walks,*

   65 Fordham L. Rev. 247 (1996) ............................................................................. 13

Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) .................... 6

I.      **INTRODUCTION**

Counsel for Plaintiffs Robert Hogsed, Justin Knox, Flor Medina, Brenda Allen, and Katherine Witkowski (collectively, "Plaintiffs") negotiated a proposed settlement resolving the claims of individuals who had their full names, Social Security numbers, financial account information and/or credit card information, dates of birth, prescription information, diagnosis information, treatment information, treatment providers, health insurance information, medical information, and Medicare/Medicaid ID numbers ("Private Information"), compromised as a result of a data breach of Defendant PracticeMax, Inc.'s ("Defendant" or "PracticeMax") computer system. (the "Data Security Incident").

The proposed Settlement provides up to $3,000,000.00 in substantial and immediate benefits to the Settlement Class.

Under the Settlement, all Class Members are eligible to receive cash payments, including payments for lost time at a rate of $25 per hour up to three (3) hours, compensation for ordinary out-of-pocket losses up to $500, and compensation for extraordinary out-of-pocket losses up to $3,500 per Settlement Class Member. Doc. 39, Exhibit 1, Settlement Agreement, ("S.A.") ¶ 3.1.

In addition to any monetary recovery, Defendant also agreed to provide Class Members with two years of credit monitoring and identity theft protection services, including $1 million in insurance.  S.A. ¶ 3.2. As this type of credit monitoring protection typically has a retail price of at least $10 per month ($240.00 for two years), and all Settlement Class Members are eligible to receive this benefit, the retail value of this benefit obtained for the Class is significant.

Finally, Plaintiffs and Class Members have and will continue to receive a benefit from substantial business practice changes and remedial measures aimed at preventing further unauthorized access to their sensitive Private Information entrusted to PracticeMax.

Plaintiffs and Defendant mutually agreed that the total costs owed by PracticeMax under the Settlement, including notice and settlement administration costs, attorneys' fees and expenses as approved by the Court, and any service awards approved by the court, may not

exceed $3,000,000.00. ¶ 3.9. The costs of PracticeMax's remedial security measures are separate and excluded from this cap.

The hard-struck bargain achieved for the Class did not come easily. Rather, it took considerable time, effort, and skill from Class Counsel. To reach this result, Class Counsel expended extensive resources to investigate this case, interviewed potential plaintiffs, drafted multiple complaints, consolidated cases into a single class action lawsuit, researched and drafted the detailed consolidated complaint, researched and prepared briefing in opposition to Defendant's motion to dismiss, engaged in months of settlement negotiations, and participated in formal mediation, before ultimately achieving the final result for the Class.

Plaintiffs and their Counsel now seek an award of attorneys' fees and expenses, and service awards to Plaintiffs. The Settlement Agreement provides that Defendant will pay Class Counsel combined attorneys' fees and expenses, as approved by this Court, up to $825,000. S.A. ¶ 8.1. The combined fee and expense request represents 27.5% of the available benefits to the Class, not including the costs of the remedial security measures that PracticeMax is separately funding. This fee and expense request is supported by a lodestar cross-check.

The Settlement Agreement further provides that Defendant will pay a $2,500 service award to each Plaintiff as compensation for his or her time and efforts participating in the case. Courts routinely approve such awards as "presumptively reasonable." *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) ("In this district, a $5,000 payment is presumptively reasonable.") (citing cases).

The requested fee, expense, and service awards are reasonable and should be approved.

## II.    FACTS AND PROCEDURAL HISTORY

As a medical practice management company, Defendant PracticeMax collected and maintained detailed personal and health information about hospital and medical clinic patients, most of whom were unaware of PracticeMax's collection and maintenance of their information. *See* Doc. 18, Consolidated Class Action Complaint, ¶¶ 1-14. In April 2021, cybercriminals infiltrated PracticeMax's network without detection and gained access to

PracticeMax's systems from April 17, 2021 until May 5, 2021, during which time they accessed Defendant's server and company email accounts. *Id.* ¶ 53, n.15. On or about June 2022, PracticeMax notified the impacted individuals of the Data Security Incident and instructed those impacted to be vigilant in checking their credit reports, medical records, accounts statements, and other personal accounts. *Id.* ¶¶ 57-62.

Plaintiffs allege that they and Class Members have suffered injury as a result of PracticeMax's conduct. Plaintiffs have alleged actual and threatened injuries stemming from the misuse of their Private Information; loss of the benefit of their bargain; diminished value of their Private Information; substantial risk of imminent harm; time, effort, and money spent mitigating the risk of harm; emotional distress; and a loss of privacy. *See id.* ¶¶ 11, 47, 55, 60, 95-96, 104-05, 111, 117, 121, 128, 132, 139, 142, 147, 155-59, 165, 192, 223, 246. Plaintiffs have also alleged the continued and increased risk to their Private Information, which remains in PracticeMax possession and is subject to further unauthorized disclosures so long as PracticeMax fails to undertake appropriate and adequate measures to protect the Private Information. *See id.* ¶¶ 63-65, 103, 114, 124, 135, 137, 151-52.

The first case against PracticeMax was filed on July 27, 2022, and later separate putative class action lawsuits involving the same Data Security Incident were filed in this Court. Shortly thereafter, counsel for Plaintiffs in the various actions decided it was appropriate to join together in an effort to conserve the resources of the Parties and Court. Accordingly, pursuant to an October 11, 2022 Order, the cases were all consolidated into this lead case, CV-22-01261-PHX-DLR. Doc. 17. The Consolidated Class Action Complaint was filed on October 31, 2022. Doc. 18.

On November 30, 2022, Defendant filed a motion to dismiss Plaintiffs' claims. Doc. 19. After the motion was fully briefed, the Parties agreed that early resolution discussions could be beneficial.

Over the course of several months, the Parties engaged in informal, sometimes contentious, settlement negotiations. The Parties then agreed to participate in early mediation.

On June 19, 2023, the Parties engaged in mediation with the highly respected JAMS mediator Bruce Friedman. Following a full-day mediation, the Parties were able to reach an agreement on the principal terms of a settlement. The Parties then spent several weeks negotiating the final terms and preparing the Settlement Agreement, including the many exhibits thereto.

The Court granted preliminary approval of the Settlement on October 26, 2023. Doc. 40. Class Notice subsequently issued and advised Class Members that Class Counsel will request the Court's approval of an award for attorneys' fees and reimbursement of expenses up to $825,000, and service awards of $2,500 per named plaintiff. The objection deadline is January 25, 2024. To date, only one objection has been submitted to the claims administrator.

## III.   ARGUMENT

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In deciding whether the requested fee amount is appropriate, the Court's role is to determine whether such amount is "'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Where a class settlement results in the creation of common benefits, courts in this Circuit may use either—or both—the "percentage-of-the-recovery" or the "lodestar-multiplier" method to determine a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, "the primary basis of the fee award remains the percentage method" while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Id.* at 1050. Indeed, courts frequently use the percentage method as it 'is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'" *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 490, 376 P.3d 672, 677 (2016) (citation omitted); *see Nwabueze v. AT&T Inc.*, No. C 09- 01529, 2014 WL 324262, at *1 (N.D. Cal. Jan. 29, 2014) ("[W]here a settlement does not create a common fund from which to draw, a court may, in its discretion, analyze the case as a 'constructive common fund' for fee-setting.").

1    Here, under any measure, the requested fee is fair, reasonable, and adequate.

2    **A. The Requested Fee is Reasonable Under the Percentage-of- Fund Method.**

3    Under the percentage approach, class counsels' fees are calculated as a percentage of

4    the common benefits generated through their efforts. In the Ninth Circuit, the "benchmark"

5    percentage is 25%. *Vizcaino*, 290 F.3d at 1047-50; *In re Online DVD-Rental Antitrust Litig.*, 779

6    F.3d 934, 949 (9th Cir. 2015). From that point, the Ninth Circuit and district courts in this

7    Circuit instruct that the benchmark may be adjusted up or down based on the circumstances

8    of the case. *See Vizcaino*, 290 F.3d at 1048-50 & n.4 (recognizing that the benchmark "may be

9    inappropriate in some cases"). Numerous district courts in this Circuit have recognized that

10   "nearly all common fund fee awards range around 30%" of the overall benefit recovered. *In*

11   *re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989); *see In re Nuvelo, Inc. Sec.*

12   *Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (finding "an

13   exhaustive list of cases" indicating that the Ninth Circuit's benchmark "is at approximately

14   30% of the fund"); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV

15   07-3072, 2009 WL 9100391, at *3-5 (C.D. Cal. June 24, 2009) ("attorneys' fees in class actions

16   averaged approximately 32% of the recovery"); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182,

17   2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("[C]ase law surveys suggest that 50% is the

18   upper limit, with 30-50% commonly being awarded[.]"); *Romero v. Producers Dairy Foods, Inc.*,

19   No. 1:05-CV-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("[F]ee awards in class

20   actions average around one-third of the recovery.") Here, Class Counsel's request for a

21   combined fee and expense award that represents 27.5% of the Settlement benefit is reasonable,

22   as the customary fee award is around 30%. *See id.* A combined fee and expense award of 27.5%

23   is further warranted here because the Settlement achieves a highly favorable result for the

24   Class. *See Sevilla v. Aaron's, Inc.*, No. CV 17-4053-DMG (EX), 2020 WL 10573205, at *2 (C.D.

25   Cal. May 15, 2020) ("It is also not uncommon for courts to award one-third of the gross

26   settlement fund as attorneys' fees where the circumstances warrant it.") (citation omitted); *see,*

27   *e.g., Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *3

28

5

(C.D. Cal. Sept. 18, 2020) (awarding class counsel attorneys' fee of one-third of the settlement fund where an "exceptional result" was achieved).

### B. The *Vizcaino* Factors Support the Award Requested.

In assessing a fee award, the Ninth Circuit directs courts to consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel v. Code 42 Software Inc.*, No. 8:15-cv-01936, 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support the requested fee.

### 1. Class Counsel achieved a favorable result for the Class.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Graham v. Capital One Bank (USA), N.A.*, No. SACV 13-00743-JLS, 2014 WL 12579806, at *5 (C.D. Cal. Dec. 8, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046); *see also In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594389 at *8 (C.D. Cal. June 10, 2005) ("result achieved is a major factor" in making fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) (the "fundamental focus is the result actually achieved for class members") (citation omitted). Outstanding results merit a higher fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (awarding a fee of 28 percent).

Here, the Settlement provides a range of meaningful benefits to the Settlement Class, and that the Court previously held the Settlement "as being fair, reasonable, and adequate as to the Class Members . . ." Preliminary Approval Order, Doc. 40, ¶ 7. Settlement Class Members can receive (i) compensation for ordinary unreimbursed out-of-pocket losses amounting to $500; (ii) compensation up to three (3) hours at $25 per hour of lost time with just a simple attestation (no supporting documents required); (iii) up to $3,500 per claim for extraordinary out-of-pocket expenses that occurred as a result of the Data Security Incident; and (iv) two years of credit monitoring, fraud coverage, and identity theft protection, with

$1,000,000 insurance policy protecting each subscribing Class Member. *Id.,* ¶ 2. In addition to the foregoing settlement benefits, Defendant agreed to implement and maintain certain reasonable steps to adequately secure its systems and environments. *Id.* These changes inure to the benefit of Class Members whose information remains in PracticeMax's possession. These benefits directly address the alleged harms that resulted from the Data Security Incident.

As explained in Plaintiffs' Motion for Preliminary Approval, Plaintiffs believe that they would succeed in litigation and be able to recover damages on behalf of the Class. However, Class Counsel recognizes that the range of potential litigation outcomes is large. The scope of damages would depend in large part on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain and loss of value of Private Information theories), and which causes of action survive. Whether the case would be litigated to a favorable outcome and the amount obtained through continued litigation are not certain, and the case is subject to numerous risks. By settling and paying Class Members now, practical remedies that have been absent become imminently available. Even if Plaintiffs achieved a successful judgment, relief to Class Members would likely be forestalled for years following the exhaustion of appeals. Based on the size of the breach and the substantial litigation risks, the Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements.

Class Counsel also achieved substantial non-monetary benefits for the Class in the form of significant remedial measures that PracticeMax has agreed to implement. The Ninth Circuit has repeatedly held that where, as here, class counsel achieves significant non-monetary benefits, the court "should consider the value of [such] relief … as a relevant circumstance" in determining what percentage of the settlement benefits should be awarded as reasonable fees. *Staton*, 327 F.3d at 974 (internal quotation marks omitted); *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)

1   (awarding fee of 1/3 of fund where settlement provided additional non-monetary relief).

2   The results achieved here are substantial, and support Class Counsel's fee request.

3   **2.   The litigation was risky, complex, and expensive.**

4   Risk is a critical factor in determining a fair fee award. *In re Omnivision*, 559 F. Supp. 2d

5   at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all,

6   particularly a case involving complicated legal issues, is a significant factor in the award of

7   fees.") (citing *Vizcaino*, 290 F.3d at 1048).

8   Data breach cases in particular are among the riskiest and most uncertain of all class

9   action litigation. Such cases are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec.*

10  *Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020)

11  (recognizing the complexity and novelty of issues in data breach class actions). Although nearly

12  all class actions involve a high level of risk, expense, and complexity, *Linney v. Cellular Alaska*

13  *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), data breach cases are especially so. *See, e.g.,*

14  *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 15 2010 WL

15  2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

16  This case is no exception to that rule. PracticeMax has emphatically denied Plaintiffs'

17  allegations of wrongdoing, and in continued litigation will vigorously defend against Plaintiffs'

18  claims. It involves complicated and technical facts, highly skilled opposing counsel, contested

19  issues on class certification, and substantive defenses. There are numerous substantial hurdles

20  that Plaintiffs would have had to overcome before the Court might find a trial appropriate.

21  This Settlement was reached before a ruling on Defendant's motion to dismiss. Data

22  breach cases, particularly, face substantial hurdles in surviving even past the pleading stage. *See*

23  *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y.

24  June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert

25  reports and costly depositions, which would present significant risks and expenses. As in any

26  data breach class action, establishing causation and damages on a class-wide basis is largely

27  uncharted territory and full of uncertainty.

28

As in any litigation, Plaintiffs faced a risk that any of these defenses might succeed. Plaintiffs also faced uncertainty with respect to obtaining and maintaining class certification. Success at class certification has been mostly nonexistent in data breach cases. Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 WL 256132, at *33. Although Plaintiffs believe they would have prevailed in this action, a verdict for the defense was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. While Plaintiffs believe they could overcome these challenges, any of these defenses, if successful, could end the case entirely and result in the Settlement Class Members receiving nothing at all. The proposed Settlement therefore achieves a far more certain and preferable result for the Settlement Class members than continued litigation, as it strikes an appropriate balance between the potential benefits, on the one hand, and the risks and costs associated with continued litigation, on the other. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982);   *United States v. Armour & Co.*, 402 U.S. 673, 81-82 (1971). This factor supports the appropriateness of the requested fee award.

### 3.  Counsel performed superior quality work to achieve the Settlement.

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2012) (quoting *Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005

WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are excellent.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. Class Counsel are highly specialized in field of data breach class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. *See* Declaration of William B. Federman ("Federman Decl.") at ¶ 20, attached hereto. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the Settlement. The skill demonstrated by Class Counsel in developing the Complaints, coordinating all the cases, researching and drafting the detailed Consolidated Complaint, briefing the legal issues to oppose Defendant's motion to dismiss, and negotiating and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, No. C-10-2500, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel were also equal to the experience and skill of the lawyers representing PracticeMax, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a national, highly respected, national law firm (Lewis Brisbois Bisgaard & Smith LLP) with significant resources and substantial experience defending consumer and data breach class actions. This factor, therefore, weighs in favor of the requested fee award.

1                    **4.  Class Counsel worked on a contingent basis.**

2          The Ninth Circuit has confirmed that a fair fee award must include consideration of

3   the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Lozano v. AT&T Wireless*

4   *Servs., Inc.*, No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704, at *1 (C.D. Cal. Nov. 22,

5   2010). Courts long have recognized that the public interest is served by rewarding attorneys

6   who assume representation on a contingent basis with an enhanced fee to compensate them

7   for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power*

8   *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed

9   the market value of the services if rendered on a non-contingent basis are accepted in the legal

10  profession as a legitimate way of assuring competent representation for plaintiffs who could

11  not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d

12  at 1051 (observing courts reward successful class counsel in contingency cases "by paying

13  them a premium over their normal hourly rates").

14         This factor deserves particular weight under the unique circumstances of this matter.

15  If Class Counsel had been able to negotiate a fee directly with Class Members, a 27.5%

16  combined contingent fee and expense percentage would have been eminently reasonable, if

17  not low, for a case this complex, risky, and difficult.

18         "Attorneys are entitled to a larger fee award when their compensation is contingent in

19  nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also*

20  *Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and

21  litigation is protracted, the risk of non-payment after years of litigation justifies a significant

22  fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). The

23  potential of receiving little or no recovery weighs in favor of the requested fee. *See In re Wash.*

24  *Pub. Power*, 19 F.3d at 1299; *Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210,

25  at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served

26  by rewarding attorneys who assume representation on a contingent basis with an enhanced fee

27  to compensate them for the risk that they might be paid nothing at all for their work."); *Brown*

28

                                            11

*v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was particularly challenging given these risks. Class Counsel expended significant resources despite the genuine risk that they would never be compensated at all—not only in this litigation, but also with competing cases in other districts that could have settled without Class Counsel foregoing that other work to focus on this case. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. To date, Class Counsel have received no compensation at all litigating this case on behalf of the Class. Moreover, Class Counsel faced a Defendant with ample resources to vigorously fight the litigation, represented by experienced counsel. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5.  Fees awarded in comparable cases exceed those requested here.

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "Under the percentage method, California has recognized that most fee awards . . . are 33 percent …." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. 2013). Indeed, the Ninth Circuit has repeatedly found attorneys' fee awards of 33% of the recovery to be fair and reasonable. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of total recovery); *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Williams v.*

1    *MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same).

2           Here, the combined fee and expense request represents 27.5% of the Settlement value

3    to the Class. This percentage is based on the $3,000,000 in monetary settlement benefits, not

4    including the separate costs of the remedial measures to be implemented by PracticeMax. This

5    request is reasonable and well within the range regularly awarded by courts in this Circuit. *See,*

6    *e.g., Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362, 2017 WL 10185526, at *2 (D. Ariz.

7    July 20, 2017) (Rayes, J.) (approving fees and expenses totaling 41% of common fund); *Avila*

8    *v. LifeLock Inc.*, No. 2:15-CV-01398, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (awarding

9    fees of 30% of $20 million fund); *Syed v. M-I, LLC*, No. 1:12-cv-1718, 2017 WL 3190341, at

10   *8 (E.D. Cal. July 27, 2017) (awarding one-third of $7 million common fund); *Dearaujo v. Regis*

11   *Corp.*, No. 2:14-cv-01408, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-

12   third of recovery); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511, 2015 WL 12711659, at *8-9

13   (C.D. Cal. Apr. 28, 2015) (same); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561, 2014 WL

14   6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote Ins. Servs.*, No. C 10-

15   5966, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa v. Cargill Meat Sols.*

16   *Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (same); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-

17   cv-02354, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (same); *Singer v. Becton Dickinson*

18   *Co.*, No. 08-CV-821, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33% and

19   citing two prior similar Southern District awards); *Stuart v. Radioshack Corp.*, No. C-07-4499,

20   2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third); *Fernandez v. Victoria's*

21   *Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008)

22   (awarding 34%); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *27-

23   28 (N.D. Cal. Apr. 1, 2011) (awarding 42% of $27 million fund).

24          In addition, the requested fee is at the low end of the prevailing percentage for standard

25   contingency-fee agreements in individual cases. *See Vizcaino*, 290 F.3d at 1049.  Surveys have

26   estimated that contingency-fee percentages in individual litigation start at 33% and go up to

27   40%. *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65

28

Fordham L. Rev. 247, 248 (1996) ("standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries").

Accordingly, this factor supports the requested fee here.

### 6.  The reaction of the Class supports the fee request.

The reaction by Class Members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage*, 2005 WL 1594389, at *15. As of the filing of this motion, only one Class Member, out of more than 360,000 Class Members who received direct notice of the Settlement, has submitted a letter objecting to the Settlement and the attorney fee and expense request. Federman Decl., ¶ 10. This is true even though the amount of fees Class Counsel intended to request was widely publicized in the notice to the Class. The fact that only one member, representing 0.00027% of the Class, has submitted an objection reflects a highly positive response by the Settlement Class. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (N.D. Cal. Apr. 22, 2010) (finding that only one objector to settlement and fee request represented an "overwhelmingly positive" response from the class of 24,358 members); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement."). Plaintiffs and Class Counsel will address the lone objection more fully in its motion for final approval and reply brief.

### C. A Lodestar Cross-check Confirms the Reasonableness of the Fee Request.

Application of the lodestar method as a cross-check confirms the reasonableness of the fees requested here. *See Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The accompanying declaration of Class Counsel sets forth the hours of work and billing rates used to calculate the lodestar here. As described in the declaration, Plaintiffs' Counsel and their respective staffs have devoted a total of approximately 793.1 hours to this litigation and have a total lodestar to date of $527,557.10.

*See* Federman Decl. ¶ 17. This represents a very modest 1.53 risk multiplier based on the requested fee. *Id.* Courts in the Ninth Circuit routinely approve similar and much higher multipliers. *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (discussing court approval of lodestar multipliers from 2.0 to 4.5 and noting that risk multipliers "between 3 and 4.5 have become more common") (citations omitted); *Vizcaino*, 290 F.3d at 1052 appx. (finding that risk multipliers range between 1.0 and 4.0 in 83% of cases). All of the Plaintiffs' Counsel time was reasonable and necessary for the prosecution of this action. Class Counsel took meaningful steps to ensure the efficiency of their work. *Id.* ¶ 18. Further, these amounts do not include the additional time that Class Counsel will have to spend through the Final Approval Hearing and beyond, including preparing the final approval motion, attending the final approval hearing, and overseeing the distribution of Settlement benefits to the Class. *Id,* ¶ 17.

Class Counsel here are experienced, highly regarded members of the bar. They have brought to this case extensive experience in the area of data breach class actions and complex litigation. Federman Decl. ¶ 20; *see also* Doc. 39 at 122-183 (firm biographies). Class Counsel's customary rates are in line with prevailing rates in this District, have been approved by courts in this District and other courts, and are in line with the rates charged by contemporaries in the data breach bar. *Id.* ¶ 19.

The lodestar cross-check thus confirms the reasonableness of the requested fee award, particularly in light of the significant results achieved by the Settlement, the contingent nature of Class Counsel's representation, and the skill and expertise Class Counsel employed maneuvering the case toward a favorable Settlement.

**1. Class Counsel Should be Reimbursed for Their Litigation Expenses.**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel*, 2018 WL 6113078, at *6. This includes reasonable expenses, related to the litigation, and normally charged to a fee-paying client. *Willner v. Manpower Inc.*, No. 11-cv-02846, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015).

Here, Settlement Class Counsel request reimbursement of expenses of $19,963.50. Federman Decl., ¶¶ 17, 22. This amount does not include internal and other additional costs that Class Counsel incurred in this litigation but, in an exercise of discretion, do not seek to recover. *Id.*, ¶ 16. If awarded by the Court, the expenses would be part of (not in addition to) the $825,000 in combined fees and expenses requested here.

As discussed in the attached declaration, the requested expense reimbursement represents Class Counsel's actual out-of-pocket litigation costs for items such as filing fees, mediation fees, legal research, and travel. These expenditures were necessary to Class Counsel's prosecution of the action and are particularly reasonable given the complexities of this case. Such costs are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases. *See, e.g., In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of expenses related to expert witness fees, case-related travel, transcript fees, document management, copying, mailing, and serving documents, electronic research, and filing and court fees); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs."); *In re Lenovo Adware Litig.*, No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. April 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

**D. The Court should grant a Service Award for each Class Representative.**

Class Counsel also request that the Court approve service awards in the amount of $2,500 for each of the five Class Representatives ($12,500 total). Service awards are typically awarded in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Each of the Plaintiffs expended considerable effort on behalf of the Class by, among other things: (1) participating in plaintiff vetting interviews with Class Counsel at the outset of the case; (2) gathering and providing supporting documents to Class Counsel; (3) assisting with investigation of the facts; (4) reviewing the complaints prior to filing; (5) and consulting with Class Counsel during the litigation and settlement negotiations. Their commitment to the Class's interests and desire to remedy these issues, not just for themselves, but also the entire Class, was essential to the successful and timely prosecution of this class action and, in Class Counsel's view, warrants recognition in the form of the service awards requested. Their commitment is notable given the modest size of their personal financial stakes in the matter. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) ("In exchange for his participation, [named plaintiff] will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

The $2,500 service awards sought fall at the lower end of the spectrum of amounts awarded in comparable cases. *See, e.g., Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'") (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (service awards of $5,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (approving service awards of $5,000).

In light of the Class Representatives' willingness to step forward and their efforts to pursue this litigation for the benefit of the Class, the Court should grant the requested Service Awards.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve Class Counsel's request for: (i) a combined attorneys' fee and expense reimbursement award of $825,000.00; and (ii) service awards of $2,500 to each of the five Class Representatives. Plaintiffs will submit a proposed Order granting this request contemporaneously with their motion for final approval of the Settlement. *See* S.A. at Exhibit E (Doc. 39 at 98-105).

Date: January 11, 2024                    Respectfully Submitted,

*/s/William B. Federman*
William B. Federman (*admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com

**AUER RYAN, P.C.**
Elaine A. Ryan (AZ Bar #012870)
Colleen M. Auer (AZ Bar #014637)
20987 N. John Wayne Parkway, #B104-374
Maricopa, AZ 85139
T: (520) 705-7332
eryan@auer-ryan.com
cauer@auer-ryan.com

**PEREZ LAW GROUP, PLLC**
Cristina Perez Hesano (#027023)
7508 N. 59th Avenue
Glendale, AZ 85301
T: (602) 730-7100
F: (623) 235-6173
cperez@perezlawgroup.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (*admitted Pro Hac Vice*)
221 West Monroe Street, Suite 2100
Chicago, IL 60606
T: 866.252.0878
gklinger@milberg.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates (*admitted Pro Hac Vice*)
Jonathan T. Deters (*admitted Pro Hac Vice*)
119 E. Court Street, Suite 530
Cincinnati, OH 45202

18

T: 513.651.3700
F: 513.665.0219
tcoates@msdlegal.com
jdeters@msdlegal.com

**TURKE & STRAUSS LLP**
Samuel J. Strauss (*admitted Pro Hac Vice*)
Raina C. Borrelli (*admitted Pro Hac Vice*)
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION DIVISION**
John A. Yanchunis (*admitted Pro Hac Vice*)
Ryan Maxey (*admitted Pro Hac Vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

**MURPHY LAW FIRM**
A. Brooke Murphy (*admitted Pro Hac Vice*)
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
abm@murphylegalfirm.com

**THE LYON FIRM**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, Ohio 45208
T: (513) 381-2333
jlyon@thelyonfirm.com

***Counsel for Plaintiffs and the Class***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 11, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman